```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF NEW YORK

----------------------------X
                            :
UNITED STATES OF AMERICA,    :
                            :    15-CR-252 (RJD)
         v.                  :
                            :    May 29, 2015
AARON DAVIDSON,              :
                            :    Brooklyn, New York
              Defendant.     :
                            :
----------------------------X


        TRANSCRIPT OF CRIMINAL CAUSE FOR ARRAIGNMENT
           BEFORE THE HONORABLE CHERYL L. POLLAK
              UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:          LORETTA LYNCH, ESQ.
                             UNITED STATES ATTORNEY
                             BY: DARREN LaVERNE, ESQ.
                             ASSISTANT U.S. ATTORNEY
                             271 Cadman Plaza East
                             Brooklyn, New York  11201


For the Defendant:           MICHAEL HANTMAN, ESQ.
                             KATHERINE SKEELE, ESQ.



Audio Operator:


Court Transcriber:           ARIA SERVICES, INC.
                             c/o Elizabeth Barron
                             102 Sparrow Ridge Road
                             Carmel, NY 10512
                             (845) 260-1377



Proceedings recorded by electronic sound recording,
transcript produced by transcription service
```

```
 1                THE CLERK:  Civil cause for arraignment on

 2   an indictment, 15-CR-252, United States v. Aaron

 3   Davidson.

 4                Please state your appearances for the

 5   record.

 6                MR. LaVERNE:  Good afternoon, Judge.  Darren

 7   LaVerne, Evan Norris and Keith Edelman for the United

 8   States.

 9                THE COURT:  Good afternoon.

10                MR. HANTMAN:  Good afternoon, your Honor.

11   Michael Hantman and Katherine Skeele of Holland &

12   Knight representing Aaron Davidson.

13                THE COURT:  Good afternoon.

14                Mr. Davidson, I take it that you understand

15   English.

16                THE DEFENDANT:  Yes.

17                THE COURT:  If at any point something is

18   said that you don't understand, please tell me, all

19   right?  Okay.

20                Counsel, I understand that you're admitted

21   to this Court but you are not yet, sir?

22                MR. HANTMAN:  That's correct.  We have the

23   pro hac vice application all prepared and I have the

24   certificate of good standing from the Florida Bar in my

25   e-mail and it's been e-mailed to your court.  I
```

1   understand an original copy needs to be submitted,

2   which will be done as soon as possible, certainly by

3   early next week.

4                   THE COURT:  Okay.

5                   Any objection from the government to him

6   appearing today and arguing before the Court pro hac

7   vice?

8                   MR. LaVERNE:  No, your Honor.  I'd also just

9   mention that it's my understanding that Mr. Davidson is

10  also represented by another partner at the same firm

11  who works here in New York but who couldn't be here

12  today because of a scheduling conflict.

13                  THE COURT:  Okay.

14                  Mr. Davidson, you're here today because a

15  grand jury has returned an indictment.  I believe I've

16  got all the counts but correct me if I'm wrong --

17  charging you in Count 1, 25, 29, 37, 38, 39, 40 and 47.

18                  Is that correct?

19                  MR. LaVERNE:  33, 34 to 36.

20                  THE COURT:  34 to 36.  I did miss some,

21  okay.

22                  MR. LaVERNE:  37, 38.

23                  THE COURT:  I got those.

24                  MR. LaVERNE:  39, 40 and 47.

25                  THE COURT:  Count 1 charges you with,

1    together with others, engaging in a pattern of

2    racketeering activity, including multiple acts of wire

3    fraud, money laundering, money laundering conspiracy,

4    interstate and foreign travel in aid of racketeering,

5    obstruction of justice and bribery.

6             Count 25 charges you with conspiring to

7    devise a scheme and artifice to defraud among others,

8    FIFA, (ui) and CFU and their constituent organizations,

9    and through bribes and to obtain money and property

10   through materially false and fraudulent pretenses,

11   representations and promises, and for the purpose of

12   executing this scheme, transmitting and causing to be

13   transmitted by means of wire communication writings,

14   signs, signals, pictures and sounds, specifically wire

15   transfers, in violation of United States law.

