```
               UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF NEW YORK

----------------------------X
                            :
UNITED STATES OF AMERICA,    :
                            :    15-CR-252 (RJD)
        v.                   :
                            :    July 18, 2015
JEFFREY WEBB,                :
                            :    Brooklyn, New York
             Defendant.      :
                            :
----------------------------X
```

            TRANSCRIPT OF CRIMINAL CAUSE FOR ARRAIGNMENT
                BEFORE THE HONORABLE VERA M. SCANLON
                  UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:          KELLY T. CURRIE, ESQ.
                             UNITED STATES ATTORNEY
                             BY: DARREN LaVERNE, ESQ.
                                 EVAN NORRIS, ESQ.
                                 KEITH EDELMAN, ESQ.
                             ASSISTANT U.S. ATTORNEYS
                             271 Cadman Plaza East
                             Brooklyn, New York  11201


For the Defendant:           EDWARD O'CALLAHAN, ESQ.


Audio Operator:


Court Transcriber:           ARIA SERVICES, INC.
                             c/o Elizabeth Barron
                             102 Sparrow Ridge Road
                             Carmel, NY 10512
                             (845) 260-1377



Proceedings recorded by electronic sound recording,
transcript produced by transcription service

1          THE CLERK:  Criminal cause for arraignment,

2    case number 15-CR-252, United States v. Jeffrey Webb.

3          Counsel, please state your name for the

4    record.

5          MR. LaVERNE:  Good afternoon, your Honor,

6    Darren LaVerne, Evan Norris and Keith Edelman for the

7    United States.

8          THE COURT:  Good afternoon.

9          MR. O'CALLAHAN:  Good afternoon, your Honor,

10   Edward O'Callahan and Gia Rue (ph) for Mr. Webb.

11          THE COURT:  And that's your client with you?

12          MR. O'CALLAHAN:  Yes, your Honor.

13          THE COURT:  We're here for couple of

14   purposes, first for the arraignment.

15          Mr. Webb, we're here because a grand jury

16   has returned an indictment charging you with several

17   offenses.  The purpose of today's proceeding is to make

18   sure you understand the crimes with which you are

19   charged, to make sure you understand you have the right

20   to be represented by an attorney and if you can't

21   afford one, one will be appointed by the Court for you,

22   to take your plea with regard to the charges against

23   you and to address the question of whether you should

24   be released on a bond or held in jail.

25          Do you understand that?

1                    THE DEFENDANT:  Yes, your Honor.

2                    THE COURT:  With regard to your right to be

3     represented by counsel, you have a retained attorney,

4     is that correct?

5                    THE DEFENDANT:  Yes, your Honor.

6                    THE COURT:  So you want Mr. O'Callahan and

7     his associate to represent you, is that correct?

8                    THE DEFENDANT:  Yes, your Honor.

9                    THE COURT:  I have his notice of appearance.

10    I'm also going to let you know you have the right to

11    remain silent.  That means you don't have to say

12    anything.  If you've made a statement in the past, you

13    don't need to say anything now.  If you start to speak,

14    you can stop.  You should know that anything you do say

15    except to your attorney may be used against you.

16                    Do you understand your right to remain

17    silent?

18                    THE DEFENDANT:  Yes, your Honor.

19                    THE COURT:  Have you seen this document, the

20    indictment?

21                    THE DEFENDANT:  Yes, your Honor.

22                    THE COURT:  Have you had an opportunity to

23    review?

24                    THE DEFENDANT:  Yes.

25                    THE COURT:  Did you go over it with your

1  attorney?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  Do you understand the charges

4  against you?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Counsel, did you go over the

7  indictment?

8          MR. O'CALLAHAN:  Yes, your Honor.

9          THE COURT:  Did you review it with your

10 client?

11         MR. O'CALLAHAN:  Yes.

12         THE COURT:  Do you have any doubts about his

13 understanding of the charges against him?

14         MR. O'CALLAHAN:  No, your Honor.

15         THE COURT:  Do you want me to read the

16 indictment?

17         MR. O'CALLAHAN:  No, we waive its public

18 reading, Judge.

19         THE COURT:  Is the defendant prepared to

20 plead?

21         MR. O'CALLAHAN:  Yes, your Honor.

22         THE COURT:  As to all counts in the

23 indictment against him, how does he plead, guilty or

24 not guilty?

25         MR. O'CALLAHAN:  Not guilty, your Honor.

1            THE COURT:  Mr. Webb, you're in agreement

2    with that plea?

3            THE DEFENDANT:  Yes, your Honor.

4            THE COURT:  There's a bail application?

5            MR. LaVERNE:  Yes, your Honor, which I'll

6    summarize.  Before we do that, I just want to put on

7    the record that the defendant is a citizen of the

8    Cayman Islands and he's waived consulate notice.

9            THE COURT:  As to the other administrative

10   things, is there any issue about inventory?  I know he

11   was extradited.

12           MR. LaVERNE:  I think we've handled that

13   amongst ourselves.

