<pre>
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
 2

 3    ----------------------------------X
                                       :
 4    UNITED STATES OF AMERICA         :  15-CR-252 (RJD)
                                       :
 5              v.                     :
                                       :  Brooklyn, New York
 6    WEBB, et al.,                    :  July 31, 2015
                                       :
 7                    Defendants.      :
      ----------------------------------X
 8

 9          TRANSCRIPT OF CRIMINAL CAUSE FOR ARRAIGNMENT
               BEFORE THE HONORABLE VERA M. SCANLON
10                UNITED STATES MAGISTRATE JUDGE

11
      APPEARANCES:
12
      For the Government:        United States Attorneys Office
13                               BY: SAMUEL NITZE, ESQ.
                                     KRISTIN MACE, ESQ.
14                                   EVAN NORRIS, ESQ.
                                 Assistant United States Attorney
15                               271 Cadman Plaza East
                                 Brooklyn, New York  11201
16

17
      For the Defendant:        SEAN PATRICK CASEY, ESQ.
18                              JOHN COURIEL, ESQ.
                                Kobre & Kim
19                              800 Third Avenue
                                New York, New York 10022
20

21
      Court Transcriber:        SHARI RIEMER, CET-805
22                              TypeWrite Word Processing Service
                                211 N. Milton Road
23                              Saratoga Springs, New York  12866

24

25


      Proceedings recorded by electronic sound recording,
      transcript produced by transcription service
</pre>

1   (Proceedings began at 3:01 p.m.)

2   (Audio is not clear during proceedings.)

3           THE CLERK: Criminal Cause for Arraignment, Case No.

4   15-CR-252, United States v. Alejandro Burzaco.

5           Counsel, your name for the record.

6           MR. NITZE:  Sam Nitze, Kristin Mace and Evan Norris

7   for the Government.  Good afternoon, Your Honor.

8           THE COURT: Good afternoon.

9           MR. CASEY:  Sean Casey and John Couriel for Mr.

10  Burzaco.  Good afternoon, Your Honor.

11          THE COURT: Good afternoon.  So, Mr. Burzaco, we're

12  here for several reasons.  The first is to make sure that you

13  understand the crimes that you're charged, make sure you

14  understand some of your rights in this proceeding and to

15  address the question of whether you should be released on bond

16  or held in jail.

17          So with regard to your rights.  You have the right

18  to be represented by an attorney.  If you can't afford an

19  attorney one will be appointed to represent you.  I understand

20  you have retained counsel.  Is that correct?

21          THE DEFENDANT: Yes, Your Honor.

22          THE COURT: Do you want Mr. Casey to represent you

23  here today, your attorney?

24          THE DEFENDANT: Yes, Your Honor.

25          THE COURT: So you want him to be your lawyer here

3

1   today?

2           THE DEFENDANT: Yes, Your Honor.

3           THE COURT: You also have the right to remain silent.

4   That means you don't have to say anything.  If you've said

5   something in the past you don't need to say anything now.  If

6   you start to speak you can stop.  You should know that

7   anything you do say except to your attorney may be used

8   against you.  Do you understand that?

9           THE DEFENDANT: Yes, Your Honor.

10          THE COURT: Have you seen this document, the

11  indictment?

12          THE DEFENDANT: Yes.

13          THE COURT: Have you read it?

14          THE DEFENDANT: Yes, Your Honor.

15          THE COURT: Have you paid particular attention to

16  Counts 1, 39 and 40 which I understand are the counts that

17  relate to you?

18          THE DEFENDANT: Yes, Your Honor.

19          THE COURT: Did you go over it with your attorney?

20          THE DEFENDANT: Yes, Your Honor.

21          THE COURT: Did he explain to you your rights in this

22  proceeding?

23          THE DEFENDANT: Yes, Your Honor.

24          THE COURT: Counsel, do you believe your client

25  understands the charges against him?

