```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF NEW YORK

-----------------------------X
                             :
UNITED STATES OF AMERICA,    :
                             :    15-CR-252 (RJD)
          v.                 :
                             :    December 15, 2015
JUAN ANGEL NAPOUT,           :
                             :    Brooklyn, New York
             Defendant.      :
                             :
-----------------------------X


       TRANSCRIPT OF CRIMINAL CAUSE FOR ARRAIGNMENT
          BEFORE THE HONORABLE ROBERT M. LEVY
             UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:         KELLY T. CURRIE, ESQ.
                            UNITED STATES ATTORNEY
                            BY: KRISTIN MACE, ESQ.
                                EVAN NORRIS, ESQ.
                                TANYA HAJJAR, ESQ.
                            ASSISTANT U.S. ATTORNEYS
                            271 Cadman Plaza East
                            Brooklyn, New York  11201



For the Defendant:          JOHN PAPPALARDO, ESQ.


Audio Operator:


Court Transcriber:          ARIA SERVICES, INC.
                            c/o Elizabeth Barron
                            102 Sparrow Ridge Road
                            Carmel, NY 10512
                            (845) 260-1377




Proceedings recorded by electronic sound recording,
transcript produced by transcription service
```

1          THE CLERK:  Criminal cause for arraignment,

2  case number 15-CR-252, United States v. Juan Angel

3  Napout.

4          Counsel, your names for the record.

5          MS. MACE:  Good afternoon, your Honor.

6  Kristin Mace, Evan Norris and Tanya Hajjar for the

7  United States.

8          THE COURT:  Good afternoon.

9          MR. PAPPALARDO:  Good afternoon, your Honor.

10  My name is John Pappalardo on behalf of Mr. Napout.

11  With me is Estoban Britt (ph), who is Paraguayan

12  counsel.

13          THE COURT:  Good afternoon.

14          MR. PAPPALARDO:  If I may, your Honor, Mr.

15  Napout is very fluent in English.  He speaks five

16  languages and I'm not sure that an interpreter is

17  needed unless the Court desires.

18          THE DEFENDANT:  Whatever you decide, your

19  Honor.  I do speak English.

20          THE COURT:  If it's less confusing to you to

21  have just one language spoken --

22          THE DEFENDANT:  If there's a word or

23  something that I don't understand, I'll talk to the

24  translator, but I think I can handle it.

25          THE COURT:  Okay, perfect.

1          THE DEFENDANT:  If you agree.

2          THE COURT:  I agree, of course.

3          THE DEFENDANT:  Okay.

4          THE COURT:  Thank you.  Just in case, we do

5   have a Spanish interpreter ready and waiting.

6          MR. PAPPALARDO:  Your Honor, one other

7   housekeeping matter is that I filed a motion with the

8   Court under your statute for pro hoc vice.  Everything

9   has been completed except the signature of the Court.

10  The paperwork is before the Court, although I have

11  extra copies here including the order.

12         THE COURT:  Okay.  Happy to sign it now.

13         Any objection?

14         MS. MACE:  No, your Honor.

15         THE COURT:  Looks good.  So ordered.

16         MR. PAPPALARDO:  Thank you, your Honor.

17         THE COURT:  Mr. Napout, you're here so I can

18  be sure you understand your rights, the charges against

19  you, make sure you have an attorney.

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  And make a decision on bail.  I

22  see that there has been an agreed upon bond in this

23  case but first, let me advise you, you have a right to

24  remain silent.

25         THE DEFENDANT:  Yes, sir.

1          THE COURT:  Whatever you say here today

2     could be used against you.  You have your attorney

3     standing next to you, so you can consult with him

4     before you say anything.

5          Do you understand?

6          THE DEFENDANT:  Yes, sir, I do understand

7     perfectly and that's why the attorney is here with me.

8          THE COURT:  The superseding indictment names

9     a number of people including you in the charges.  It's

10    a fairly thick document.

11         Have you had a chance to meet with your

12    lawyer and has he explained to you what the charge is

13    against you?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  You understand what the charge

16    is.

17         THE DEFENDANT:  I had the chance and I

18    understand.

