UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X      **Docket#**
UNITED STATES OF AMERICA,      :     15-cr-00252-RJD-15
                               :
      - versus -               :     U.S. Courthouse
                               :     Brooklyn, New York
ALFREDO HAWITT,                :
            Defendant          :     February 1, 2016
------------------------------X

TRANSCRIPT OF CRIMINAL CAUSE FOR
BOND SATISFACTION HEARING
BEFORE THE HONORABLE STEVEN M. GOLD
UNITED STATES CHIEF MAGISTRATE JUDGE

**A     P     P     E     A     R     A     N     C     E     S:**


<u>**For the Government**</u>:           **Robert L. Capers, Esq.**
                               United States Attorney

                         BY:   **Paul Tuchmann, Esq.**
                               Assistant U.S. Attorney
                               271 Cadman Plaza East
                               Brooklyn, New York  11201


<u>**For the Defendant**</u>:            **Justin S. Weddle, Esq.**
                               Brown Rudnick LLP
                               7 Times Square
                               New York, NY 10036

<u>**Transcription Service**</u>:        **Transcriptions Plus II, Inc.**
                               61 Beatrice Avenue
                               West Islip, New York 11795
                               <u>laferrara44@gmail.com</u>


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

Proceedings

1          THE CLERK: Criminal Cause for a Bond

2   Satisfaction, United States v. Alfredo Hawit, case number

3   15-cr-252.

4          And present we have Spanish interpreter

5   Estrelita Plested, previously sworn.

6   (INTERPRETER PREVIOUSLY SWORN)

7          THE CLERK:  Counsel, your name for the record.

8          MR. TUCHMANN:  Paul Tuchmann for the United

9   States.

10          Good afternoon, your Honor.

11          THE COURT:  Hello, Mr. Tuchmann.

12          MR. WEDDLE:  Good afternoon, your Honor.

13          Justin Weddle.  I'm with the law firm Brown

14   Rudnick for the defendant, Mr. Hawit.

15          THE COURT:  Hi, Mr. Weddle.  I have inferred

16   that you are retained --

17          MR. WEDDLE:  That's correct, your Honor.

18          THE COURT:  -- and that you filed a notice of

19   appearance on Mr. Hawitt's behalf.

20          MR. WEDDLE:  That's correct,  your Honor.

21          THE COURT:  Thank you.

22          Mr. Hawit, are you understanding everything

23   that's being said as it's translated into Spanish?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Very well.  So although I have an

Proceedings

1   idea, I'll give you gentlemen the privilege of spreading

2   on the record why we are gathered here this afternoon.

3          MR. TUCHMANN:  Sure, your Honor.  I can't

4   remember the exact date, it was either last week or the

5   week before, Judge Levy ordered -- set a bond of $1

6   million for the defendant to be supported by $50,000 in

7   cash, signatures of four suretors, and a piece of

8   property in Florida owned by one of the suretors.

9          Since then, the confession of judgment or its

10  Florida equivalent has been filed on the property and the

11  cash has been posted and three of the four suretors who

12  were discussed at that previous bail hearing have signed

13  the bond in Florida, at the federal courthouse in the

14  Southern District of Florida, and my understanding is

15  that that copy of that document has been provided to the

16  Court here by fax.

17         The one thing that hadn't happened was that one

18  proposed suretor, a Ms. Miskini (ph.), has for whatever

19  reason, elected not to sign the bond.  Mr. Weddle has

20  informed me that he can replace her with a different

21  suretor, Ms. Mendez (ph.), who he has told me about.

22         THE COURT:  I have an Olga Marina Nunez (ph.).

23         MR. TUCHMANN:  Nunez.

24         MR. WEDDLE:  That's right.

25         MR. TUCHMANN:  Sorry, Nunez, not Mendez; my

Proceedings

1 apologies.

2          And that Ms. Nunez is an acceptable substitute

3 to the government.  And so, the government is -- well,

4 the government had originally opposed this bond but the

5 government is not appealing Judge Levy's order setting

6 the bond.  And in light of that, under those

7 circumstances, the government consents to the

8 substitution of Ms. Nunez and to the release of the

9 defendant today with -- on the condition that Ms. Nunez

10 sign the bond in Florida by Wednesday of this week.