16            Count 29 charges you with a money laundering

17   conspiracy.

18            Count 33 charges you with a wire fraud

19   conspiracy.

20            34 through 36 is substantive charges of wire

21   fraud.

22            37 is a money laundering conspiracy.

23            38 is a substantive money laundering charge.

24            39 is another wire fraud conspiracy.

25            40 is a money laundering conspiracy.

```
1                    And 47 is a charge that you knowingly and
2    intentionally corruptly obstructed, influenced and
3    impeded and attempted to obstruct, influence and impede
4    an official proceeding, specifically a federal grand
5    jury investigation in the Eastern District of New York.
6                    Did I get them all?
7                    MR. LaVERNE:  Yes.
8                    THE COURT:  Have you had an opportunity to
9    review the indictment with your counsel?
10                   THE DEFENDANT:  Yes.
11                   THE COURT:  Counsel, have you reviewed the
12   indictment with your client and advised him of his
13   rights?
14                   MR. HANTMAN:  Yes.  My partner who was just
15   mentioned has, Lee Barton (ph).
16                   THE COURT:  Okay.  Do you have any concern
17   about whether or not Mr. Davidson understands the
18   charges against him?
19                   MR. HANTMAN:  (Ui).
20                   THE COURT:  You don't wish me to read the
21   indictment aloud at this time, I hope?
22                   MR. HANTMAN:  No, we do not, your Honor.
23                   THE COURT:  Is he prepared to enter a plea
24   at this time?
25                   MR. HANTMAN:  He is.
```

```
 1              THE COURT:  What is that plea?

 2              MR. HANTMAN:  Not guilty.

 3              THE COURT:  To all of the counts that I just

 4   reviewed.

 5              MR. HANTMAN:  To all of the counts, your

 6   Honor.

 7              THE COURT:  Do we have a date for Mr.

 8   Davidson to appear before Judge Dearie in this case?

 9              MR. LaVERNE:  We do, your Honor.  The date

10   is July 17th at 10:00 a.m.

11              THE COURT:  What are we going to do with

12   respect to the question of bail at this time?

13              MR. LaVERNE:  Your Honor, the parties have

14   conferred and we have a bail package to present

15   together.

16              THE COURT:  Okay.  Do you want to tell me

17   what it is?

18              MR. HANTMAN:  Your Honor, I discussed this

19   with Mr. LaVerne and with my client, and everybody I

20   think understands and is fine with it.  I just wanted

21   to put on the record that our firm is making a

22   temporary, limited appearance.  Things happened quickly

23   and furiously this week and we are finalizing our

24   engagement with Mr. Davidson.  We expect and hope that

25   everything will go well but we wanted to make it clear
```

1    that it's 100% finalized at this moment.

2                THE COURT:  If it isn't finalized by the

3    time you have to appear before the judge, you need to

4    let the judge know and make alternative plans for Mr.

5    Davidson, because he needs to be represented by

6    counsel.

7                You understand, sir, that you have the right

8    to be represented by an attorney from this point

9    forward in connection with these charges.  If for some

10   reason you cannot afford to retain counsel, whether it

11   be these attorneys or anyone else, you can apply to the

12   Court and someone will be appointed to represent you.

13               Do you understand that?

14               THE DEFENDANT:  Yes, I do, thank you.

15               MR. LaVERNE:  Your Honor, I should say my

16   understanding is that the firm -- defense counsel is

17   representing him obviously for present purposes today.

18   There's no question about that, obviously.  I do know,

19   and defense counsel will correct me if I'm wrong, that

20   they've spent substantial with Mr. Davidson prior to

21   the appearance today going over the case (ui).

22               THE COURT:  I don't have any concern about

23   that.  I do want to make sure that he's represented by

24   counsel at every stage of this case.  These are very

25   serious charges.