14           THE COURT:  All right

15           MR. LaVERNE:  With respect to the proposed

16   bail package, the parties have reached an agreement.  I

17   believe it's in front of your Honor.  There are three

18   attachments, A, B and C.  The conditions and the

19   security is quite extensive.  I'm going to summarize

20   them for the record right now.

21            It's a ten-million-dollar secured bond.  The

22   bond is secured by ten real properties.  Two of those

23   properties are held jointly by Mr. Webb and his wife.

24   One of the properties is held by just Mrs. Webb and two

25   of the properties are held individually by Mr. Webb.

```
1    One of the properties is held by Mrs. Webb's parents.

2    One of the properties is held by an uncle.

3              THE COURT:  Those are the Jones's?

4              MR. LaVERNE:  Correct.

5              THE COURT:  Baden (ph) is the uncle?

6              MR. LaVERNE:  Correct.

7              THE COURT:  Okay.

8              MR. LaVERNE:  And then three of the

9    properties held by a cousin of Mr. Webb's.  They're set

10   forth in 8, 9 and 10 of attachment B.

11             In addition to the real properties, there's

12   a number of other items securing the bond.  There are

13   three cars which were set out in attachment B.  There's

14   an account, a 401(k) account held by TD Ameritrade.

15   There is a partnership equity interest which belongs to

16   Mr. Webb's wife.  There is a piece of jewelry also

17   owned by Mr. Webb's wife that secures the bond.

18             THE COURT:  With regard to number 4 and

19   number 5, that's the 401(k) account and the partnership

20   equity interest, how are they going to be posted or

21   what does that mean?  How does she secure something

22   with her interest in her work?

23             MR. LaVERNE:  We're asking that they not be

24   hypothecated or liquidated.  If that were done, it

25   would obviously be a violation of the bond.  Beyond
```

1    that, there's not going to be a security interest

2    perfected.

3              THE COURT:  Is she in partnership with

4    others --

5              MR. LaVERNE:  Correct.

6              THE COURT:  -- in the dental practice?

7              MR. LaVERNE:  Correct.

8              THE COURT:  Is she going to give them

9    notice?

10             MR. O'CALLAHAN:  Yes, your Honor.

11             THE COURT:  Then you have number 6 on that

12   list.

13             MR. LaVERNE:  Correct.  The last category of

14   items securing the bond are items that had actually

15   been provided to the FBI and will be provided to the

16   clerk of court and held by the court as security.

17   Those two are listed in attachment B.  There's a number

18   of watches and pieces of jewelry owned by either Mr.

19   Webb or his wife.

20             There will be the signatures of ten co-

21   signers on this bond.  Their names are set forth in

22   attachment C.  Four of those co-signers will sign the

23   bond today.

24             THE COURT:  That's Ms. Gamble Webb, Mr.

25   Jones, Ms. Jones and you have another Ms. Jones, right?

1          MR. LaVERNE:  Correct.  That is Ms. Gamble

2    Webb, which is again Mr. Webb's wife, and her parents

3    and her grandmother.  The number of other co-signers

4    that are listed in attachment C, the agreement is that

5    they will sign the bond no later than Monday, July 20th.

6          THE COURT:  The second-to-last person on the

7    list, who is she or he?

8          MR. LaVERNE:  Mr. Webb's brother, one of his

9    brothers.

10          THE COURT:  They don't all live in New York?

11          MR. LaVERNE:  No, they're at various places.

12          THE COURT:  So you've got to make

13    arrangements for them to sign?

14          MR. O'CALLAHAN:  Yes.  We already started

15    that, Judge.  (ui).

16          THE COURT:  Okay.

17          MR. LaVERNE:  With respect to the other

18    conditions on the bond, the bond sets forth in

19    attachment A a number of restrictions, which again I'll

20    summarize.  Mr. Webb, the defendant, will be subject to

21    electronic monitoring and home detention at a location

22    approved in writing by the FBI provided to the office

23    of Pretrial Services.  Until further amendment of the

24    bond, the residents must be within twenty miles of the

25    United States district court of the Eastern District of

1    New York, this courthouse.

2              The defendant may leave his residence only

3    upon approval in writing by the FBI and Pretrial

4    Services and under terms and conditions approved in

5    writing by the FBI and Pretrial Services.  Costs of

6    electronic monitoring shall be borne solely by the

7    defendant.

8              THE COURT:  What are you going to do about

9    the circumstances that are usually exemptions, such as

10   medical emergencies, consulting with counsel, religious

11   services?  What if that needs to happen on a quick

12   basis?

13             MR. LaVERNE:  I think we can make a

14   provision obviously for medical emergencies.  The other

15   items, I think right now the condition is that the FBI

16   must approve any other reason for leaving the

17   apartment.

18             THE COURT:  Mr. O'Callahan, is there any

19   other reason besides medical emergency where you can

20   envision might need to leave his apartment without

21   having sufficient time to get this approval by the FBI

22   and Pretrial Services?

23             MR. O'CALLAHAN:  We did contemplate

24   obviously visits to the courthouse and attorney visits

25   and church services, your Honor.