4

1        MR. CASEY: I do, Your Honor.

2        THE COURT: Did you go over his rights with him?

3        MR. CASEY: I have, Your Honor.

4        THE COURT: I'm going to read the indictment.

5        MR. CASEY: We'll waive reading.

6        THE COURT: So with regard to the counts against your

7   client which are 1, 39 and 40, is he prepared to plead?

8        MR. CASEY: He is, Your Honor.

9        THE COURT: How does he plea to those counts?

10        THE DEFENDANT: Not guilty.

11        THE COURT: So do you have any [inaudible - feedback

12   on microphone]?

13        MR. CASEY: I didn't hear the question.

14        THE COURT: I don't know.

15        MR. NITZE:  We have a status conference scheduled

16   for September 18th at 11:30 before Judge Dearie and we have an

17   application [inaudible].

18        THE COURT: I think we'll do that first and then talk

19   about the bail package.  Is there consular notification?

20        MR. CASEY:  There is a [inaudible], Your Honor, but

21   we're going to waive that.

22                    [Pause in proceedings.]

23        THE COURT: So, Mr. Burzaco, under the constitution

24   and laws of the United States you're entitled to a speedy and

25   public trial by a jury that commences within 70 days of the

1  date of an indictment. [Inaudible] of excludable delay,

2  meaning those periods of time don't count towards the

3  calculation of the 70 day period.  If the Government fails to

4  bring you to trial within the 70 day time period that could be

5  the basis for you to bring a motion to dismiss the case

6  against you.  By agreeing to the entry of an order of

7  excludable delay you're giving up the right to make the claim

8  that the Government didn't bring you to trial in the 70 day

9  period.  That includes the period of excludable delay for

10  which you're asking which are from today, July 31st, through

11  September 18th.  That's your next court appearance with the

12  district judge.  Do you understand that?

13          THE DEFENDANT: Yes, Your Honor.

14          THE COURT: By agreeing to entry of the order of

15  excludable delay you cannot make the motion that the

16  Government didn't bring you to trial in the 70 day period that

17  includes those days between today and September 18th.  Do you

18  understand that?

19          THE DEFENDANT: Yes, Your Honor.

20          THE COURT: Are you in agreement with the

21  application?

22          THE DEFENDANT: Yes, Your Honor.

23          THE COURT: Did you go over it with your attorney?

24          THE DEFENDANT: Yes, Your Honor.

25          THE COURT: Has anyone made any promises or threats

6

1    to get you to agree to the entry of an order of excludable

2    delay?

3                    THE DEFENDANT: No.

4                    THE COURT: So based on what's been said here today

5    and on the representations of counsel and [inaudible]

6    indictment which I believe will take significant time for the

7    parties to exclude -- sorry, sufficient time for the parties

8    to exchange evidence and go over it including outstanding

9    requests for evidence.  I believe that time needs to be

10   excluded from today which is July 31st through September 18th.

11   I also believe the defendant is acting knowingly and

12   intentionally and the entry of the order is in the interest of

13   justice, the public and the defendant.  So the time is

14   excluded and the application is granted.

15                    [Pause in proceedings.]

16                    THE COURT: So you have a bail application.  Is that

17   right?

18                    MR. NITZE:  Yes, Judge.  The Government is

19   consenting to a bail package proposed by the defendant.  That

20   includes a $20 million appearance bond signed by a number of

21   sureties, six sureties, including defendant's mother, sister

22   and brother.  It's also secured and substantially secured by a

23   combination of cash, real property and the defendant's

24   interest in a business.  Defense counsel can walk you through

25   the mechanics of the financial component [inaudible] do that.

7

1          The sureties, there are a number of additional

2   security measures that are outlined in Attachment A which I

3   believe you have before you.  Just go through a few of those.