19         THE COURT:  Okay.

20         MR. PAPPALARDO:  And we waive the formal

21    reading, your Honor.

22         THE COURT:  How does he plead?

23         MR. PAPPALARDO:  He pleads not guilty.

24         MS. MACE:  Your Honor, for the record, I

25    might just note the counts that he's charged in -- it's

a 91-count indictment and Mr. Napout is charged in five
counts; Count 1, the racketeering conspiracy; Counts 9
and 10 are wire fraud and money laundering conspiracies
relating to the rights to the Copa Libra Tedores (ph)
Tournament; and Counts 83 and 84 are wire fraud
conspiracy and money laundering conspiracy relating to
the rights to the Copa America Centenario (ph)
Tournament, just to make that clear for the record.

THE COURT:  Okay.

You understand a conspiracy is an agreement
between two or more people to do something illegal.

THE DEFENDANT:  Yes, sir.

THE COURT:  Any questions at all about the
charges?

THE DEFENDANT:  No, sir.

THE COURT:  We have a proposed bond here.
I'd be happy to read the conditions.  Are any of the
suretors here today?

MR. PAPPALARDO:  Two are, your Honor.  May I
approach the bench, your Honor?

THE COURT:  Sure.

(Side bar, off the record.)

THE COURT:  We're at the point where we're
talking about the bond.  It is a somewhat complicated
bond and I'm going to ask the parties to put the

1    conditions on the record.

2           MS. MACE:  Yes, thank you, your Honor.  What

3    the parties are jointly proposing to the Court is a

4    twenty-million-dollar appearance bond that would be

5    fully secured.  It would be secured by ten million

6    dollars in cash to be deposited with the clerk of the

7    Court by tomorrow, a letter of credit issued by a

8    reputable bank in the United States that is acceptable

9    to the government in the sum of seven million dollars

10   in favor of the United States.  This is to be posted

11   with the Court by Friday, December 18th.

12          Real property would also be offered to

13   secure the bond that has an estimated market value

14   based on representations of defense counsel of

15   approximately three million dollars, to be posted with

16   the Court by Friday, December 18th.  So that's the --

17          THE COURT:  The financial aspect.

18          MS. MACE:  -- the financial aspect that

19   represents how the bond will be fully secured.  In

20   addition, there are additional conditions that will

21   appear in attachment A to the proposed bond.

22          First, the defendant must remain in and may

23   not leave the Eastern District of New York, the

24   Southern District of New York and the Southern District

25   of Florida.  The defendant will not directly or

indirectly associate or have contact with his

codefendants or any individual employed by or

associated with the following entities:

Number one, any sports marketing company

identified in the indictment in this case, including

without limitation Tranaos y Compentencia S.A. (Ph),

Fullplay S.A. and the Traffic Group or any subsidiary

or affiliates of the foregoing companies.  Number two:

Concacaf (ph) and any affiliated or constituent

entities; Commaball (ph) and any affiliated or

constituent entity; and FIFA and any affiliated or

constituent entity.

The defendant also must surrender any and

all passports to the FBI.  We're aware of four

passports that he was traveling with, all Paraguayan,

and those are in the possession of the FBI now.  We've

also learned from counsel that there's an Italian

passport, so that should be provided as well and any

other passports that he may have.  Also, the defendant

must not apply for any new passport.

We'd ask -- we have the four Paraguayan

passports now.  We'd ask that the Italian passport be

surrendered today.  If there's a reason that that's not

possible, we can hear from defense counsel, but as soon

as possible certainly, and maybe we can discuss this

1   point now.

2         MR. PAPPALARDO:  Happy to.  First of all,

3   your Honor, let me correct paragraph 4.  There's really

4   one Paraguayan passport, not four.  The four are

5   together because there are various visas and things

6   like that, like Mr. Britt's passport has two together,

7   but it's really one passport, not four.  That is in the

8   possession of the FBI.  I believe it's in the

9   possession of the case agent.

10        Number two, with respect to the Italian

11   passport, Mr. Napout did not travel with that passport.

12   We are making arrangements to get that passport back.

13   I believe it will be in Miami this week.  I represent

14   to the Court that we will send it forthwith to the FBI,

15   the Pretrial Services, the government, whomever they

16   designate, as soon as we get it from out of Miami.