11          THE COURT:  The 3rd?

12          MR. TUCHMANN:  Yes, your Honor.

13          THE COURT:  Do we have any information about

14 (a) Ms. Miskini's reasons for her apparent change of

15 heart and (b) and perhaps of greater pertinence to me

16 frankly, Ms. Nunez's relationship to the defendant and

17 her creditworthiness as a potential suretor on a

18 substantial bond.

19          MR. TUCHMANN:  Sure.  Well, I can I guess -- I

20 will leave to Mr. Weddle Ms. Miskini's reasons for not

21 signing the bond but my understanding is that after

22 discussing it with her spouse, she changed her mind.

23 That's my understanding but I will leave that to him, if

24 your Honor wishes for more detailed or confirm that.

25          As for her financial responsibility, on the one

Proceedings

1  hand --

2          THE COURT:  Ms. Nunez's?

3          MR. TUCHMANN:  Ms. Nunez's financial

4  responsibility and relationship, again my understanding

5  from Mr. Weddle is that Ms. Nunez some time ago was in a

6  relationship with Mr. Hawit and they had a child

7  together.  That child is also signing the bond, and the

8  person with whom the defendant will live in Florida on

9  home confinement and electronic monitoring upon his

10  release.

11          So the person -- Ms. Nunez is the mother of

12  that suretor and together, Mr. Hawit and Ms. Nunez are

13  the parents of that child, although they are not married

14  and I don't believe they have ever been married.  So that

15  is their relationship and they've known each other,

16  therefore, for a long time, which again this is all

17  coming from Mr. Weddle who I -- and I have no reason to

18  doubt any of that.

19          As to her creditworthiness, she is of modest

20  means in that she is on Social Security.  She's a retired

21  person.  She is a U.S. citizen and she does some, as I

22  understand it, home health aide type work also.

23          From the government's perspective, Ms. Miskini

24  -- in terms of the overall bond, Ms. Miskini was a

25  similar financial profile.  She also -- while she was not

Proceedings

1  on Social Security, she was a preschool teacher who made,

2  I think, a rough total of about $7,000 or $8,000 a year.

3  And, in fact, she had far less of a relationship with the

4  defendant than Ms. Nunez does.

5         So from the government's perspective, to the

6  extent that that bond that was approved by Judge Levy was

7  satisfactory, substituting Ms. Nunez for Ms. Miskini does

8  not in any way reduce the weight of the bond.

9         Further, I am also informed by Mr. Weddle that

10  at the time -- well, I do know that at the time of the

11  bond hearing, the property in Florida that was posted, we

12  were understood had an equity value of approximately

13  $250,000.  Since that hearing, Mr. Weddle's obtained an

14  appraisal and the equity value is, in fact, closer to

15  $350,000.

16         So compared with where we were before, we now

17  have $100,000 more in equity and the substitute of Ms.

18  Nunez for Ms. Miskini does not, the government believes,

19  reduce the weight of the bond.

20         THE COURT:  And you're satisfied?  You've seen

21  the document or somebody from the government has, that

22  the property in Florida is tied up.

23         MR. TUCHMANN:  Yea, the satisfaction of the --

24  the equivalent of a confession of judgment, yes.

25         THE COURT:  Thank you.

Proceedings

1          Mr. Weddle, thank you for your patience.

2          MR. WEDDLE:  Thank you, your Honor.

3          THE COURT:  Would you like to clarify anything

4   that's been said?

5          MR. WEDDLE:  That all sounds correct to me,

6   your Honor.  I appreciate your seeing us today.

7          THE COURT:  It sounds like you don't have

8   anything else to say.