1              MR. HANTMAN:  Yes, your Honor.

2              THE COURT:  We were talking about bail.  You

3   said that the government had agreed with defense on a

4   proposal.  I don't have it so maybe you could tell me

5   what it is.

6              MR. LaVERNE:  I will, your Honor.  And with

7   your Honor's permission, I'd like to just put a few

8   things on the record.  The first is that the defendant,

9   Mr. Davidson, was in fact arrested on Wednesday in

10  Florida.  At that point, he agreed to waive speedy

11  arraignment and to travel in the custody of the FBI up

12  to New York, which brings us here today.

13             The second thing is, with respect to bail.

14  I'll go through the proposal in a moment but I just

15  want to put on the record some of the representations

16  that have been made to us which inform our agreement to

17  this particular bail package.

18             THE COURT:  Okay.

19             MR. LaVERNE:  One of which is that Mr.

20  Davidson is a U.S. citizen.  He has no citizenship

21  elsewhere.  He only has a U.S. passport and no other

22  passport.  His wife is a Mexican citizen but is a

23  permanent resident here in the United States, has been

24  here for some ten years, has a Mexican passport but no

25  other passport.

1          Mr. Davidson and his wife do not own any
2   property outside of the United States.  They don't have
3   bank accounts outside of the United States.  Mr.
4   Davidson and his wife have a net worth of approximately
5   1.3 million dollars, give or take, which includes his
6   ownership in his apartment.  He's got about $400,000 of
7   equity in his current home as well as about $250,000 in
8   a 401(k) plan.  The rest, as I understand it, is in
9   various investments and bank accounts.
10          THE COURT:  The apartment is located in
11   Florida?
12          MR. LaVERNE:  The apartment is in Miami,
13   Florida.
14          THE COURT:  Okay.
15          MR. LaVERNE:  With respect to the package
16   itself, your Honor, what we're proposing to you today
17   is a secured bond.  The bond amount is five million
18   dollars.  The conditions of the bond, which were set
19   out -- we put them in an attachment so it doesn't get
20   too messy on the cover -- are as follows:
21          The defendant must remain in and cannot
22   leave without permission of the Court Miami, Florida.
23   The defendant may travel to the Southern District of
24   New York and the Eastern District of New York for court
25   appearances or visits with counsel, with the prior

1   consent of the FBI and Pretrial Services.

2           Second, the defendant shall avoid all

3   contact and not associate with any of the following

4   persons or entities:  All codefendants and

5   coconspirator as well as any employee or executive of

6   the following entities:

7           1)  Traffic U.S.A. and any Traffic

8   affiliate.

9           2)  Torneos Incompetenceos S.A. (Ph) and any

10  affiliated entity.

11          3)  Full Play S.A. and any affiliated

12  entity.

13          4)  Conficath (ph) and any affiliated

14  entity.

15          5)  Conmiball (ph) and any affiliated

16  entity.

17          6)  FIFA and any affiliated entity.

18          THE COURT:  Can I just ask you a question,

19  counsel?  You indicated he's not to have any contact

20  with coconspirators.  There are a number of

21  coconspirators listed by number in the indictment but

22  not by name.  Does he know or does counsel know who

23  those coconspirators are?

24          MR. LaVERNE:  I don't know exactly what he

25  knows or counsel knows, but our position is that to the

1    extent that Mr. Davidson is aware of someone else who

2    is a coconspirator in the crimes that are charged here,

3    he can't interact with that person.

4              THE COURT:  I understand that but my concern

5    is, let's assume for a minute he doesn't know who

6    coconspirator number 14 is.  He doesn't know who you

7    think coconspirator 14 is and he's not one of the

8    individuals that you've just identified as being

9    associated with any of these organizations.  He could

10   be in violation of the bond, so I'm a little concerned

11   about how that's going to work.

12             MR. LaVERNE:  I guess our position is,

13   that's an issue that we would address in any sort of

14   bond violation hearing, as to whether he had knowledge

15   of a particular coconspirator and that person's

16   involvement in the conspiracy.