1          MR. LaVERNE:  I think the agreement, as I

2    understand it, is we will make exception for attorney

3    visits, court visits and church visits but those visits

4    must be brought to the attention of the FBI prior to

5    Mr. Webb leaving the premises.

6          THE COURT:  Except for the medical

7    emergencies.

8          MR. LaVERNE:  Correct.

9          THE COURT:  You're going to continue.  Go

10   ahead.

11         MR. LaVERNE:  With respect to -- again, with

12   respect to monitoring the defendant while he's on

13   pretrial release, there's another condition.  I'm

14   reading now from paragraph 6 of attachment A.  A

15   private security service approved by the U.S.

16   attorney's office and FBI will monitor the defendant's

17   physical location and provide security 24 hours per

18   day, seven days per week.

19         The private security service shall accompany

20   the defendant during transit to and from his residence

21   and this courthouse, the offices of his attorneys, and

22   any other place as to which the defendant's travel has

23   been approved in writing and Pretrial Services as set

24   forth in the paragraphs I just read from, paragraphs 1

25   and 5.

1           The private security service shall be

2    directed by and report to the FBI.  The costs of the

3    private security service shall be borne solely by the

4    defendant.

5           THE COURT:  In that one, shouldn't the

6    approval part of that be taken out?  Aren't they going

7    to accompany him everywhere?  And then the other

8    paragraphs tell you what it is that he's allowed to do.

9           MR. LaVERNE:  I think we're fine with the

10   linguistic change.  The notion is that if he's leaving

11   the premises at any time, under the conditions of the

12   bond, he must be accompanied by the security service.

13          THE COURT:  How is that going to work with

14   regard to the attorney visits?  Presumably, they're not

15   going to attend the meetings but they can be outside.

16   There can be some private meetings, correct?

17          MR. LaVERNE:  Certainly.  Mr. O'Callahan can

18   meet with his client privately, obviously, but the

19   security service would be posted outside during the

20   course of the meetings.

21          THE COURT:  Okay.  Mr. O'Callahan and --

22          MR. LaVERNE:  Mr. O'Callahan and any other

23   members of his legal term or legal staff.

24          THE COURT:  Paragraph 6 will be amended so

25   that after "any other place" through the end of that

```
 1   sentence, that's taken out.  It says Mr. O'Callahan and

 2   other legal staff/attorneys may have private attorney

 3   meetings with Mr. Webb with the security service in

 4   sufficient proximity to perform their duties.  Does

 5   that work?

 6             MR. O'CALLAHAN:  Sorry, Judge, the last part

 7   I didn't hear.

 8             THE COURT:  Mr. O'Callahan and other legal

 9   staff/attorneys may have private attorney meetings with

10   Mr. Webb with the security service in sufficient

11   proximity to perform their duties.

12             MR. O'CALLAHAN:  That's fine with the

13   defendant, your Honor.

14             MR. LaVERNE:  That's fine.

15             THE COURT:  Have you worked that out

16   already, the security service?

17             MR. LaVERNE:  Yes, those arrangements have

18   been made.

19             A number of other conditions on the bottom.

20   Mr. Webb and his wife shall surrender any -- in fact

21   have surrendered already passports to the FBI.  That's

22   attachment A, paragraph 4.  I would just note for the

23   record that Mr. Webb has represented that he has three

24   passports all of which have been turned over.  Two of

25   them are United Kingdom passports, one of them is a
```

1  Cayman Islands passport.  Mrs. Webb has represented

2  that she has one passport, which is a United States

3  passport.

4          THE COURT:  And they have a child.

5          MR. LaVERNE:  That's right.

6          THE COURT:  Does the child have a passport

7  yet?

8          THE DEFENDANT:  Yes.

9          THE COURT:  What about the child's passport?

10          MR. LaVERNE:  There are no conditions with

11  respect to the child's passport.

12          THE COURT:  So the FBI has the passports?

13          MR. LaVERNE:  Right.

14          THE COURT:  You're going to give them to

15  Pretrial or you need them?

16          MR. LaVERNE:  I think we'd like to keep them

17  in the custody of the FBI.

18          THE COURT:  Other conditions?

19          MR. LaVERNE:  The other conditions, your

20  Honor, are the regular conditions attached to

21  supervision by Pretrial.  In this case, we've also

22  added supervision by and according to the FBI as

23  directed.

24          THE COURT:  What about -- you have a second

25  condition on the standard bond?

1           MR. LaVERNE:  Oh, yes, thank you, your

2     Honor.  There's a non-association provision which

3     provides -- again, this is paragraph 2, attachment A.

4     The defendant will not directly or indirectly associate

5     or have contact with his codefendants or coconspirators

6     or any individual employed by or associated with the

7     following entities:

8                1)  Any sports marketing company identified

9     in the indictment in this case, including without

10    limitation Torneos Accompatensias (ph), Full Play and

11    the Traffic Group or any subsidiary or affiliate of the

12    foregoing companies.

13               2)  CONCACAF and any affiliated or

14    constituent entity.