4   One is travel restriction to Eastern and Southern District --

5   Eastern and Southern Districts of New York.  Another is home

6   detention at a residence pre-approved by the Federal Bureau of

7   Investigation and Pretrial Services.  Electronic monitoring

8   with a requirement of written approval by the FBI and Pretrial

9   Services to leave the residence.  There is a narrow category

10  of activities, visits with counsels, doctors and the like for

11  which notice is required [inaudible] authorization.

12          There is a private security service that has been

13  approved by our office and the FBI that will be monitoring

14  defendant's [inaudible] 24/7 [inaudible] monitoring his

15  whereabouts and the defendant -- as a condition of the bond

16  also he would be directed not to communicate with co-

17  defendants in the case and also individuals associated with a

18  number of entities that are listed on the [inaudible]

19  organizations that related to organized [inaudible] and

20  [inaudible] federation.

21          I guess the last thing I would add is that

22  significant to the Government's evaluation of risk of flight

23  is the fact that this defendant turned himself in to the

24  authorities overseas [inaudible] case and waived extradition

25  to come to the United States to face these charges.

1          In light of all those conditions and the proposed

2  facts that are set forth the Government [inaudible] package

3  [inaudible].

4          THE COURT: Counsel.

5          MR. CASEY: Your Honor, the financial conditions of

6  the bond are laid out in Attachment B.  As Mr. Nitze said,

7  there is a substantial cash deposit going to be made with the

8  court, $1 million in short order.  I think by early next week.

9  And then $2.3 million coming I think in approximately 60 days,

10  by October 1st.  There are three real properties that are

11  going to be pledged to support this bond.  Two of his sister

12  and one of a close friend.  These are all in the United

13  States.

14          In addition, he's pledging his ownership,

15  [inaudible] interest in his ownership at a company known as

16  Corderos [Ph.].  He owns 20 percent of that company.  It's

17  hard to put an exact dollar figure on the value of that but we

18  believe it's well in excessive of $15 million.  That

19  certificate is going to be deposited with the clerk of the

20  court and we're [inaudible] interest that the Government in

21  that piece of property.

22          In addition to that, we have [inaudible] six people

23  here, family, close friends as well as actually an [inaudible]

24  that did show up is [inaudible] to support him during this

25  time frame.  All of the suretors are in the back of the

9

1  courtroom right now, Your Honor.  I will just sort of go

2  through them if you'd like or I could answer any questions

3  [inaudible].

4       THE COURT: Why don't we have them come up, swear

5  them in and then have you do that so I can ask if they agree

6  with [inaudible].

7       MR. CASEY: Sure.

8       THE COURT: The sureties can come up.

9       MR. CASEY: Your Honor, it would be easiest if each

10  person introduce themselves to the court so their names are on

11  the record.

12       THE COURT: Who's not here?  Two people need a

13  Spanish interpreter; right?

14       THE CLERK: The judge is going to ask you some

15  questions so I'm going to put you under oath.  Please raise

16  your hands.

17               Suretors, Sworn

18       THE CLERK: Please state your name for the record and

19  speak loudly so you're recorded.  Your name, please.

20      [All suretors stated their name but inaudible]

21       THE COURT: Thank you.  All right.  I thought you

22  said somebody was missing.

23       MR. CASEY: No, everyone is here.  Actually

24  additional here people, Your Honor, supporting -- I think six.

25       THE COURT: We have an extra one.  Okay.  So why

10

1    don't you go through their financial status.

2              MR. CASEY: Yes.  So Andrea Burzaco, Mr. Burzaco's

3    sister.  As outlined there has substantial annual income of

4    approximately -- do you want the figures, Your Honor?  Do you

5    want me to put them on the record?

6              THE COURT: Yes.

7              MR. CASEY: You do, okay.  Approximate annual income

8    of ██████ a year with a net worth of over ████████.  Mr.

9    Burzaco's mother Eva [inaudible], my apologies.  His mother is

10   retired but she has an annual income of approximately ████████

11   per year which is largely derived by her pension.  Mr.

12   Santucci here, approximate income of ████████ a year and a

13   substantial net worth as you can see there, Your Honor, in

14   excess of ████████.