17        MS. MACE:  I would ask that a date be set

18   for that, and perhaps the passport can be sent directly

19   to New York or Boston rather than stopping in Miami.

20        MR. PAPPALARDO:  That would be great, except

21   that it's coming up on somebody's person.  I believe it

22   will be here Thursday and we're happy to turn it

23   around.  We'll surrender it to the FBI in Miami, if

24   that's okay.

25        THE COURT:  Is that easier for you?

1          MS. MACE:  I believe we can arrange that.

2    We'd ask that that be done by Friday.

3          THE COURT:  December 18th?

4          MS. MACE:  December 18th.

5          MR. PAPPALARDO:  I believe that's doable and

6    I'll keep you informed of that.

7          MS. MACE:  Okay.

8          THE COURT:  Okay.

9          MS. MACE:  Continuing with the other

10   conditions.  The defendant is subject to electronic

11   monitoring and home detention at a residence approved

12   by the FBI and the office of Pretrial Services.  The

13   defendant may leave his residence only upon approval in

14   writing by the FBI and Pretrial Services and under

15   terms and conditions approved in writing by the FBI and

16   Pretrial Services, except that the defendant may leave

17   his residence without prior approval for medical

18   emergencies.

19          The defendant may leave his residence for

20   attorney visits, court dates, religious services,

21   ninety minutes of daily exercise and shopping for food

22   and other necessities, with notice to the FBI and

23   Pretrial Services.  Both police officers and the FBI

24   shall receive any electronic monitoring alerts.  The

25   cost of the electronic monitoring shall be borne solely

1    by the defendant.

2              Finally, a private security service approved

3    by the U.S. Attorney's office and the FBI will monitor

4    the defendant's physical location and provide security

5    24 hours per day, seven days per week.  The private

6    security service shall accompany the defendant during

7    all transit to and from his residence.  The defendant

8    may have private meetings with his counsel of record in

9    this case with the security service in sufficiently

10   close proximity to perform its duties.

11             The defendant is subject to video

12   surveillance 24 hours a day, seven days a week, at the

13   doors of his residence and other points of entrance.

14   The cost of the private security service and the video

15   surveillance shall be borne solely by the defendant.

16   Those are the conditions of the proposed bond.

17             In addition, we anticipate that there would

18   be two sureties who would cosign the bond, and they're

19   being offered, it's my understanding, for moral

20   suasion.

21             THE COURT:  Does that sound like what the

22   agreement is?

23             MR. PAPPALARDO:  Yes, your Honor.  The

24   representation by the government is complete and

25   accurate in all respects.  I would note that paragraph

1   4 does not say that he will not apply for a passport

2   but I represent to the Court that he will not.  Other

3   than that, it's complete and accurate and we agree with

4   the terms that have been negotiated with the

5   government.

6           THE COURT:  Okay.  On the actual bond, it

7   says that he will not apply.

8           MR. PAPPALARDO:  Yes, understood.  I just

9   pointed it out on the attachment.

10          THE COURT:  I appreciate that.

11          MS. MACE:  I will note on the bond that

12  we've provided to the Court, it says that the passports

13  will be turned over by today, so we would agree to

14  change that to December 18th on the bond itself that

15  appears.

16          THE COURT:  Right.  I've done that.

17          MS. MACE:  Thank you, your Honor.

18          THE COURT:  Before we get the suretors, let

19  me just go through the conditions.

20          Do you understand all the conditions of the

21  bond?

22          THE DEFENDANT:  Yes, your Honor, I do

23  understand.

24          THE COURT:  Because you're the one who is

25  primarily responsible under this bond.  You're making a

financial commitment but you're also making a
commitment that has -- of your liberty.  Your freedom
depends on your following every condition of this bond.
I want to be sure that you understand everything.

        THE DEFENDANT:  Yes, your Honor, I
understand.

        THE COURT:  Okay.

        THE DEFENDANT:  Yes, I understand perfectly.