9          I do have a question or two for you.  When this

10  bond was completed, it stated that as a condition of the

11  bond, the defendant would reside at his daughter's

12  residence at the address stated in the pretrial services

13  report.  Now that report may make all of this quite

14  clear.  I don't have the privilege of having it in front

15  of me but I see that two of the suretors -- somewhat

16  confusingly, frankly --

17         MR. TUCHMANN:  Yes.

18         THE COURT:  -- apparently have the same name,

19  Lisette Hawit with different hyphenated suffix names of

20  Green and Medrano (ph.).

21         MR. WEDDLE:  That's correct, your Honor.

22         THE COURT:  Can you speak to that for me at all

23  and tell me who is going to be residing with and whose

24  property is being posted?

25         MR. WEDDLE:  Yes, your Honor.  Lisette Hawit-

Proceedings

1  Green is the defendant's daughter and he's going to

2  reside with her and her son, who is eight-years-old.  So

3  he's going to reside with Lisette Howard-Green on home

4  detention with electronic monitoring at Lisette Howard-

5  Green's address.

6            That address is available -- I'm not sure if

7  your Honor wants it on the public record.

8            THE COURT:  No, it's not necessary.

9            MR. WEDDLE:  The -- and that's the address

10 that's laid out in the pretrial services report.  The

11 other Lisette is Lisette Hawit-Medrano.  Lisette Hawit-

12 Medrano is the defendant's cousin and she also resides in

13 Florida and she posted a house that she owns, not

14 actually the house that she lives in but a house that she

15 owns where her son lives, is the house that was posted as

16 security for the bond.

17           THE COURT:  That helps.  Any further

18 information about Ms. Miskini to share?

19           MR. WEDDLE:  Oh, I think the prosecutor

20 captured it, your Honor.  I think that there was

21 incorrect comm -- or inadequate communication within the

22 family, I think, of what the bond -- signing the bond

23 entailed and upon further reflection, the family unit

24 decided that they did not want to sign the bond.

25           It should be noted, your Honor, that Ms.

1 Miskini, I think, said she had not met the defendant.

2 She is friends with Lisette Howard-Green and they worked

3 together and she originally said she understood the bond

4 and was willing to support and then on further

5 reflection, decided not to but --

6            THE COURT:  All right.  Unfortunately, it's a

7 rather crowded form.

8            MR. WEDDLE:  Yes.

9            THE COURT:  I do have enough room in the margin

10 to create a new signature line for Ms. Nunez.  I'm going

11 to do it perpendicular to the text of the bond and I'm

12 only putting this out there on the record so that as Ms.

13 Nunez appears in court in Florida, they'll understand

14 that this is not an altered or an improperly altered

15 document.

16            And that name is Olga Marina Nunez, and I see I

17 have an address you've provided us with, counsel, for

18 that suretor which I will enter on the bond, as well.

19            All right.  So I take it that Mr. Hawit needs

20 to be alerted to all of the conditions of his bail and

21 the consequences should he violate them.

22            MR. WEDDLE:  I believe Judge Levy went over

23 there but there's certainly no harm in restating them

24 now.

25            THE COURT:  I think it's prudent to do that.

Proceedings

1          Mr. Hawit?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  A lot of people including your

4    daughter, your niece, cousin --

5          MR. WEDDLE:  Cousin.

6          THE COURT:  -- cousin and whoever Brett Green

7    is to you --

8          MR. WEDDLE:  Former son-in-law, your Honor.

9          THE COURT:  -- and Ms. Nunez, the mother of

10   your child, have all been working very hard to persuade

11   the Court that you should be released on bail.  Now you

12   have to begin working hard.  Let me explain to you what I

13   mean.

14          There are a lot of rules you have to follow

15   while you are on bail.  I am going to tell you what they

16   are in a minute but the first rule I want you to

17   understand that is if you break any of the rules, those

18   people, your daughter, your cousin, your former son-in-

19   law, and your -- the mother of your child, will each owe

20   the United States government $1 million.

21          The $50,000 that has been posted will

22   automatically become the property of the United States

23   government.  The 843 Northwest 133 Court property where

24   your cousin's son resides owned by Lisette Hawit-Medrano

25   will become the property of the United States government.