17             THE COURT:  If counsel is okay with it,

18   then --

19             MR. HANTMAN:  If I could have a moment with

20   my client.

21             THE COURT:  Yes.

22             (Mr. Hantman is conferring with the

23   defendant.)

24             MR. HANTMAN:  As I suspected, Mr. Davidson

25   thinks he might be confident when it comes to some but

1   certainly not all.  Will there be a mechanism where we

2   could have just a little bit more information so that

3   there's no ambiguity in this process?

4               MR. LaVERNE:  This is the agreed package.  I

5   guess what we would propose -- I don't think it's an

6   unworkable proposal -- is that if we do have an issue

7   down the road, we'll hash it out at a hearing (ui).

8               THE COURT:  Okay.  It seems to put him in

9   jeopardy, honestly.  I've never seen it like this,

10  where there hasn't been some other way to identify who

11  the coconspirators are.  It may be that he knows who

12  most if not all of them are but maybe he doesn't.  And

13  hashing it out at a bond violation hearing is sort of

14  risky.

15              MR. LaVERNE:  I think what we would propose,

16  if counsel agrees to this, is for now, we'll leave it

17  as codefendants, with the understanding that between

18  now and next week, we'll work out a list of agreed

19  coconspirators and we'll submit that under seal to the

20  Court.

21              THE COURT:  Okay.  Certainly if the

22  individuals who are named as coconspirators are in fact

23  officials of the organizations that you just listed,

24  then they would fall within that category, and he's not

25  to have any contact with them as well, correct?

```
 1              MR. LaVERNE:  Yes, correct, certainly.
 2   That's covered by that provision, clearly.
 3              THE COURT:  Exactly.  That's why I'm saying,
 4   maybe it's not as dire a situation as (ui).
 5              MR. LaVERNE:  Okay.
 6              MR. HANTMAN:  We're fine with the
 7   representation asserted by Mr. LaVerne.
 8              THE COURT:  Okay.  So we avoid contact with
 9   the people with the people that we just identified.
10   What other conditions?
11              MR. LaVERNE:  Number three:  The defendant
12   shall not go to any of the following locations:  The
13   offices of Traffic U.S.A. or any Traffic affiliate, as
14   well as the offices of any other entity named in
15   paragraph 2 above, which are those various entities
16   named with respect to who he cannot associate with.
17              THE COURT:  You understand, Mr. Davidson,
18   what that means?
19              THE DEFENDANT:  Yes.
20              THE COURT:  Okay
21              MR. LaVERNE:  Number four:  The defendant
22   and his wife shall surrender any and all passports to
23   the Pretrial Services Agency or the FBI.
24              THE COURT:  Do we have them here today?
25              MR. HANTMAN:  We have Mr. Davidson's.  I
```

believe Mrs. Davidson has agreed to do so as well but
it will be sent from Florida and the prosecutor will
have it early next week.

MR. LaVERNE:  I think actually, what we'd
like to do -- we have Mr. Davidson's passport so that's
not an issue.  With respect to his wife's passport, my
understanding is they're planning to fly back to
Florida tomorrow.  That Mr. Davidson's wife turn the
passport over to counsel by the end of the day
tomorrow.

MR. HANTMAN:  No problem, your Honor.

MR. LaVERNE:  Counsel can then forward it on
to Pretrial.

THE COURT:  Sure.

MR. LaVERNE:  Five:  The defendant is placed
under express supervision of Pretrial Services subject
to special conditions on the reverse, which are usual
conditions that are listed.  We've checked off "subject
to random visits by Pretrial, must report as directed
by Pretrial and subject to home detention with
electronic monitoring with the following conditions."

THE COURT:  Will he be monitored out of the
office in Florida?

MR. LaVERNE:  Yes.  What we've arranged with
Pretrial is that before he leaves today, he will

1   receive a monitoring device.  I think it's a GPS

2   device.  Then when he gets down to Florida, they will

3   make supplementary or different arrangements with

4   respect to his monitoring.