15               3)  CONMEBOL and any affiliated or

16    constituent entity.

17               4)  FIFA and any affiliated or constituent

18    entity.

19          THE COURT:  What does that mean with regard

20    to the unnamed coconspirators that are listed in the

21    indictment?  Does Mr. Webb know who they are?

22          MR. O'CALLAHAN:  No, your Honor.

23          MR. LaVERNE:  What we can do, your Honor, is

24    submit under seal and agreed list of coconspirators he

25    can't associate with.

```
 1                THE COURT:  Okay, Mr. O'Callahan?

 2                MR. O'CALLAHAN:  Yes, Judge, thank you.

 3                THE COURT:  When are you going to provide

 4   that?

 5                MR. LaVERNE:  I'm sorry, your Honor?

 6                THE COURT:  When will you provide the list?

 7                MR. LaVERNE:  We'll provide the list by the

 8   end of this coming week, July -- by the 4$^{th}$.

 9                THE COURT:  Any other condition?

10                MR. LaVERNE:  No, that's it, your Honor.

11                THE COURT:  Mr. O'Callahan, do you want to

12   add anything?

13                MR. O'CALLAHAN:  Not at this time, Judge.

14                THE COURT:  So we have the four sureties

15   here?

16                MR. O'CALLAHAN:  Yes, Judge.

17                THE COURT:  Why don't they come up.

18                (Sureties are sworn.)

19                THE CLERK:  State your name for the record.

20                MS. MILDRED JONES:  Mildred Jones.

21                MS. PHYLLIS JONES:  Phyllis Jones.

22                MR. JONES:  Leroy Jones.

23                MS. WEBB:  Kendra Gamble Webb.

24                THE COURT:  Mr. O'Callahan, do you have some

25   information about the four sureties?
```

1          MR. O'CALLAHAN:  Yes, your Honor.  Kendra

2   Gamble Webb is Mr. Webb's wife.  They reside together

3   in Loganville, Georgia.  Phyllis Jones is Kendra Gamble

4   Webb's grandmother and she resides in Brooklyn, New

5   York.  Mr. and Mrs. Jones are Kendra's parents and they

6   currently reside in Topyhanna (ph), Pennsylvania.

7          THE COURT:  Do you have any information

8   about their assets, the financial circumstances?

9          MR. O'CALLAHAN:  Yes, your Honor.  We have

10  provided extensive information regarding the assets.

11  All of the co-signers have been interviewed

12  telephonically by the United States attorney's office

13  prior to their appearance here today and they have been

14  approved as financially responsible individuals and

15  appropriate co-signers, as I understand it, by the U.S.

16  attorney's office.

17          MR. LaVERNE:  Your Honor, I'll just say for

18  the record we have interviewed the proposed co-signers

19  and we're satisfied that they are either financially

20  responsible persons or moral suasion suretors and are

21  acceptable on this bond.

22          THE COURT:  For the record, why don't you

23  give me who they are.  Obviously, you just gave me some

24  of them.  Tell me a little bit about their financial

25  circumstances and then fill in some information about

1   the others who are not here but who plan to sign by

2   Monday.

3            MR. O'CALLAHAN:  Okay.  Without the notes in

4   front of me --

5            THE COURT:  That's okay.

6            MR. O'CALLAHAN:  Ms. Kendra Webb is a

7   physician, a practicing OBGYN.  She is the owner of the

8   home in Loganville, Georgia with Mr. Webb.  She also

9   owns a separate property in Stone Cross, Georgia, as I

10  understand it.

11           THE COURT:  Stone Mountain.

12           MR. O'CALLAHAN:  Stone Mountain, thank you,

13  Georgia.  She is currently working on a consultant

14  basis.  She had not been actively working since the

15  birth of their son one year ago but she has now started

16  working again on a consulting basis and is trying to

17  join a new partnership in the Georgia area.

18           THE COURT:  Just to ask the question, one of

19  the things being posted is her partnership equity

20  interest.  Does that exist?

21           MR. O'CALLAHAN:  It does exist, your Honor.

22  That is from her prior partnership she left several

23  years ago.  We've explained to the U.S. attorney's

24  office that there's approximately $40,000 left in that

25  equity, so that is the amount that is being posted.

1          THE COURT:  How about the two Jones's?

2          MR. O'CALLAHAN:  Ms. Gamble Webb's parents

3    are -- her mother just recently retired after I think

4    25 years or thereabouts being fully employed I think in

5    the financial industry.

6          MS. MILDRED JONES:  Yes.

7          MR. O'CALLAHAN:  Her father is still

8    currently employed by the City of New York in an

9    administrative position.  They own their home in

10   Topyhanna, Pennsylvania.  There is equity in the home

11   of approximately $70,000, I believe.  The other assets

12   of each of them have been presented to the U.S.

13   attorney's office.

14         THE COURT:  And then Ms. Phyllis Jones?

15         MR. O'CALLAHAN:  Judge, off the top of my

16   head -- I'm just going to have to consult with her.