15             Mr. Burzaco's brother an annual income of ████████

16   per year and a net worth of just over ████████ per year -- a

17   net worth of just over ████████.  [Inaudible - telephone

18   ringing] my immediate right an annual income of ████████ a

19   year and a net worth of ████████ total.  And Mariano Laza

20   [Ph.] to my right [inaudible] annual income of a little over

21   ████████ per year and a net worth of ████████.

22             THE COURT: The last two, their relationship to Mr.

23   Burzaco?

24             MR. CASEY: They are longtime friends.  Also have

25   served as counsel to Mr. Burzaco in Argentina.

1          THE COURT: So for all the sureties, did you hear

2   what Mr. Burzaco's counsel said?

3          SURETIES: Yes.

4          THE COURT: As to you and your particular condition,

5   is what he said correct?  Does everyone agree what he said is

6   correct?

7          SURETIES: Yes.

8          THE COURT: Let's go back to the real property

9   securing the bond.

10          MR. CASEY: Yes, Your Honor.

11          THE COURT: What's your proposal for when it's going

12  to be posted?

13          MR. CASEY: Your Honor, it's going to take about 14

14  days [inaudible] interest in the piece of property.

15          THE COURT: Is that good with the Government?

16          MR. NITZE: It is.

17          THE COURT: Any other information?

18          MR. CASEY:  That is all, Your Honor.  I did -- I

19  agree with everything Mr. Nitze has said.  I can expand on

20  that if you'd like but I think he presents a very low risk of

21  flight certainly zeroed out by the substantial show of force

22  here and the assets that he pledged to the court and will

23  pledge to the court.

24          THE COURT: Then the stock certificate, when will

25  that be --

1        MR. CASEY: We're prepared to surrender his stock

2   certificate immediately and then the Government will have

3   possession [inaudible] included interest [inaudible]

4   Government in the stock certificate or the ownership

5   [inaudible] not that [inaudible] but [inaudible] interest in

6   it.

7        THE COURT: With regard to the private securities

8   [inaudible] we have sufficient discussions [inaudible] funds

9   available [inaudible]?

10       MR. CASEY: We have.

11       THE COURT: So for all the sureties, I'm going to

12  explain to Mr. Burzaco how this bond will work.  I'm going to

13  ask you to listen and come back to you and see if you have any

14  questions and then if you're in agreement you can sign -- sign

15  the bond.

16       So, Mr. Burzaco, it's a $20 million bond.  I didn't

17  add it all up but I think it's partially secured by the

18  properties that are described in Attachment B which will be

19  posted immediately and others in the next couple of weeks.

20  There's going to be monies deposited immediately and then

21  subsequently before October 1st or by October 1st additional

22  monies are going to be deposited with the court.

23       So the way this works is if you fail to adhere to

24  the conditions of the bond, and I'm going to go over that and

25  they're listed on the front of the bond and on Attachment A,

13

1  then the United States Government is entitled to collect the

2  $20 million.  It can collect it from you and it could collect

3  it from any of these people individually.  It can collect it

4  in whatever combination they want until they get the $20

5  million.  Do you understand that?

6          THE DEFENDANT: I understand, yes.

7          THE COURT: For everyone here and for you it's a

8  significant financial commitment.

9          The conditions of the bond include the following:

10 You are going to be supervised by the Pretrial Services

11 Agency.  You're going to be subject to random visits by a

12 Pretrial Services Officer at your home or your place of work.

13 You're going to have to report to Pretrial Services as

14 directed by Pretrial Services.  You're going to have to

15 surrender your passport or passports to the FBI by today.  Do

16 you have one?

17         THE DEFENDANT: Yes.

18         THE COURT: The plan is for the FBI to hold onto

19 that, one --

20         MR. NITZE: Yes.

21         THE COURT: There's more than one; right?

22         MR. CASEY: There is.

23         THE COURT: The FBI is going to hold onto them but

24 you're not allowed to apply for any other passport.