        THE COURT:  Okay, good.  There are other
conditions on the back of the bond which I'm sure you
and your lawyer can go there.  There are some other
conditions on the back of the bond.  They're standard
conditions.

        MR. PAPPALARDO:  Yes, your Honor.

        THE COURT:  You cannot commit a crime while
you're on release.  If you do not come back to court
when you're supposed to, you could be arrested for bail
jumping; that's another crime, things that I think
you'll see from common sense.

        Anyone who signs this bond is liable for the
full amount of the bond but of course, this bond is
being secured by your finances.  So I want to be sure
that you fully understand that if you violate any
condition of the bond, the government could come back
to court and ask that anyone who signed the bond, but

1  particularly you, be liable for the twenty million

2  dollars and immediately secure all the money or

3  property that has been posted with the Court.

4          Do you understand that?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  If for some reason, the security

7  did not cover the entire amount of the bond, then you

8  would owe the rest.

9          Do you understand?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  Is there anything I've missed

12  from the government's perspective?

13          MS. MACE:  I don't believe so, your Honor.

14          THE COURT:  From the defense's perspective?

15          MR. PAPPALARDO:  Not at all, your Honor,

16  thank you.

17          THE COURT:  So I'm going to hand this down

18  for you to sign and I'd ask you to have the suretors

19  come up as well so I can --

20          (Suretors are sworn.)

21          MS. MACE:  Your Honor, just at the

22  beginning, it might make sense to confirm that they do

23  speak English.

24          THE COURT:  Of course.

25          MS. MACE:  Thank you.

1          THE COURT:  We do have an interpreter here.

2  I don't know if there's any need for an interpreter.

3          UNIDENTIFIED SPEAKER:  No, it's not

4  necessary, thank you.

5          THE COURT:  We've already gone through all

6  the terms and conditions of the bond.  It's a twenty-

7  million-dollar bond.  As has already been mentioned,

8  the bond is already secured by enough money to take

9  care of the twenty million.  The only reason you're

10 here in addition to whatever else has been dealt with

11 is because you're family and it is thought that because

12 you're family members, you will have moral suasion, as

13 we call it, in other words that he will have more of an

14 incentive to follow the conditions of the bond knowing

15 that you've signed it.  We're not looking for any

16 additional at this point to what's on the attachments

17 already on the bond.

18          I do have to tell you that in the event

19 whatever has been deposited with the Court is not

20 satisfactory, you are jointly and severally liable on

21 the bond.  But as I said, the agreement with the

22 government and the defendant is that the money that

23 secures the bond -- that there's the full amount of

24 money to secure the bond already on that bond.

25          Do you have any questions about the bond?

1          UNIDENTIFIED SPEAKER:  No.

2          THE COURT:  Have you discussed it fully with

3    Mr. Pappalardo?

4          UNIDENTIFIED SPEAKER:  Yes.

5          THE COURT:  Did he explain -- did he answer

6    all your questions?

7          UNIDENTIFIED SPEAKER:  Yes.

8          THE COURT:  Do you have any other questions

9    you would like to ask him at this time?

10         UNIDENTIFIED SPEAKER:  No.

11         THE COURT:  Are you signed the bond because

12   you wish to?

13         UNIDENTIFIED SPEAKERS:  Yes.

14         THE COURT:  The bond is there for you to

15   sign.

16         MS. MACE:  Your Honor, just for clarify of

17   the record, before the sureties were sworn, I don't

18   believe they put their name on the record.  So in terms

19   of having a valid indication, I think it needs to be

20   clear that each individual in their own name has been

21   sworn by the Court.

22         THE COURT:  Yes.

23         I note for the record that the defendant and

24   both suretors have signed this bond and for the record

25   that both of the suretors were sworn before they

1    answered my questions.

2         Is everything that you told me today true?

3         UNIDENTIFIED SPEAKER #1:  Yes.

4         UNIDENTIFIED SPEAKER #2:  Yes.

5         THE COURT:  Thank you.

6         MS. MACE:  Your Honor, I do believe that for

7    the record to be clear, they need to state their name

8    so that it's clear who was sworn today before the

9    Court.

10        THE COURT:  I don't know if they stated

11   their names.

12        THE CLERK:  Could I have your name for the

13   record?