1        They will not realize $1 million by securing

2    that cash and real estate.  So they will come after you

3    and your daughter and your former son-in-law and your

4    cousin and your daughter's mother until they've recovered

5    that $1 million amount.  That will go on for the rest of

6    their lives and yours until the money is recovered.

7    That's the easy part.

8        A warrant will issue for your arrest if you

9    break the rules of the bond and you'll be brought back

10   before this Court.  I predict you will not be released on

11   bail again.  I predict you will be remanded without bail

12   for the remainder of your case.  And I predict you will

13   be charged with a new crime for violating the conditions

14   of your bail.

15       You can be convicted of that new crime even if

16   you're not convicted of any of the charges that are

17   currently pending against you.  If you were convicted of

18   violating your bond, the law requires the judge to

19   sentence you to prison for it.  If you are convicted of

20   violating your bond and any of the underlying charges

21   that are pending, the law requires the judge to sentence

22   you to consecutive, not concurrent, but consecutive

23   prison sentences for that.

24       And if you commit any crime at all while you're

25   on bail from running a red light to the most serious, you

Proceedings

1  could be arrested, brought back before this Court and

2  have your bail revoked.  You will also face a harsher

3  penalty for the new crime because you were out on bail

4  when you committed it.

5          Do you understand me so far?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  Now here are some of the rules

8  you're going to have to follow.  First of all, you're

9  going to have to show up in court whenever you're told

10  to.  Second of all, you may not travel outside of the

11  Eastern District of New York or the Southern District of

12  Florida.  Those are geographic areas that your lawyer

13  will help you understand much more specifically.  And you

14  can't leave those areas except to travel from one to the

15  other.

16          You must avoid contact with your co-defendants

17  and any individual employed by or associated with any

18  sports marketing company identified in your indictment,

19  CONCCAF or any affiliated entity and FIFA or any

20  affiliated entity.

21          Do you understand that so far?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  Your passport is already in the

24  possession of the Federal  Bureau of Investigation and

25  you may not apply for a passport of any country while you

Proceedings

1   are on bail.  You will be subject to random visits at

2   your place of residence and if you go to work anywhere,

3   there as well.  It will be your responsibility to make

4   the pretrial services officer who shows up unannounced,

5   comfortable and invited to investigate the bona fides of

6   your contention that you're residing where you say.

7           You will report to your pretrial services

8   officer as often and in whatever manner you are directed.

9   So if you're told to call twice a week and appear in

10  person once a week, that's what you will do.

11          I see that there is a condition of home

12  detention but I don't see a condition of EM.  Is that

13  correct?

14          MR. TUCHMANN:  No, the EM Should be on there.

15  If it's not there, that's something that the parties have

16  agreed to.

17          THE COURT:  Oh, I am sorry.  It is here.  My

18  eyes glanced down the line.

19          You will be at home at your daughter's home,

20  subject to electronic monitoring.  That means you will be

21  required to wear a device attached to your body.  That,

22  like a cell phone, will tell the government where you are

23  all the time.  You won't be permitted to leave your

24  daughter's address except for attorney visits, court

25  appearances and medical emergencies, religious services,

Proceedings

1  as well.

2          Is all of that clear?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  All right.  Mr. Weddle, have your

5  client sign the bond where indicated.

6          THE CLERK:  Mr. Hawit, signature bottom right

7  where the X is.  Thank you.

8          THE COURT:  Okay.  Is there anything further?

9          MR. TUCHMANN:  Not from the government, your

10 Honor.

11         THE COURT:  Okay.

12         MR. WEDDLE:  Not from the defense, your Honor.

13         THE CLERK:  Thank you.

14                   (Matter concluded)

15                       -oOo-

16

17

18

19

20

21

22

23

24

25

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **2nd** day of **February**, 2016.

Linda Ferrara

CET**D 656

Transcriptions Plus II, Inc.

MS. HECTOR:   Thank you.

(Matter concluded)

-oOo-

**C E R T I F I C A T E**

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this

**23rd** day of **January**, 2016.

Linda Ferrara

CET**D 656
Transcriptions Plus II, Inc.