5           THE COURT:  Okay.

6           MR. LaVERNE:  With respect to home detention

7   and electronic monitoring, we've provided for

8   exceptions upon prior approval by Pretrial Services and

9   the FBI for court appearances, religious services,

10  medical appointments, visits with counsel and

11  employment interviews.

12          THE COURT:  I'm sorry, what was the last

13  one?

14          MR. LaVERNE:  Employment interviews.

15          THE COURT:  Okay.

16          MR. HANTMAN:  May I raise one issue

17  concerning home detention?  I don't recall dealing with

18  it in the context of somebody who lives in a

19  condominium building.  Would he be permitted, for

20  example, to use the small gym in his building?

21          MR. LaVERNE:  I think that's something he

22  would have to work out with Pretrial down in Miami.

23          THE COURT:  I don't know how exactly how the

24  monitoring unit works that he's going to be getting.

25  It generally confines him to a certain specific area.

1   Oh, here's our guy.

2           UNIDENTIFIED SPEAKER:  I would just quickly

3   interject that that would probably be a no.  An officer

4   would have to go to where he lives to do an assessment,

5   to see where his range of movement would be and then

6   they could make a determination there.  But if it's

7   downstairs from where he actually lives, that's not

8   going to be an arrangement that they can do.

9           THE COURT:  There's your answer.  I guess

10  we'll have to see what the setup is like.

11          UNIDENTIFIED SPEAKER:  If I could just add

12  one more thing.  With the technology, we like to be

13  flexible in the technology that we choose to use for

14  him, whether it's GPS or some other form.  We are going

15  to be sharing this case with another district and I've

16  already had some contact with them to make them aware

17  of what's going to be happening.  So we would kindly

18  ask that we have the flexibility to control what type

19  of monitoring we use.

20          THE COURT:  Is he going to get a unit here

21  and keep it down in Florida?

22          UNIDENTIFIED SPEAKER:  My plan was, I'm

23  going to put a tracker on him now.  I'm going to

24  communicate with the officer.  Once he gets down there

25  and I know he's there, I'm going to transfer the case

1    over to that officer, who does use the same technology.

2    They use the same company, too, which is good news.

3              THE COURT:  We'll leave it up to Pretrial.

4    They're pretty good at figuring out the best way to do

5    this.

6              MR. HANTMAN:  That's fine.

7              MR. LaVERNE:  Six, other conditions:  The

8    defendant may not work for Traffic U.S.A. or any

9    Traffic affiliate in any capacity.  The defendant must

10   perfect security of the pledged assets, which we'll get

11   to in a moment, by June 2nd, 2015, which is Tuesday,

12   subject to agreement of the U.S. attorney's office in

13   writing to extend that time.

14             In addition, the defendant has agreed to

15   preserve and not dissipate or hypothecate at least

16   $125,000 of funds held in an account with the American

17   funds.

18             With respect to the security on the

19   appearance bond, set forth in attachment B are three

20   properties that the defendant is pledging, one of which

21   is owned by the defendant and his wife, the second of

22   which is owned by the defendant's parents, and the

23   third of which is also jointly owned by the defendant's

24   parents.

25             THE COURT:  Where are his parents?

```
1                    MR. HANTMAN:  They're in court today.

2                    THE COURT:  They're going to sign the bond

3    as well.

4                    MR. HANTMAN:  Correct.

5                    THE COURT:  Okay.  Do you want to identify

6    which of the three properties are --

7                    MR. LaVERNE:  Sure.  I can do it on the

8    record.  It's on the --

9                    THE COURT:  Let's do it for the record, just

10   so there's no confusion.

11                   MR. LaVERNE:  The first is 808 Rickel Key

12   (ph) Drive, apartment -- I don't think you need the

13   apartment necessarily -- Miami, Florida.  The second is

14   6804 Harvest Glen, Dallas, Texas, and the third is 6801

15   Collins Avenue, Miami, Florida.

16                   THE COURT:  I'm sorry, where, Miami?

17                   MR. LaVERNE:  The third one, yes.

18                   THE COURT:  Okay.  Do you have the suretors

19   in the courtroom?  Can you ask them to step up?

20                   (Suretors are sworn.)

21                   THE COURT:  You guys are going to have to

22   speak up so I can hear you.  My understanding is that

23   you are here to sign a bond on behalf of Aaron

24   Davidson.  As you probably heard, I hope, from the back

25   of the courtroom, the bond is in the amount of five
```