17         THE COURT:  You can ask.  I'm sure she can

18   speak for herself.

19         MR. O'CALLAHAN:  Thank you, your Honor.  Ms.

20   Jones, as I said, is retired and she does receive a

21   pension of approximately $3,500 a month.  She owns her

22   home in Brooklyn.  There's equity in the home of

23   approximately $30,000, she estimates.

24         THE COURT:  And as to the other five

25   individuals?  I think we talked a little bit about some

1   of their relationships but if you could summarize it,

2   the other people who are going to sign the bond by

3   Monday or on Monday.

4            MR. O'CALLAHAN:  Sure, Judge.  I'm just

5   going to refer --

6            MR. LaVERNE:  I can actually respond.

7            THE COURT:  Sure.

8            MR. LaVERNE:  I just interviewed them

9   recently and I happen to have some notes.

10           THE COURT:  For the record, yes.

11           MR. LaVERNE:  With respect to India

12  Beckford, that's a half-sister of Mr. Webb.  She's a

13  United States citizen, she's an accountant.  She made

14  about $35,000 last year, lives in Tampa.  She has some

15  assets but not an enormous amount of financial interest

16  in property.

17           Delroy Webb, who again is Mr. Webb's cousin,

18  also is a United States citizen.  He has an extensive

19  net worth, over a million dollars.  He's a practicing

20  dentist again in the Florida area.

21           Arthur Webb is a United States citizen, also

22  lives in Tampa, again a brother of the defendant.  He's

23  more of a moral suasion kind of suretor.

24           THE COURT:  The other Webb's and Baden.

25           MR. LaVERNE:  Mr. Baden again is an uncle of

1   Mr. Webb's.  He retired in 2004.  He had worked as a

2   manager, as a corrections officer manager.  He has

3   about $60,000 in a 401(k).  He owns a car.  Otherwise,

4   he lives on Social Security.

5            Marjorie?  Is that the last one?  That's Mr.

6   Webb's mother, again more in the nature of a moral

7   suasion suretor.  She lives in the Florida area, has a

8   401(k) plan with about $30,000 and is currently living

9   on an annuity.

10           THE COURT:  Thank you.  Let me ask a

11   practical question.  Given all of the assets that are

12   being posted, does Mr. Webb have sufficient income to

13   pay for this private security service?

14           MR. O'CALLAHAN:  Your Honor, he has assets.

15   The particular private security service -- we're in

16   conversation with the U.S. attorney's office about

17   which assets can be applied to cover the costs.

18           THE COURT:  You're amenable to continuing

19   that conversation so that he'll be in a position to

20   comply with this?

21           MR. LaVERNE:  Right.  We're aware of that

22   issue and we're negotiating with the defense about it.

23           THE COURT:  For the four sureties, I'm going

24   to explain how this process works.  What's been

25   proposed by the government and Mr. Webb's counsel is

1    that he be released on a ten-million-dollar bond with

2    many restrictions.  What I'm going to do is go over the

3    bond with Mr. Webb and ask you to listen and then come

4    back and ask you if you have any questions.  If you are

5    then at that point -- if I'm satisfied that you can be

6    a surety and if you would still like to be a surety,

7    we'll have you confirm your signatures.

8              Let me just ask you, for the four of you who

9    are here, you heard Mr. O'Callahan and the government's

10   attorney tell me a little bit about yourselves and your

11   assets.  Is everything that he said correct?

12             SURETIES:  Yes.

13             THE COURT:  He correctly described your

14   relationship to Mr. Webb?

15             SURETIES:  Yes.

16             THE COURT:  Mr. Webb, the way the bond works

17   is it's a ten-million-dollar bond.  So if you fail to

18   comply with the conditions of the bond, which I'm going

19   to go over, the government is entitled to collect up to

20   ten million dollars.  There will be many assets posted

21   so the government can seek to satisfy the ten million

22   dollars through those assets but it could also seek it

23   from any other source of income or assets that you or

24   any of the sureties have.  They can seek it from -- all

25   the money from you, some of it from you and some of it

1   from the others, all of it from another person, however

2   it needs to get to the ten million dollars.

3              Do you understand that?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  So for the sureties, this is a

6   very significant financial commitment to you.

7              Do you understand that?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  The conditions include the

10  following:  You have to remain in and you cannot leave

11  the following areas.  Those are described in an

12  attachment which I will get to.  You have to avoid all

13  contact and not associate with certain persons.  We're

14  going to go over that in a little bit of detail in a

15  minute.

16             You have to surrender your passport.  I

17  understand that that's already happened.  You have

18  multiple passports and those passports and those of

19  your wife are in the custody of the FBI.

20             Do you understand that?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  You also can't apply for any

23  other passport.  You're going to be placed under the

24  express supervision of the Pretrial Services Agency and

25  the FBI.

1              Do you understand that?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  The supervision will include

4   being subject to random visits by a Pretrial Services

5   officer and/or FBI agents at your home and/or at your

6   place of work.  You're going to have to report to the

7   FBI or Pretrial Services as directed.

8              Do you understand that?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  You're also going to be subject

11  to home detention with location and electronic

12  monitoring.