25         You're going to have to remain and you can't leave

14

1   the Eastern and Southern Districts of New York.   That's

2   Brooklyn, Queens, Staten Island, Nassau and Suffolk Counties

3   for the Eastern District.   The Southern District of New York,

4   Manhattan, the Bronx, Westchester and a few more northerly

5   counties.

6           You cannot directly or indirectly associate or have

7   contact with your co-defendants or any individual employed by

8   or associated with the following entities.   Any sports

9   marketing company identified in the indictment in this case.

10  We went over the fact that you had read the indictment so you

11  know what those are.   That includes without limitation Tornaos

12  Incompentias S.A., Whole Play S.A. and the Traffic Group or

13  any subsidiary of affiliate of the foregoing companies.

14          I'm just going to spell this out because I'm not

15  good at pronouncing it.   C-O-N-C-A-C-A-F and any affiliated or

16  constituent entity.   C-O-N-M-E-B-O-L and any affiliated or

17  constituent entity and F-A and any affiliated or constituent

18  entity.   Do you understand the conditions?

19          THE DEFENDANT: Yes, Your Honor.

20          THE COURT: You're also going to be subject to

21  electronic monitoring.   There's going to be GPS monitoring and

22  home detention at a residence approved by the FBI and the

23  Pretrial Services.   You're not supposed to be within 50 miles

24  of this courthouse.   This is the United States District Court

25  for the Eastern District of New York.   We're at 225 Cadman

15

1  Plaza East in Brooklyn, New York.  You can leave your

2  residence only upon approval in writing by the FBI and the

3  Pretrial Services and the terms and conditions that are

4  approved in writing by the FBI and Pretrial Services except

5  that you can leave your home without approval for medical

6  emergencies.  Attorney's visits, court dates, religious

7  services and shopping for food and other necessities may be

8  undertaken with notice to the FBI and Pretrial Services.

9         The Pretrial Services and the FBI will receive any

10  electronic GPS monitoring alerts and you have to pay the cost

11  of the electronic monitoring.  Do you understand that?

12         THE DEFENDANT: Yes, I understand.

13         THE COURT: You also agree with the Government as a

14  condition of this bond that a private security service

15  approved by the United States Attorney's Office and the FBI

16  will monitor your physical location and provide security for

17  you 24 hours a day, seven days a week.  That security service

18  will accompany you during all transit to and from your

19  residence.  You may have private meetings with your attorney

20  of record in this case with the security service in

21  sufficiently close proximity to perform its duties.  Do you

22  understand that requirement?

23         THE DEFENDANT: Yes, I understand.

24         THE COURT: Let me give you some additional warnings.

25  If you fail to come to court as directed or you violate any of

16

1  the conditions of release of this bond a warrant will issue

2  for your arrest and you may then be held without bond until

3  your trial.  Your failure to appear may result in a charge of

4  bail jumping.  It's a separate felony offense.  It carries its

5  own term of imprisonment.  You might be acquitted or cleared

6  or found not guilty of the underlying charges and yet still

7  have to go to jail simply because you didn't come to court as

8  directed.  If you are convicted of the underlying charges the

9  sentence for bail jumping may be consecutive, meaning follow

10 on the sentence on the underlying crimes.

11          As part of the conditions of your bond you cannot

12 commit any crimes while out on bond.  If you do so you may

13 face additional charges for the crime or crimes you're alleged

14 to have committed as well as increased punishment as a result

15 of any crime committed while on bond.

16          And you're not to threaten or attempt to influence

17 the testimony of any person who you think may be a witness

18 against you in your case.  If you do that this bond will be

19 revoked and you may face additional charges for witness

20 tampering or obstruction of justice.

21          Do you understand all those warnings?

22          THE DEFENDANT: Yes.

23          THE COURT: So for the sureties, do you all

24 understand what I explained to Mr. Burzaco?