14        MS. PENAPUT:  Yes, my name is Ruth Karen

15   Ferster Napout (ph).

16        THE CLERK:  Thank you.

17        MS. FERSTER:  My name is Veronica Napout

18   Ferster (ph).

19        THE CLERK:  Thank you.

20        THE COURT:  Okay.

21        MS. MACE:  Thank you, your Honor.

22        THE COURT:  Anything else?

23        MS. MACE:  Just with regard to the next

24   status conference.  This is a case that's been assigned

25   to Judge Dearie and Judge Dearie's -- the government

was in contact with his chambers and Judge Dearie set a

next status conference for March 16th, 2016 at 12:00

p.m. and indicated that it's okay for the parties or

for the government to ask to exclude time until that

date.

I don't know that we have agreement on this

so I wanted to articulate for the record the reasons

the government is asking that the time be excluded all

the way to March 16th, 2016. Judge Dearie has set that

date as the next status conference for this defendant.

Judge Dearie did previously designate this a complex

case under 18 USC 3161(h)(7)(A).

In addition, because other defendants are

still pending extradition to the United States and thus

have not been arraigned on the indictment, time is

automatically excluded under the Speedy Trial Act under

18 USC Section 3161(h)(6). For that reason, we ask

that time be excluded in the interests of justice to

March 16th.

THE COURT: I understand Judge Dearie has

also approved that, correct?

MS. MACE: Yes. I can't say that he ruled

on it but we were told by his chambers that it was

appropriate for us to ask your Honor to enter that

order today.

1          THE COURT:  Any objection?

2          MR. PAPPALARDO:  Your Honor, as the Court

3 knows, this is a superseding indictment and it has been

4 designated as a complex case.  However, the position

5 that I have is that I'd like to review in some detail,

6 now that -- if the Court orders this bond to be

7 acceptable, I'd like to spend some time with my client

8 and make some decisions over the next couple of weeks

9 as to what the position may very well be.

10          March 16th is a long way away.  I informed

11 the government that I don't know what position we would

12 have on a motion for speedy trial and that it may very

13 well be that even if we filed the motion for a speedy

14 trial, given the complex case designation, that it

15 wouldn't make much difference.  Having said that, I

16 certainly don't want Mr. Napout's rights to be

17 penalized because he quickly and expeditiously waived

18 his right to an extradition hearing and came to the

19 United States.

20          What I indicated to the government was, I

21 would be willing to certainly waive for a period of

22 time until we could make an informed decision, and the

23 decision at that time may very well be that we will go

24 along with that.  But I would like some grace period

25 and that grace period we would deem excludable under

the Speedy Trial Act.  So my suggestion would be to give us three weeks, a month, and then I will inform the government.  And if we make a decision sooner, I will inform the government sooner, and we will take whatever appropriate steps would be necessary and inform the Court and things of that nature.  But three months away is tough given the situation we find ourselves in now.

Mr. Napout has been incarcerated since December 3rd.  We have not had time to address the niceties of the American justice system in any detail. I think that to make informed judgments, we would need an additional amount of time.  I'm simply asking the Court to give us say four weeks, let's say a month, to make that decision, and we will inform the government. And during that one-month period of time, we will agree that that's excludable time under the Speedy Trial Act.

MS. MACE:  I think where we disagree, your Honor, is the amount of excludable time.  I don't think the Court needs to have consent of both parties to make a ruling in this situation.  The Court does have the power to exclude time to March 16th.  That's what we're asking for in this instance.

I will note that the status conference has been set for March 16th but nothing precludes Mr.

1  Pappalardo from asking the Court to advance that or

2  making any request to the judge that he may have.  So

3  as we stand now, the next status conference is March

4  16th, and we ask that time be excluded until then on the

5  bases that I indicated earlier.

6          THE COURT:  Hypothetically, if Mr. Napout

7  were to consent to exclude time only for thirty days

8  but then agreed that this was a complex case already

9  and that there was really no basis to disagree with a

10 further extension or exclusion, could that be done on

11 papers?

12         MS. MACE:  I believe, your Honor, that he

13 could -- the parties could ask for time to be excluded

14 jointly in papers to Judge Dearie.