1  million dollars.  If Mr. Davidson should fail to come

2  to court at any point in the future when he's required

3  to be here, or if he violates the conditions of

4  electronic monitoring, that means if he leaves the

5  apartment when he's not supposed to, the bond will be

6  revoked and the government can come after the three of

7  you for the amount of the bond, the five million

8  dollars.

9          My understanding is that, Mr. and Mrs.

10  Davidson, you own two properties, one at 6804 Harvest

11  Glen and the other one at 6801 Collins Avenue in Miami.

12  Is that correct?

13          MR. DAVIDSON:  Yes.

14          THE COURT:  And you two are the only owners

15  on the deed.  Is that also correct?

16          MR. DAVIDSON:  Yes.

17          THE COURT:  So if he should not come back to

18  court, the government will take your homes, both of

19  them, to the extent that they are worth less than five

20  million dollars.  Do you know approximately how much

21  equity there is in each one?

22          MR. DAVIDSON:  For 6804 Harvest Glen, about

23  650, and then the one in Collins Avenue in Miami is

24  about 600.

25          THE COURT:  Okay.  So to the extent that

```
1    that doesn't add up to five million, which it doesn't
2    obviously, the government can take any other assets
3    that you might have.  So if you own any other homes or
4    you have a car, you have a bank account, you have
5    stocks, bonds, anything like that, the government can
6    seize your assets until that five-million-dollar limit
7    is reached.  I don't know if you're both working or if
8    either of you were are working, but if you were
9    employed, the government could also garnish your wages.
10   So every time you get your paycheck or if you're
11   getting a pension, the government could take a certain
12   amount out until that five million amount is reached.
13             Do you understand that, Mrs. Davidson?
14             MRS. DAVIDSON:  Yes.
15             THE COURT:  Mr. Davidson, do you understand
16   that as well?
17             MR. DAVIDSON:  Yes.
18             THE COURT:  Ma'am, I didn't hear your name.
19             MS. DRYJENSKI:  Michelle Dryjenski (ph).
20             THE COURT:  You are Mr. Davidson's wife?
21             MS. DRYJENSKI:  Yes.
22             THE COURT:  I understand that you own a home
23   or an apartment with Mr. Davidson at 808 Rickel --
24             MS. DRYJENSKI:  Yes.
25             THE COURT:  In Florida as well?
```

```
 1                   MS. DRYJENSKI:  Yes.

 2                   THE COURT:  Do you know how much that is

 3      worth, approximately?

 4                   MS. DRYJENSKI:  (Ui).

 5                   THE COURT:  Okay.  You understand that if he

 6      doesn't come back to court or, as I said before, he

 7      leaves the apartment when he's not allowed to, you

 8      could lose your apartment and any other additional

 9      funds until, between the three of you, that five-

10      million-dollar amount is reached.

11                   Do you understand that as well?

12                   MS. DRYJENSKI:  Yes.

13                   THE COURT:  So basically, by signing this

14      bond, the three of you are willing to take

15      responsibility for Mr. Davidson to make sure that he

16      makes all of his court appearances here in New York and

17      that he does not violate the conditions of electronic

18      monitoring.  In other words, he's not allowed to leave

19      the home except for coming to court, going for doctor's

20      appointments, visiting Pretrial Services if he's

21      required to do that, religious services.  All of these

22      things he must first get permission from Pretrial and

23      from the FBI.

24                   Do you understand that?

25                   MR. DAVIDSON:  Yes.
```

```
 1                    MRS. DAVIDSON:  Yes.

 2                    MS. DRYJENSKI:  Yes.

 3                    THE COURT:  Knowing this are you, Mrs.

 4   Davidson, willing to sign this bond?

 5                    MRS. DAVIDSON:  Yes.

 6                    THE COURT:  Mr. Davidson, are you willing to

 7   sign the bond?

 8                    MR. DAVIDSON:  Yes.

 9                    THE COURT:  Ms. Dryjenski, are you willing

10   to sign the bond?

11                    MS. DRYJENSKI:  Yes.

12                    THE COURT:  Mr. Davidson, you've heard what

13   will happen to your family if you do not come back to

14   court or you violate the other conditions of this bond.

15   They could lose their homes and any additional assets

16   and money up to five million dollars.

17                    Do you understand that?

18                    THE DEFENDANT:  Yes, I do.

19                    THE COURT:  What will happen to you if you

20   don't come back to court or you don't follow the

21   conditions of the monitoring is that you will be re-

22   arrested, you will at that point be held in jail

23   without bond until these charges are resolved.

24                    Do you understand that?

25                    THE DEFENDANT:  Yes, I do.
```

```
1              THE COURT:  You also should understand that
2    the government can bring new charges against you if you
3    don't come back to court or you violate the conditions
4    of the bond, and they can charge you with bail jumping.
5    That's a separate felony offense.  It carries its own
6    separate term of imprisonment.  What that means is, you
7    could be acquitted of all of the counts in the
8    indictment and yet end up going to jail for a
9    significant period of time simply because you didn't
10   abide by the conditions of the bond.
11              Do you understand that?
12              THE DEFENDANT:  Yes, I do.
13              THE COURT:  Also as a condition of the bond,
14   in addition to the ones that the Assistant U.S.
15   Attorney just put on the record, you are not to commit
16   any other crimes while on the bond.  If you commit a
17   crime while on bond, that's grounds for revoking your
18   bond, increasing your punishment under the existing
19   charges and bringing new charges against you for
20   whatever crime you are alleged to have committed.
21              Do you understand that?
22              THE DEFENDANT:  Yes, I do.
23              THE COURT:  Finally and perhaps most
24   importantly, you are not to threaten or attempt to
25   influence the testimony of any person who you think
```