13             Do you understand that?  We're going to go

14  over that in a little bit more detail.

15             THE DEFENDANT:  Yes, your Honor.

16             THE COURT:  For the record and for the

17  sureties and for you, Mr. Webb, so you understand

18  exactly what the conditions are, I'm going to go over

19  them.  There's attachment A to the bond which outlines

20  these as set forth in paragraph 5.  These are a little

21  bit duplicative but just so everybody is clear.

22             The defendant is subject to electronic

23  monitoring and home detention at a location approved in

24  writing by the FBI and provided to the office of

25  Pretrial Services.  Until further amendment of this

1  bond, the residence must be within twenty miles of the

2  United States district court for the Eastern District

3  of New York, 225 Cadman Plaza East, Brooklyn, New York.

4  That's this courthouse.

5          The defendant may leave his residence only

6  upon approval in writing by the FBI and Pretrial

7  Services and under the terms and conditions approved in

8  writing by the FBI and Pretrial Services.  The cost of

9  the location and electronic monitoring shall be borne

10 solely by the defendant.  The defendant may leave home

11 for medical emergencies, attorney visits, court visits

12 and religious services may be undertaken with notice to

13 the FBI and Pretrial Services.

14         Do you understand the provision?

15         THE DEFENDANT:  Yes, I do.

16         THE COURT:  You may not directly or

17 indirectly associate or have contact with any

18 codefendants or coconspirators or any individual

19 employed by or associated with the following entities:

20         1)  Any sports marketing company identified

21 in the indictment in this case, including without

22 limitation Torneos Accompatensias, S.A., Full Play,

23 S.A. and the Traffic Group or any subsidiary or

24 affiliate of the foregoing companies.

25         2)  CONCACAF and any affiliated or

1    constituent entity.

2               3)   CONMEBOL and any affiliated or

3    constituent entity.

4               4)   FIFA and any affiliated or constituent

5    entities.

6               The list of unidentified coconspirators will

7    be provided to you and your attorney by 7/24/15 under

8    seal.

9               Do you understand that limitation?

10              THE DEFENDANT:  Yes, I do.

11              MR. O'CALLAHAN:  Can I have one second, your

12   Honor?

13              THE COURT:  Yes.

14              (Pause in Proceedings)

15              MR. O'CALLAHAN:  Thank you, Judge.

16              MR. LaVERNE:  Did your Honor want the list

17   provided under seal to the Court or just provided to

18   the defense?

19              THE COURT:  I don't think we need it.

20              MR. LaVERNE:  Okay.  We'll just provide it

21   to the defense.

22              THE COURT:  It will be confidential.

23              Mr. Webb, you and your wife shall surrender

24   any and all passports to the FBI.  I understand that

25   that's already happened, is that correct?

```
1                    THE DEFENDANT:  Yes, it has.

2                    THE COURT:  And you understand that

3     provision.

4                    THE DEFENDANT:  Yes.

5                    THE COURT:  Let me just ask, is there an

6     issue about having the electronic monitoring start this

7     weekend.  We're going to do location monitoring and

8     then switch to GPS?

9                    MR. LaVERNE:  Other way around, your Honor.

10                    THE COURT:  Other way around.

11                    MR. LaVERNE:  Maybe Pretrial can speak to

12     that.

13                    PRETRIAL SERVICES:  Today, I'm going to put

14     the R.F. on.

15                    THE COURT:  Okay.

16                    PRETRIAL SERVICES:  (Ui) GPS.

17                    THE COURT:  You're going to be subject to

18     electronic monitoring.  That's going to take different

19     forms, what the Court and Pretrial Services is able to

20     do this weekend and then with your attorney and with

21     the government, we'll work out having a different form

22     of electronic monitoring.  But you're going to be

23     subject to it and you're subject to home detention at a

24     residence approved in writing by the FBI and Pretrial

25     Services.  Basically whatever is in paragraph 1, but
```

1   just so it's 100% clear.

2           Until further amendment of this bond, the

3   residence must be within twenty miles of the United

4   States district court for the Eastern District of New

5   York, 225 Cadman Plaza East, Brooklyn, New York.

6   That's this courthouse.  You may leave your residence

7   only upon approval in writing by the FBI and Pretrial

8   Services under terms and conditions approved in writing

9   by the FBI and Pretrial Services.  The cost of

10  electronic monitoring shall be borne by the defendant.

11  There is the exception for medical emergencies,

12  attorney visits, court visits and religious services

13  that was noted in paragraph 1.

14          I'm going to give you an opportunity to look

15  at this paperwork and the sureties as well, so everyone

16  can see exactly what it is that the paper says.

17          6.  A private security service approved by

18  the U.S. attorney's office and the FBI will monitor the

19  defendant's physical location and provide security 24

20  hours per day, seven days per week.  The private

21  security service shall accompany the defendant during

22  transit to and from his residence to this courthouse,

23  the offices of his attorneys and any other place.  The

24  private security service shall be directed by and

25  report to the FBI.  The cost of the private security

1   service shall be borne solely by the defendant.  Mr.