25          SURETIES: Yes.

1          THE COURT: Do you understand that you're putting

2   yourselves at significant financial risk?  Do you understand

3   that?

4          SURETIES: Yes.

5          THE COURT: If he fails to adhere to the conditions

6   of the bond the Government is entitled to collect $20 million

7   from any one of you or from you in combination and from him as

8   well, do you understand, until it gets the $20 million?  Do

9   you understand that?

10          SURETIES: Yes.

11          THE COURT: I think I've gone over all the

12   conditions.  I hit everything.

13          MR. NITZE: Yes.

14          THE COURT: It's an unusually long bond.  So each of

15   the sureties I'm going to pass this bond to you.  If you can

16   just say your name and confirm that that's your signature on

17   the bond.  The attachments are there, A and B.  So they're

18   incorporated by reference into the bond.  If you can just pass

19   it along.  Do you want to start at one end?  Say your name for

20   the record.

21  (Cannot hear suretors.)

22          THE COURT: Is that your signature?

23          FEMALE VOICE: Yes.

24          MALE VOICE: [Inaudible]

25          MR. CASEY: Ms. Andrea is here.  She's the ex-wife of

18

1    Mr. Burzaco.  She stepped up as a possible suretor but

2    [inaudible] left.  She's not [inaudible].

3                FEMALE VOICE: [Inaudible]

4                MALE VOICE: [Inaudible]

5        THE COURT: I'm sorry, we tried to fix this.  No success.

6    If you don't mind, do it again.

7                MALE VOICE: [Inaudible]

8                THE COURT: Thank you.

9                MALE VOICE: [Inaudible]

10               THE COURT: For the two individuals who are sureties

11   who speak Spanish, was the bond translated for you?

12               SURETIES: Yes, Your Honor.

13               THE COURT: So if you're in agreement with the bond

14   you should sign the bond.  If you have any questions ask your

15   attorney [inaudible].

16               MR. CASEY:  Your Honor, one last request.  There's

17   identifying data, addresses and the like in the both the bond

18   and the attachments.  We'd ask that both the bond and the

19   attachments to be redacted [inaudible].

20               THE COURT: What's the Government's position?

21               MR. NITZE: We consent to that.

22               THE COURT: So draft the redactions [inaudible]

23   that's the information that's redacted and then it's also --

24   some of that is also on the bond.  So it would be also

25   redacted.  Let's give you that that shows you what's been

19

1   redacted.

2                          [Pause in proceedings.]

3           MR. CASEY: Thank you, Your Honor.  Then on the bond

4   itself the court will --

5           THE COURT: We'll redact the addresses that are on

6   the bond.

7                          [Pause in proceedings.]

8           THE COURT: Is the Government in agreement with the

9   redactions?

10          MR. NITZE: Yes.

11          THE COURT: So in the interest of [inaudible]

12  individuals their personal identifying information and

13  personal information is hereby redacted from the public filing

14  of the bond.

15          Anything else we need to cover today?

16          MR. NITZE: Nothing further from the Government.

17          MR. CASEY: No, Your Honor.

18                          [Pause in proceedings.]

19          THE COURT: So the bond is the first page and then

20  there's also Attachment A, Attachment B and a copy for filing

21  and the addresses have been taken off the first page.

22          So we're going to [inaudible] on order for the

23  clerk's office to [inaudible].

24          Anything else?  Good, Counsel?

25          MR. NITZE: Thank you, Your Honor.

20

1          MR. CASEY: Thank you, Your Honor.

2          THE COURT: Have a good weekend.  Thank you everybody

3     for coming.

4     (Proceedings concluded at 3:29 p.m.)

5                              *  *  *  *  *

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

21

1      I certify that the foregoing is a court transcript from

2  an electronic sound recording of the proceedings in the above-

3  entitled matter.

4

5  _____

6                            Shari Riemer, CET-805

7  Dated:  August 21, 2015