15         THE COURT:  Is there any prejudice to the

16 government at this point if time were excluded only for

17 thirty days, with either an appearance if there's a

18 disagreement about further exclusion or simply a

19 stipulation that would go to Judge Dearie after the

20 thirty days?

21         MS. MACE:  I don't think there is any

22 immediate prejudice during the time that is excluded,

23 but it may be -- the government may ask the Court and

24 may ask Judge Dearie to enter a longer period of

25 exclusion because I think the Court can do so, given

the status of all the other defendants in the case.  To

answer your question, no, there's no immediate

prejudice, but the government may explore whether to

ask the Court for other remedies.

THE COURT:  It seems to me just from the

argument that you've presented that you're correct on

the law and that there's more likely -- very likely not

a legal basis for the defendant to object to a further

exclusion.  However, in an excess of caution, because

exclusion of time is an issue that the courts like to

look at carefully, I don't see that there would be any

prejudice to you by doing that.  It's more like you're

going to win this anyway and I think what you're doing

is foreclosing any other avenues of objections in the

future if they were to arise.

MS. MACE:  If the Court would prefer to

proceed in that way, then we'll fill out the form and

indicate that both parties have consented to thirty

days, and then the government may address it further

with Judge Dearie, if that's acceptable.

THE COURT:  Right, after thirty days or

before.  It's your choice.

MS. MACE:  Thank you.  We'll take a moment

just to fill this out.

THE COURT:  Do you understand what it means

1    to exclude time?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  Have you discussed it with your

4    attorney?

5              MR. PAPPALARDO:  Very generally, your Honor,

6    but not specifically.

7              THE COURT:  Do we need to go over it now?

8              MR. PAPPALARDO:  I don't think so, your

9    Honor.  I think we can deal with that at a later time.

10             THE COURT:  But did you understand what your

11   speedy trial right is?

12             THE DEFENDANT:  Yes, I understand.

13             THE COURT:  And you understand that you're

14   excluding the thirty days from today, the 15th of

15   December to the 15th of January, from the speedy trial

16   obligations of the government.

17             THE DEFENDANT:  Yes, your Honor, I do

18   understand.

19             THE COURT:  At the end of that time, there

20   may or may not be a continuation of the speedy trial

21   exclusion.  That's going to be up to the government and

22   you, although my legal opinion is it's pretty clear

23   that the speedy trial rights should be stayed at this

24   point because of all the reasons that the government

25   mentioned.  But we're proceeding with the thirty days

1   at this point.

2               THE DEFENDANT:  Thank you very much, your

3   Honor.

4               THE COURT:  Are you making this decision

5   voluntarily?

6               THE DEFENDANT:  Yes, sir.

7               THE COURT:  Any questions?

8               THE DEFENDANT:  No, sir.

9               THE COURT:  Anything else?

10              MS. MACE:  Your Honor, the government has

11  prepared a redacted version of one of the attachments.

12  Just for the record, the bond has two attachments,

13  attachment A and B. We've prepared a redacted version

14  of B that just takes out the street address of a

15  residence, and I'd like to submit that to the Court for

16  the public filing.

17              THE COURT:  Has counsel seen that?

18              MS. MACE:  Yes.  It's the last page.

19              MR. PAPPALARDO:  Yes, your Honor.

20              THE COURT:  Anything else?

21              MS. MACE:  Not for the government, thank

22  you.

23              THE COURT:  Anything else?

24              MR. PAPPALARDO:  We just need wiring

25  instructions, your Honor, which I hopefully can get

1  from the clerk.

2          THE CLERK:  You have to call our financial

3  department tomorrow.

4          MR. PAPPALARDO:  Okay.  Tomorrow?

5          THE CLERK:  Tomorrow morning because they're

6  closed now.

7          THE COURT:  Thank you.

8          MS. MACE:  Thank you, your Honor.

9                  * * * * * * * * *

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18     I certify that the foregoing is a correct

19 transcript from the electronic sound recording of the

20 proceedings in the above-entitled matter.

21

22

23

24

25 ELIZABETH BARRON                    January 20, 2016