1   might be a witness against you in this case.  That's

2   why I was trying to be as specific as possible with the

3   government so that you don't make a mistake.  But if

4   you do that, if you try to influence anyone's

5   testimony, that's grounds for revoking your bond,

6   increasing your punishment under these charges and

7   bringing charges of witness tampering or obstruction of

8   justice against you in addition to the charges that are

9   already pending.

10          Do you understand that?

11          THE DEFENDANT:  Yes, I do.

12          THE COURT:  Do you have any questions about

13  the conditions that counsel just put on the record a

14  few minutes ago, where you are not allowed to go, who

15  you are not allowed to see, any of the other directions

16  that you're going to be given by the Pretrial Services

17  officer who is going to be monitoring you when you go

18  back to Florida?  Any questions whatsoever because now

19  is the time to ask them of your attorney.

20          MR. HANTMAN:  I just want to make clear, and

21  I spoke to the prosecution about this, we decided on

22  American funds and we believe there is sufficient money

23  in the mutual fund.  We can't, without having access to

24  those accounts, be 100% certain, but we know that the

25  financial advisor that the family uses certainly has

1    more than enough (ui).

2              MR. LaVERNE:  Why don't we just say by the

3    end of the day Tuesday, counsel and his client will

4    check the account.  If it turns out that the money is

5    in some other account, we'll amend the bond.

6              THE COURT:  Okay.  We also need to have the

7    properties posted by Tuesday.  Is that the idea?

8              MR. LaVERNE:  Right.

9              THE COURT:  That can be done, counsel?

10             MR. HANTMAN:  In terms of (ui) and things of

11   that nature.

12             MR. LaVERNE:  I talked to -- Mr. Bartman, is

13   that your partner?

14             MR. HANTMAN:  Barton.

15             MR. LaVERNE:  Barton.  We've spoken about

16   this and he understands that he needs to do whatever

17   process is needed in Texas and Miami.  It varies from

18   state to state.