2   O'Callahan and other legal staff/attorneys may have

3   private attorney meetings with Mr. Webb with the

4   security service in sufficient proximity to perform

5   their duties.

6          Do you understand all of these conditions?

7          THE DEFENDANT:  Yes, I do.

8          THE COURT:  With regard to the bond, you are

9   requested to sign and your wife and the other people

10  who are the sureties.  There are going to be properties

11  posted.  Those properties, which are real properties,

12  are listed on attachment B.  There's also personal

13  property that is going to be posted which is starting

14  towards the bottom of attachment B and continuing on

15  the second page.

16         The security on the properties that are

17  listed in paragraphs 1, 2, 3, 6 and 7 of attachment B

18  at the top of the page need to be perfected by Monday,

19  July 27th, 2015 and security on the remaining properties

20  will need to be perfected no later than Monday, August

21  3rd, 2015.  All the security shall be perfected in a

22  form acceptable to the U.S. attorney's office.

23         Do you understand that?

24         THE DEFENDANT:  Yes, I do.

25         THE COURT:  Mr. O'Callahan, you're going to

1    be able to work with everyone so that you can perfect

2    these properties which are in different states?

3    Sometimes that gets a big complicated.

4                MR. O'CALLAHAN:  We have already started the

5    process.

6                THE COURT:  Sometimes it takes quite a bit

7    of effort to do that.

8                MR. O'CALLAHAN:  Yes.

9                THE COURT:  Mr. Webb, let me give you a few

10   more warnings.  If you fail to come to court as

11   directed or violate any of the other conditions of

12   release, a warrant will issue for your arrest.  You may

13   then be held without bond until your trial.

14                Do you understand that?

15                THE DEFENDANT:  Yes, I do.

16                THE COURT:  Your failure to appear will

17   result in charges of bail jumping.  That's a separate

18   felony offense.  It carries its own term of

19   imprisonment.  You may be acquitted or found not guilty

20   of the underlying charges against you and yet have to

21   go to jail simply because you didn't come to court as

22   directed.  If you're convicted of the underlying

23   charges, any sentence for bail jumping may be

24   consecutive to the sentence on the underlying crime or

25   crimes for which you may be convicted.

1          Do you understand that?

2          THE DEFENDANT:  Yes, I do.

3          THE COURT:  As part of the conditions of the

4    bond, you cannot commit any crimes while on bond.  If

5    you do so, you may face additional charges for the

6    separate crime or crimes you're alleged to have

7    committed.  You may also face increased punishment as

8    the result of any crime committed while on bail.

9          Do you understand that?

10         THE DEFENDANT:  Yes, I do.

11         THE COURT:  You're not to threaten or

12   attempt to influence the testimony of any person you

13   think may be a witness against you in this case.  If

14   you do that, the bond will be revoked and you may face

15   additional charges for witness tampering or obstruction

16   of justice.

17         Do you understand that?

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  Let me just go back to the

20   sureties.  Do you understand how this bond works?

21         SURETIES:  Yes.

22         THE COURT:  So for all of you, you're taking

23   a significant financial step.  Since this is a ten-

24   million-dollar bond, the exposure for your financial

25   circumstances is significant.  If Mr. Webb were not to

1  adhere to the conditions of this bond, which I've gone

2  over and I'm going to give you an opportunity to look

3  at, as I mentioned to him and I hope you heard, the

4  government is entitled to collect its ten million

5  dollars.

6           So they can take that money in whole or in

7  part from the property that's posted, the real

8  property, the address that are listed on attachment B,

9  and from the personal property.  But they can also come

10 and collect against any real property you own, any

11 personal property you own, any income that they're

12 entitled to collect against.

13           Do you understand that?

14           SURETIES:  Yes.

15           THE COURT:  Do all of you still want to be

16 sureties on this bond?

17           SURETIES:  Yes.

18           THE COURT:  Even though you signed the bond,

19 because I wrote some amendments on attachment A --

20           I'm going to pass this over to you.  Krista,

21 can you pass that down?

22           I'm going to ask you to look at it.  If you

23 have any questions, let me know.  Then if you are still

24 in agreement that you want to be sureties, please

25 confirm for me that those are your signatures.

```
 1                    (Pause in Proceedings)

 2              MR. O'CALLAHAN:  Thank you, your Honor.

 3              THE COURT:  So for each of the sureties, do

 4    you still want to be a surety on the bond?

 5              SURETIES:  Yes.

 6              THE COURT:  For the record, if you could say

 7    your name and then confirm for me that that's your

 8    signature on the bond.

 9              MS. MILDRED JONES:  Mildred Jones.

10              THE COURT:  And you signed the bond?

11              MS. MILDRED JONES:  Yes, I did.

12              MS. PHYLLIS JONES:  Phyllis Jones.

13              THE COURT:  Did you sign the bond?

14              MS. PHYLLIS JONES:  Yes, I did.

15              MR. JONES:  Leroy Jones.  I did sign the

16    bond.

17              MS. WEBB:  Kendra Gamble Webb.  I signed the

18    bond.

19              THE COURT:  Mr. Webb, you should go over the

20    bond with Mr. O'Callahan and make sure you understand

21    it.  If you have any questions, you can ask him.  If he

22    needs clarification, he can ask me.

23                    (Pause in Proceedings)

24              THE DEFENDANT:  Thank you.

25              THE COURT:  For the government, anything
```

1    else on the bond?