19             THE COURT:  Right.

20             MR. LaVERNE:  To perfect the bond and assure

21   that that asset can be attached to the extent the bond

22   is violated.  We'll have further conversations.  As I

23   think noted in the bond, the time can be extended with

24   our consent.  If there's a big issue with that,

25   obviously, we'll (ui).

1          THE COURT:  Finally, you understand you're

2   not to have any contact with all of the organizations

3   and people who work for those organizations that

4   counsel read on the record.

5          Do you understand that?

6          THE DEFENDANT:  Yes, I do.

7          THE COURT:  Would you take the signatures of

8   the suretors, please?

9          Counsel, is there any reason that I should

10  not impose the cost of monitoring on the defendant?

11         MR. HANTMAN:  Well, he can't work and

12  finding a job in these circumstances is going to be

13  next to impossible.  He has a young family, two young

14  kids at home, and Ms. Dryjenski does not work.  I would

15  say that his financial -- good financial days are

16  probably in the past, your Honor.

17         THE COURT:  I have no idea what his assets

18  are like.  The government probably has a better sense

19  of this than I do.  Normally, we don't impose the cost

20  of monitoring with indigent clients.

21         MR. LaVERNE:  We usually defer to the Court

22  in these matters but I believe that the defendant has

23  something in the order of $700,000 (ui).  As I

24  understand it, it costs about $100 a month.

25         THE COURT:  It's not expensive, so I'm going

```
1    to impose the cost of monitoring.  We also have an

2    application for excludable delay.

3            MR. LaVERNE:  Yes, your Honor, on the basis

4    of ongoing plea negotiations.  I've spoken to Judge

5    Dearie's chambers and he's concurred that it's

6    appropriate in this case.

7            THE COURT:  Okay.  From today's date until

8    the 17th of July?  Is that the idea?

9            MR. LaVERNE:  Correct.

10           THE COURT:  Mr. Davidson, I want to make

11   sure you understand what we're talking about now.

12   Under the Constitution and the laws of the United

13   States, you're entitled to a speedy and public trial by

14   jury commencing within 70 days of the filing of the

15   indictment, which is what I read to you a few minutes

16   ago.  If the government fails to bring you to trial

17   within that 70-day time period, that can later be the

18   basis for your to move to dismiss the charges against

19   you.

20           What the government has indicated to me is

21   that they have reached an agreement with your attorney

22   and they want me to exclude or not count the time from

23   today until July 17th.

24           Is that when he's going to be appearing

25   before the judge?
```

```
1                  MR. LaVERNE:  Yes.

2                  THE COURT:  Because during that period of

3    time, your attorney and the government are going to be

4    having a conversation to see if they can resolve the

5    case without the need for a trial.  It's difficult to

6    both prepare for trial and also engage in plea

7    negotiations at the same time.

8                  Do you understand that?

9                  THE DEFENDANT:  Yes, I do.

10                 THE COURT:  Have you discussed this with

11   your attorneys?

12                 THE DEFENDANT:  Yes, I have.

13                 THE COURT:  Do you wish me to enter this

14   order of excludable delay so that these plea

15   discussions can continue?

16                 THE DEFENDANT:  Yes, I do.

17                 THE COURT:  I don't know if you can see

18   that, sir, but is that your signature?

19                 THE DEFENDANT:  Yes.

20                 THE COURT:  I'll approve the order of

21   excludable delay, finding that it is in the best

22   interests of both the public and the defendant, while

23   plea negotiations proceed.

24                 Anything else?

25                 MR. LaVERNE:  Thank you, your Honor.
```

```
1    Nothing else from the government.
2             THE COURT:  Thank you.
3             MR. HANTMAN:  Thank you, your Honor.
4                     * * * * * * * * *
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18        I certify that the foregoing is a correct
19   transcript from the electronic sound recording of the
20   proceedings in the above-entitled matter.
21
22
23
24
25   ELIZABETH BARRON                    June 16, 2015
```