2            MR. LaVERNE:  Nothing with respect to the

3    bond, your Honor.

4            THE COURT:  Mr. O'Callahan, anything else?

5            MR. O'CALLAHAN:  No, your Honor.

6            THE COURT:  Just for the record, Mr. Webb,

7    is that your signature at the bottom?

8            THE DEFENDANT:  Yes, it is, your Honor.

9            THE COURT:  I'm going to sign and approve

10   this bond.

11           You'll be in touch to make sure that those

12   sureties sign in time, the other ones?

13           MR. LaVERNE:  Yes.

14           THE COURT:  You'll all work together.

15           MR. LaVERNE:  We'll confirm with Mr.

16   O'Callahan tomorrow that the sureties have signed the

17   bond.

18           THE COURT:  Okay.  You have an application

19   for an order of excludable delay?

20           MR. LaVERNE:  We do, your Honor.  Judge

21   Dearie designed this case as complex on Friday.  On

22   that basis, we're asking for a thirty-day exclusion of

23   time.

24           THE COURT:  Mr. O'Callahan?

25           MR. O'CALLAHAN:  No objection, your Honor.

1          THE COURT:  Mr. Webb, I'm going to explain a

2     little bit about this application.  Under the

3     Constitution and laws of the United States, you're

4     entitled to a speedy and public trial by a jury that

5     commences within 70 days of the date of the indictment,

6     but there can be periods of excludable delay.  Those

7     periods of excludable delay don't count towards that

8     70-day clock.

9          If the government fails to bring you to

10    trial within the 70-day time period, counting all the

11    days that are permitted to count, not counting the

12    periods of excludable delay, that could be the basis

13    for you to bring a motion to dismiss the case against

14    you.

15          By agreeing to the entry of an order of

16    excludable delay, you're agreeing to stop the speedy

17    trial clock for the excludable period.  What's being

18    proposed here is that the time between today and August

19    17th, 2015 be excluded from that 70-day clock.  By

20    agreeing to the entry of an order of excludable delay,

21    you're giving up your right to make the claim that you

22    were not brought to trial in a timely manner during a

23    period which would include the dates from 7/18/2015 to

24    8/17/15.

25          Do you understand the law in this area?

1              THE DEFENDANT:  Yes, I do.

2              THE COURT:  Do you understand the

3    application?

4              THE DEFENDANT:  Yes, I do.

5              THE COURT:  Are you in agreement with the

6    application?

7              THE DEFENDANT:  Yes, I do.

8              THE COURT:  Did you go over it with your

9    attorney?

10             THE DEFENDANT:  Yes, we did.

11             THE COURT:  Did anyone make any threats or

12   promises to you to induce you to agree to the entry of

13   this order of excludable delay?

14             THE DEFENDANT:  No, your Honor.

15             THE COURT:  Mr. O'Callahan, did you go over

16   the application with your client?

17             MR. O'CALLAHAN:  Yes, Judge.

18             THE COURT:  Do you believe he understands

19   it?

20             MR. O'CALLAHAN:  Yes.

21             THE COURT:  Are you in agreement with the

22   application?

23             MR. O'CALLAHAN:  Yes, your Honor.

24             THE COURT:  Based on what's been said here

25   today by the government's counsel, noting that it's

 1  been designated as a complex case by Judge Dearie and

 2  based on Mr. O'Callahan's and Mr. Webb's statements, I

 3  believe that the application should be granted to

 4  exclude time from 7/18/2015 to 8/17/2015.  I also

 5  believe that the defendant is acting knowingly and

 6  intentionally and entry of this order is in the

 7  interests of justice, the public and the defendant, so

 8  it's granted.

 9              For the government, anything else we should

10  cover today?

11              MR. LaVERNE:  No, thank you very much, your

12  Honor.

13              THE COURT:  Mr. O'Callahan, anything else?

14              MR. O'CALLAHAN:  No, your Honor.

15              THE COURT:  For the sureties, if you have

16  any questions, stay in touch with Mr. O'Callahan.  I'm

17  sure Mr. Webb appreciates your being here today.  For

18  all the defendants who come to court, the moral support

19  of their family and friends is an important thing, so

20  thank you for coming.

21              That's it.  Thank you.  Have a good

22  afternoon.

23              MR. LaVERNE:  Thank you, your Honor.

24                    *  *  *  *  *  *  *  *

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18          I certify that the foregoing is a correct

19    transcript from the electronic sound recording of the

20    proceedings in the above-entitled matter.

21

22

23

24

25    ELIZABETH BARRON                    July 31, 2015