1              UNITED STATES DISTRICT COURT

2              EASTERN DISTRICT OF NEW YORK

3

4

5   UNITED STATES OF AMERICA,      )
                    Plaintiff,     )   15-CR-00252 (PC)
6                                  )
                                   )
7   V.                             )   United States Courthouse
                                   )   Brooklyn, New York
8                                  )
    WEBB, ET AL.,                  )   MONDAY, SEPTEMBER 19, 2016
9                                  )
                    Defendants.    )
10  _____)

11

12      TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
            BEFORE THE HONORABLE PAMELA CHEN
13              UNITED STATES DISTRICT JUDGE

14  <u>APPEARANCES</u>:
    FOR THE GOVERNMENT:   ROBERT L. CAPERS
15                        United States Attorney
                          Eastern District of New York
16                        BY:  EVAN NORRIS
                               KRISTIN MACE
17                             SAMUEL NITZE
                               AMANDA HECTOR
18                             PAUL TUCHMANN
                               NADIA SHIHATA
19                             KEITH EDELMAN
                               TANYA HAJJAR
20                        Assistant United States Attorneys
                          271 Cadman Plaza East
21                        Brooklyn, New York 11201

22
    FOR THE DEFENDANTS:   LAW OFFICES OF DAVID I. GOLDSTEIN
23                        BY:  DAVID I. GOLDSTEIN, ESQ.
                          747 Chestnut Ridge Road
24                        Chestnut Ridge, New York 10977

25

1    (APPEARANCES CONTINUED)
     FOR THE DEFENDANTS:  PILLSBURY WINTHROP SHAW PITTMAN LLP
2                         BY:  WILLIAM SULLIVAN, ESQ.
                               FABIO LEONARDI, ESQ.
3                         1200 Seventeenth Street, NW
                          Washington, DC 20036
4
                          SQUIRE PATTON BOGGS
5                         BY:  THOMAS E. ZENO, ESQ.
                          221 East Fourth Street, Suite 2900
6                         Cincinnati, Ohio 45202

7                         LAW OFFICES OF GORDON MEHLER, PLLC
                          BY:  GORDON MEHLER, ESQ.
8                         747 Third Avenue, 32nd Floor
                          New York, New York 10017
9
                          BALLARD SPAHR LLP
10                        BY:  CHARLES A. STILLMAN, ESQ.
                          919 Third Avenue, 37th Floor
11                        New York, New York 10022

12                        COFFEY BURLINGTON
                          BY:  KENDALL COFFEY, ESQ.
13                        2601 South Bayshore Drive
                          Miami, Florida 33133
14
                          GREENBERG TRAURIG
15                        BY:  A. JOHN PAPPALARDO, ESQ.
                          One International Place
16                        Boston, Massachusetts 02110

17                        MIEDEL & MYSLIWIEC LLP
                          BY:  FLORIAN MIEDEL, ESQ.
18                             JOSHUA PAULSON, ESQ.
                          111 Broadway, Suite 1401
19                        New York, New York 10006

20                        CHADBOURNE & PARKE LLP
                          BY:  JENNY KRAMER, ESQ.
21                        1301 Avenue Of The Americas
                          New York, New York 10019
22
                          PINERA-VAZQUEZ LAW FIRM
23                        BY:  SYLVIA B. PINERA-VAZQUEZ, ESQ.
                          1900 South West 3rd Avenue
24                        Miami, Florida 33129

25   THE COURT REPORTER:  NICOLE CANALES, RPR, CSR

1          THE CLERK:  Criminal Cause for Status Conference,

2   Docket 15CR252, United States versus Webb, et al.

3          Will the parties please state their appearances for

4   the record, starting with the government.

5          MR. NORRIS:  Good afternoon, your Honor.  For the

6   government, Evan Norris, Amanda Hector, Sam Nitze, Kristin

7   Mace, Paul Tuchmann, Nadia Shihata, Keith Edelman and Tanya

8   Hijjar.

9          THE COURT:  Is there anyone left at the office to do

10  any work?

11         MR. NORRIS:  We left one person back there.

12         THE COURT:  Who do we have for the defense?

13         MR. PAPPALARDO:  My name is John Pappalardo.  I'm

14  here with Silvia Pinera-Vasquez.  We represent Mr. Napout.

15         THE COURT:  Good afternoon to both of you.

16         MS. PINERA-VASQUEZ:  Good afternoon.

17         MR. GOLDSTEIN:  Good afternoon, your Honor.  David

18  Goldstein for Mr. Esquivel, whose appearance is excused.

19         THE COURT:  Good afternoon.

20         MR. SULLIVAN:  Good afternoon, your Honor.  William

21  Sullivan and Fabio Leonardi with Pillsbury.  We're

22  representing Julio Rocha, who is present in your courtroom

23  today.

24         THE COURT:  Good afternoon to all of you.

25         MR. MEHLER:  Good afternoon, your Honor.  Gordon

1   Mehler, representing Mr. Takkas, whose appearance has been

2   waived.

3           THE COURT:  About afternoon, Mr. Mehler.

4           MR. ZENO:  Good afternoon, your Honor.  Thomas Zeno

5   on behalf of Mr. Li, who is here in the courtroom today.

6           THE COURT:  Good afternoon to both of you.

7           MS. KRAMER:  Good afternoon, your Honor.  Jenny

8   Kramer on behalf of Aaron Davidson, whose appearance is also

9   waived.

10          THE COURT:  Good afternoon.

11          MR. MIEDEL:  Good afternoon, your Honor.  Florian

12  Miedel and Joshua Paulson representing Hector Trujillo.

13          THE COURT:  Who is present.  Good afternoon to both

14  of you.

15          MR. PAULSON:  His presence has been waived.

16          THE COURT:  I'm so sorry.  You're absolutely right.

17  I apologize.  Good afternoon to both of you.

18          MR. STILLMAN:  Good afternoon, your Honor.  Charles

19  Stillman, Kendall Coffey, Julio Barbosa for Jose Marin.  His

20  appearance has been waived.

21          THE COURT:  Good afternoon to all of you.

22          All right.  We are missing, actually, one defendant

23  and one defense attorney.  Now Mr. Takkas, his appearance was

24  waived, but his attorney should be here.

25          MR. MEHLER:  I am here, your Honor.

1      THE COURT:  I'm sorry, Mr. Mehler.  You said that

2  before.  My apologies.  So we're good on you.  Sorry.  I

3  didn't pay attention to who you actually represented.  I'm

4  sorry about that.

5      So everyone is present and accounted for who should

6  be here.  This is, of course, the first status conference

7  before me.  As the parties are aware, the case was reassigned

8  to me on August 23rd of this year, and I have spent the time

9  between then and now to try to familiarize myself with the

10  history of the case, and the different proceedings, and

11  obviously the various parties.  My goal today is to

12  essentially pick up where Judge Dearie left off and to set a

13  workable pretrial schedule, assuming a fall 2017 trial date.

14      Now as the parties may all recall, the last time you

15  were here in August, I think it was the 11th of August,

16  Judge Dearie had opined that a spring trial date was

17  unrealistic and had told everyone to prepare for a fall 2017

18  trial date, which I agree with.  The only difference is I'm

19  going to assume a start date in November instead of September,

20  which is what I think he had preliminarily suggested.  In

21  fact, I think his words were your September and October are

22  mine.  But I'm going to operate a little differently, for

23  reasons that have more to do with our internal chambers

24  management and schedules that we have to deal with.

25      So here's what I'm going to propose, in terms of the

1   pretrial schedule, and I think it will come as no surprise,

2   because I think Judge Dearie had suggested something similar,

3   a sort of two-tiered approach to the pretrial motions, so the

4   first tranche, if you will, of pretrial motions that are

5   directed at the indictment.  So any spatial challenges to the

6   indictment itself -- I assume jurisdictional challenges would

7   be the bulk of those -- those would be on the following

8   schedule.  And I propose this but subject to further

9   discussion with the parties.

10         November 7th for the initial motions by defense

11  counsel, spatially challenging the indictment.  November 28th

12  for the government's response.  And for what it's worth,

13  folks, this will be recapitulated in a docket order, so if you

14  don't want to write, you don't have to.  And then

15  December 12th for any replies.  So that will be the first set

16  of motions that I will decide.  Then the second tranche will

17  be the standard pretrial motion, such as suppression, Bruton,

18  any other issues like that.  And that would be on a proposed

19  schedule for March 6th, for the initial motions; April 3rd for

20  the government's reply; and April 17th for any replies from

21  the defense.

22         And, then, as I said before, I'm assuming a trial

23  date in November, starting the first week of November,

24  November 6th.  Now, I certainly appreciate that there are

25  holidays interspersed throughout there, but to my mind -- and

1   I'm happy to hear any counterproposals or thoughts on this --

2   those tend to be the type of people who are gone for long

3   weekends, as opposed to two or three weeks at a time, which

4   often happens, for example, in the summer.  So it seems to me,

5   if you block out all of November and all of December, we

6   should be able to get this trial done, I assume, within six

7   weeks.

8           Now, obviously, a lot of this is in the realm of

9   crystal ball, because who knows who will be going to trial,

10  whether it will even be defendants beyond those we have here,

11  or what's going to happen within the next three or four

12  months.  But that's, at least, I think, a good operating

13  framework for everybody, and it gives some structure to going

14  forward, fully appreciating that I think we're going to have

15  to make adjustments for potentially new defendants or if there

16  are new charges.

17          So I'll hear from the government, if you have any

18  thoughts about that proposed schedule and then that approach.

19          MR. NORRIS:  Your Honor, could I just have one

20  moment to confer?

21          THE COURT:  Sure.  Take your time.

22              (Counsel confer.)

23              (Pause in proceedings.)

24          THE COURT:  I'll be asking the same of the defense,

25  so if you folks want to confer, feel free to get up, and move

1  around, and talk to each other.

2          MR. NORRIS:  Your Honor, for the government, I think

3  the schedule is quite workable.  The only request we would

4  make is -- we're anticipating quite a number of motions in

5  that first round and from -- possibly from different counsel.

6  If we can have an extra week to respond?

7          THE COURT:  That seems fine.

8          MR. NORRIS:  That would be great for us.  That would

9  push our response date to early December.

10         THE COURT:  For the challenges to the indictment

11 itself, the first date will be November 7th; the second date

12 will December 5th; and then the reply date will be

13 December 19th.

14         MR. NORRIS:  Thank you, your Honor.

15         THE COURT:  So let me hear from the defense.  Any

16 thoughts or objections to the proposed schedule?

17         MR. MEHLER:  I think, your Honor, our consensus is

18 it works.  I do have one question.  I have been chatting with

19 one of the assistants about the discovery.  It's kind of the

20 nary destination.

21         THE COURT:  The further away it seems.

22         MR. MEHLER:  So I just wondered if somebody could

23 give us a current status report as to where we are?

24         THE COURT:  That seems like an appropriate question.

25 I know that you have a lot of outstanding requests, probably

1   throughout the world, so do you have any sense of when the

2   bulk of the evidence is going to be turned over or the bulk of

3   the discovery will be turned over to this set of defendants we

4   have here?

5          MR. NORRIS:  Absolutely, your Honor.  We're

6   certainly well past the bulk point.  We've produced

7   approaching 10 million pages of records to date.  We've

8   produced a small batch last week, except a more sizeable batch

9   to be going out the door in the next few days.

10         THE COURT:  When you say small, what does that mean?

11         MR. NORRIS:  Small returns from a couple of

12  different countries, as to the number of pages, but definitely

13  digestible.  We've been trying to get out bigger sets of

14  records or search warrant returns that are in electronic form,

15  and we got a bigger batch of those records that we expect

16  coming out in the next week or so.  But we anticipate another

17  10 million.  We're well past the midway point, so once we get

18  this additional set of records out in the next week or so, my

19  anticipation is in about two or more weeks to have one more

20  sizeable set.

21         And then from that point, as your Honor noted,

22  discovery continues.  We continue to get evidence in.  Just

23  last week, for instance, we got 24 binders from the Swiss

24  authorities.  We're busy getting them right now and planning

25  on getting them out the door.  We anticipate that that process

1   will continue.  We've also got an ongoing privilege review
2   that as we get through records and determine if anything needs
3   to be disclosed, we get those out the door.  And then also --
4   and this is important, which is for scheduling purposes, so I
5   don't think it impacts at all the schedule your Honor has
6   proposed, because the first round of briefing refers to legal
7   motions.  There is a sizeable set of records that we received
8   from CONMEBOL, the South American Confederation, that we are
9   trying to address the disclosure for, but we anticipate it may
10  take a couple more months to get those out the door, and
11  that's for reasons I'll just explain briefly.
12          When we were before Judge Dearie last, in early
13  August, he referred us to Judge Levy to deal with a pretty
14  complicated privilege issue, and that would be exchange
15  briefing with Defendant Napout, and that has successfully
16  narrowed the issues somewhat.  But we had asked for a hearing
17  to determine the scope and existence of two privileges that
18  Defendant Napout claims, and until that hearing happens, and
19  until the review happens thereafter, at some level that may
20  involve the defendant, as he's asked to be involved in that
21  review.  We're not turning over any of those documents -- and
22  that's hundreds of thousands -- to any of the defendants.
23          We're working as hard as we can to do it, but right
24  now the ball is not in our court, as it were, in terms of
25  getting through that.  But just in terms of projecting forward

1    and thinking about time, that process, I think, conservatively

2    we anticipate taking easily several more weeks but probably

3    into a month.

4              THE COURT:  Okay.  Well, let me ask you a question.

5    I think, as you correctly point out, for the first round of

6    motions, the issues should be largely legal ones.  And so I

7    ask whoever wants to answer this question, is there any real

8    concern about not getting enough discovery to make those first

9    motions by the date that's been proposed?  You have a better

10   sense on the defense side what your motions might look like

11   that simply challenge the validity of the indictment as to

12   your particular defendant.

13             It would seem to me -- but, again, I don't know what

14   you plan to argue or what the law is -- that those motions

15   could be made without all the discovery being provided,

16   especially based on the representation that the bulk or the

17   core information has been turned over, and that what we have

18   now are some isolated pockets of various information.

19   Although, it sounds like discovery could be quite voluminous.

20             MR. NORRIS:  Yes.  I believe it's 350,000 documents.

21   I don't know about pages.

22             THE COURT:  Do they relate to many of the defendants

23   in this case or probably a narrower subset?

24             MR. NORRIS:  I think a fair number of defendants are

25   going to be interested in the records that were at CONMEBOL

1 headquarters.

2          THE COURT:  Does anyone foresee the ongoing

3 discovery presenting an issue in terms of your first set of

4 motions?

5          MR. MEHLER:  Your Honor.

6          THE COURT:  Mr. Mehler.

7          MR. MEHLER:  Your Honor, just to clarify, my

8 understanding, for example, with regard to any severance

9 motions, although one can make a challenges under Rule 8 based

10 on the indictment.  I think the far more important and

11 difficult one is under Rule 14, and that really depends on

12 many things.  It depends on who is left in the case, and it

13 depends on the evidence.  It may spill over, prejudice

14 arguments and similar arguments.  So my understanding is that

15 when the Court is talking about spatial challenges, it does

16 not include severance and should not include severance.

17          THE COURT:  You're right; that would be under the

18 March briefing schedule.  Does that seem too far out, from

19 your perspectives?  Because I assume what gets coupled with

20 that sometimes is a joint severance and speedy trial motion,

21 so it would be somewhat ironic to put it out for six months

22 for you to argue about speedy trial.  Does anyone anticipate

23 making such a combination of motions, and, if so, should we

24 build in maybe a January briefing schedule for those, in

25 between the spatial challenges and the more traditional

1  trial-related motions?

2      MR. PAPPALARDO:  Yes, your Honor.  On behalf of

3  Defendant Napout, we have been talking about filing a motion

4  to sever and a motion for a speedy trial going back to March

5  of this year.  We intend to file such motion as quickly as we

6  can.  The only thing we have been unable to do is to file it

7  based upon any kind of assigned date.  We were cautioned not

8  to file it until the Court set an agreeable date, and then we

9  could move from that point on.  We are ready to file that

10 motion, and I don't anticipate that there's going to be much

11 of an issue in connection with the CONMEBOL documents.  I

12 think --

13     THE COURT:  C-O-N-M-E-B-O-L, all caps, just for our

14 court reporter.

15     MR. PAPPALARDO:  And we are ready to address that at

16 any point in time, so, in fact, I think that the -- while

17 there may be a lot of documents, it's probably not a lot that

18 involve counsel.  In any event, we intend to file a motion as

19 quickly as possible to sever and a motion for a speedy trial

20 based upon the record today.

21     THE COURT:  How many defendants anticipate filing

22 severance motions?

23     Mr. Mehler, for Mr. Takkas, you serve for --

24     MR. MEHLER:  For Mr. Rocha.

25     THE COURT:  And you serve for --

1          MR. STILLMAN:  Mr. Marin, your Honor.

2          THE COURT:  Okay.  So let me put it out there.  It

3     seems to me maybe we should have an interim filing date for

4     those sometime in January, starting in January, and finish up

5     sometime in February, essentially.  Because while I understand

6     some of the evidence may assist the defense in deciding or

7     arguing in support of that motion, it does strike me -- and

8     this is based on my reading the indictment -- that your

9     argument is going to be basically based on sort of larger

10    issues, which is my client was really not involved -- if this

11    is a giant spoke, I guess, in a way, and there's people at the

12    hub of it, my guy was involved in a spoke that had nothing to

13    do with this other spoke.

14          So I think you're going to be making sort of gross

15    arguments, in a way, that won't necessarily come down to

16    finite evidence.  Now, if anything, the government may be

17    prejudiced not being able to say here's all the evidence in

18    common, but at the same time, I think the government has a

19    pretty good idea of some of the major proof they're going to

20    have on certain issues.  So I think these can be briefed in

21    January, without all of the evidence having been disclosed or

22    all the discovery, I should say.

23          MR. NORRIS:  From our perspective, that makes a lot

24    of sense, and we would be ready to do it.  I think the key

25    issues from our perspective is just that we be able to respond

1  to severance motions en masse, because there's so many

2  defendants planning to file them; and because there will be

3  such a heavy overlap in our response, we want to have that one

4  date to do it.

5        THE COURT:  So let me ask this, since I'm presuming,

6  and maybe not correctly, that the severance motion is going to

7  be coupled with a speedy trial motion, it makes sense to do it

8  earlier than March, even though what we could do is move the

9  suppression motion deadline a little later, to give everybody

10  a little breathing room, because that may obviously obviate

11  the need for some of these motions entirely.

12        Go ahead.

13        MR. STILLMAN:  Charles Stillman for Mr. Marin.  I

14  think there are two -- a couple different things going on

15  here.  Mr. Napout's counsel are seeking the relief that

16  they're seeking.  I don't think anybody else is seeking that

17  same relief.  Am I missing something?

18        THE COURT:  When you say relief, you mean --

19        MR. STILLMAN:  Speedy trial.

20        THE COURT:  Oh, so you're saying -- the rest of you

21  just want severance but not necessarily speedy trial?

22        MR. STILLMAN:  That's correct.

23        THE COURT:  Okay.  But it still seems to me to make

24  sense, to sort out who is going to go to trial with who,

25  relatively early on, I guess, especially because one of these,

1  at least, will be coupled with a speedy trial motion.  Is

2  there an objection to doing it on the February or January

3  schedule?

4         MR. STILLMAN:  Well, the point I would like to make,

5  your Honor, is that, for example, these CONMEBOL documents,

6  those are potentially important to us; and so I don't want to

7  be making a commitment to your Honor to be making a motion for

8  severance before I've seen documents that could be very

9  important, as far as my client is concerned.  I'm perfectly

10 content to make the severance motion with the schedule that

11 your Honor has originally set.  I don't mean to speak for the

12 others, but that's how I feel about it.

13        THE COURT:  You just want to clarify that you're not

14 going to be seeking speedy trial relief, necessarily.

15        MR. STILLMAN:  That's correct, your Honor.

16        THE COURT:  Okay.  Understood.  But I still think

17 for the government's sake it certainly makes sense to combine

18 the motions on that particular issue together, if everyone on

19 the defense side feels that they can make that motion fully

20 and effectively in January or February.

21        And I don't hear anyone say anything otherwise;

22 right?

23        MR. PAPPALARDO:  Your Honor, on behalf of

24 Mr. Napout, it has been right to file a motion to sever and a

25 motion for speedy trial for quite some time now, and I would

1    ask permission of the Court to file it expeditiously, within a

2    week.

3                THE COURT:  Right.

4                MR. PAPPALARDO:  He wants to assert his speedy trial

5    rights.  There's a motion to sever.  As you get into the case,

6    I think you will find that there's a substantial disparity in

7    the case with respect to Mr. Napout.

8                THE COURT:  Let me ask you this, then, we could try

9    to accommodate that, especially if the other defendants don't

10   want to have a speedy trial motion coupled with their

11   severance motion.  What we could do instead, then, is

12   entertain yours sooner, and then everybody else can brief

13   severance, along with the other motions, on the March

14   schedule; Bruton, suppression, etcetera.  Why don't we do it

15   that way.  I'm trying to avoid having the government respond

16   to motions every 20 minutes or so, which seems to be

17   counterproductive for everyone.

18               I'm going to have the government respond to

19   Mr. Napout's motion within the next month.  We'll set a

20   separate schedule for him, but everybody else will go along

21   with the March schedule for the severance and other motions.

22               MR. NORRIS:  Your Honor, if I can suggest perhaps

23   another workable way to do it would be to -- if Mr. Napout

24   wants to file his motion next week, fine, but if we can move

25   up the date for the severance motions to some time this fall,

1  October, November, and have everyone file them, that would

2  allow us to respond once.  I think there's such a heavy

3  presumption in favor of a joint trial, and the issues in

4  response, from the government's perspective, the case law is

5  so strong and so clear on this issue that the idea of

6  responding once to Mr. Napout, and then responding again in

7  the spring to other defendants, seems to risk that we're going

8  to be -- both being repetitive and having to brief the issue

9  multiple times.

10        But also that really misses the point, which is

11  we're at eight defendants now, and we're going to be likely at

12  a somewhat more manageable portion, given that we're in

13  ongoing plea negotiations, with several defendants come

14  spring.  And the idea of having two or three or four trials

15  for each person to be severed off of everyone else, if they

16  want them, clearly from our perspective it would be workable

17  and I suspect the Court's.

18        We think the most efficient, the most

19  straightforward way of dealing with the issue of severance is

20  make sure everyone who has a motion makes it.  So someone says

21  I'm a little fish, and someone says there's not much evidence

22  against me, and someone makes whatever arguments they're going

23  to make are all seen once, and we're able to respond all

24  together at once, and the Court is able to see what it would

25  look like if the defense arguments in favor of severance are

1    granted.

2              THE COURT:  That's certainly a fair point, given the

3    nature of severance motions, which is to argue the

4    efficiencies, fairness and unfairness, based on the

5    government's presentation.

6              So let me turn to the defense.  Can all of you who

7    want to file severance motions do so over the next month or

8    so?

9              MR. MEHLER:  Your Honor, I disagree -- if Mr. Norris

10   believes that the severance motion is something we would lose

11   anyhow, I don't know why he's so concerned about it.  And,

12   moreover, even if the Court has a March deadline, you're

13   talking about a fall trial.  How is the Court even going to

14   know who the players are?  Mr. Norris himself said there are

15   plea negotiations going on with people.  We have to have a

16   better sense, and when we argue spillover prejudice, we're

17   going to argue with regard to specific defendants.

18             A defendant may not be here a year from now.  I

19   don't see what the prejudice is.  The prejudice to us is

20   clear.  We still have records coming in.  Severance is not an

21   easy motion to win, and, again, Mr. Norris says we won't win

22   it.  Okay.  We're asking the Court to -- or at least I am --

23   to allow it, just as particularly in its own way, as a

24   suppression motion, maybe not quite as much, but more than

25   Mr. Norris is arguing.  And for that reason, we think it makes

1   sense to have one set of motions that really relate to all

2   defendants, like jurisdiction.

3          Indeed, Judge Dearie said that he just wanted one

4   set of motions from everybody, I believe, on that, and

5   the Court can, perhaps, clarify it.  But with regard to

6   everything else, it's particular; it depends on who is left

7   standing.  And we would ask the Court to leave it, as

8   the Court intuitively understood was the fair way to proceed.

9          THE COURT:  Thank you, Mr. Mehler.  I think at the

10  end of the day that strikes me as correct.  I'm denying the

11  request of Mr. Napout to file the motion now but, rather, keep

12  with the January schedule for all the severance motions.

13         Now, this case has been declared complex, so I'm not

14  concerned about any sort of formal speedy trial issues, and I

15  think this is an unusual case, to be sure, where there should

16  be some real recognition of efficiencies that we can achieve

17  by having motion practice combined, as much as it can be, in

18  this way.  I think a difference of three months, which is what

19  we're talking about, for your motion to be filed, including

20  your speedy trial motion, is not significantly impairing your

21  client's right to speedy trial, especially because there's

22  ongoing discovery that I think is going to be relevant,

23  potentially, especially because there are privilege issues

24  that haven't been resolved as to this particular defendant.

25         So all of that, for me, is going to be information

1    that I would want to know about, because when we're talking

2    about the efficiency about presenting a case, it helps to know

3    all of the evidence that may or may not go in.  So I'm denying

4    the request to file Mr. Napout's motion now.  Let's set a

5    schedule for January and start briefing the severance issue.

6    How about mid January to begin that process?

7            MR. MEHLER:  Your Honor, if I may just respond, I

8    understand what the Court has done, but I would object to

9    that.  As far as I know, we are the only defendant who is

10   asking for a speedy trial.  Everybody else may or may not,

11   depending upon what the evidence is, seek a motion to sever.

12   In the 2nd Circuit, we have to file a motion to sever, in

13   order to get to the point where the Court can entertain a

14   speedy trial motion.  I think as you progress in this case,

15   while the case was certainly complex on May 27th of 2015, and,

16   perhaps, even there were lingering aspects of it on

17   December 4th of 2015, I would question whether, certainly as

18   to whether Napout, the case is complex.  And I would raise

19   that, your Honor --

20           THE COURT:  Let me stop you for one second.  You're

21   telling me there's a privilege dispute over several -- tens of

22   thousands of documents doesn't make this complex?

23           MR. MEHLER:  That's exactly what I am telling you,

24   your Honor.  I have seen the discovery of what we received,

25   and that discovery, as to Mr. Napout, basically amounts to

1   zero, and we are insisting on a speedy trial.  And if we are

2   forced to wait while everybody else catches up,

3   Mr. Napout's speedy trial rights are being severely hampered.

4   We've received discovery, your Honor.  We have a good sense of

5   what discovery is left out there, and we are ready to file a

6   motion to sever, file a motion for a speedy trial, and before

7   you, with evidence with regard to whether or not this is

8   really a complex case.

9           At the end of the day, your Honor, there's a

10  substantial likelihood that many of these defendants will

11  negotiate with the government and plead guilty to the charges,

12  and I think that that's reasonable under most circumstances.

13  That's not going to happen here.  We are in a different

14  posture, and we would really like, as Judge Dearie

15  suggested -- he would hear us on a motion for speedy trial,

16  and we can't file that, your Honor, unless we file a motion to

17  sever.

18          THE COURT:  I'll note your objection.  I just want

19  to note for the record as well that last time the only

20  defendant who expressed an intent to file a motion for

21  severance was you, on behalf of your client.  So at the time

22  that Judge Dearie may have said I'll entertain that motion as

23  soon as you file it -- and, quite frankly, he didn't set a

24  deadline, so the fact that it wasn't filed before today, I

25  don't think had anything to do with any express judgment of

1    Judge Dearie.  But putting that aside --

2         MR. MEHLER:  That's not true, your Honor.  If I may,

3    I was in touch with Judge Dearie's clerk, and we were ready to

4    file the motion, and she said please do not file it until you

5    receive an order.  And so it's been sitting there on the

6    shelf, and, of course, now Judge Dearie is no longer the

7    judge.

8         THE COURT:  Fair enough.  Even under that

9    circumstance, I still believe it's appropriate to handle it

10   this way.  And I note for the record that this ongoing

11   dispute, or unresolved dispute, about the discovery relating

12   to the privileged documents, to me, is a significant factor

13   why I shouldn't entertain this motion now.  I'm going to note

14   your objection, and you can continue to make it, but I think

15   this is the appropriate way to resolve it.  I do not think

16   your client's speedy trial rights are so significantly

17   impaired.

18        MR. MEHLER:  Can we ask, your Honor, for an

19   expeditious hearing on the CONMEBOL issue?  That, I will

20   represent to the Court, is a nonissue.

21        THE COURT:  I'm sorry.  I'm not sure what you're

22   talking about.

23        MR. MEHLER:  Issue of privilege.

24        THE COURT:  Well, Judge Levy is handling that.  That

25   was referred by Judge Dearie, so certainly you should take it

1   up with Judge Levy, in terms of resolving it expeditiously.

2   So if there's some problem with that, raise that with

3   Judge Levy, and I will await his ruling on that, as per

4   Judge Dearie's prior referral on that matter to him.  I will

5   handle this expeditiously.  Again, we're talking about a

6   difference of three-and-a-half months, and I do not think it's

7   an unfair delay with respect to your client.

8              And I think it's appropriate, in light of some

9   unresolved issues, particularly as to your defendant, with

10  respect to what evidence the government will be permitted to

11  produce.  It strikes me that some of this allegedly privileged

12  material can be quite important to your defense, as well as,

13  potentially, to the government's case.  But, again, I don't

14  have full knowledge of all of the evidence, but it strikes me

15  at least on the surface that that issue should be resolved

16  before I decide a severance motion, at a minimum.  Given that,

17  I note your objection, but I still am going to link these

18  suppression motions -- severance motions together.

19             MR. MEHLER:  So we're not permitted to file?

20             THE COURT:  You're not permitted to file.  Or you

21  can file it, but I'm not going consider it.

22             MR. MEHLER:  Thank you, your Honor.

23             THE COURT:  So we're thinking of January 17th for

24  the severance motions to be filed by all the parties who want

25  to sever.  I'll give the government three weeks.  All right.

1   I think that you can answer globally, if you like, because I

2   assume what will happen is you'll give me a very big

3   recitation of the evidence you anticipate and efficiencies

4   that will be achieved by having the defendants together, so

5   you can give one global response, if you would like.

6               MR. NORRIS:  That would be great, your Honor.  If we

7   can have a month for our response, we would appreciate that.

8               THE COURT:  Where would that put us?  February 17th.

9               THE CLERK:  Yes.

10              THE COURT:  February 17th.

11              MR. NORRIS:  Thank you.

12              THE COURT:  We'll do that.  And then two weeks for

13  replies.  So it will put us into the beginning of March.

14              THE CLERK:  March 3rd.

15              THE COURT:  Okay.  Good.  So that's the schedule for

16  the severance motions, and then, of course, Mr. Napout should

17  make his speedy trial requests at the same time.  So you'll

18  have to respond to that as well, but it's really part and

19  parcel in many ways, perhaps another page or two, for why it's

20  not fair to have him linked to all the other defendants for

21  purposes of trial.

22              MR. PAPPALARDO:  Our reply to the government is --

23              THE COURT:  March 3rd.  Again, look at the docket

24  order.  We'll recapitulate that for you.

25              One question I did have, though, is about the status

1   before Judge Levy on the privilege issue.  I think I saw a

2   docket order that Judge Levy noted there is nothing to be

3   resolved.  I think I may have misread that.  Has he taken it

4   under advisement, the privilege issue?  And is it fully

5   briefed?

6              MR. NORRIS:  We filed a breach Friday afternoon,

7   responding to Defendant Napout's letter from a week or two

8   prior.  We've now filed that and identified the two issues

9   from our perspective that still require hearing, and

10  co-counsel would like to move expeditiously before Judge Levy.

11  We're in agreement with that, and will be ready to conduct the

12  hearing in any other proceedings that he wishes as soon as

13  he's ready.

14             THE COURT:  Is there a date for a reply to be filed,

15  or no?

16             MR. MAHLER:  I don't know, your Honor.  The

17  government filed a letter, so that put us on notice of this.

18  We responded to the letter, and they filed a reply.  I'm not

19  sure that it's -- I mean, it's ripe for a hearing.

20             THE COURT:  Okay.  Well, obviously, I'll leave it to

21  Judge Levy.

22             MR. MAHLER:  Do we get another reply?  I'd rather

23  just go to the hearing and move this.

24             THE COURT:  You can take it up with Judge Levy.  He

25  has a lot of experience, and so I'm sure he will decide

1    whether or not he needs a hearing or what other replies he

2    might need.  It strikes me, though, that this is a complicated

3    issue for him, because while the legal issues may be divided

4    into two distinct legal issues, there are a lot of documents

5    to be analyzed, and so I trust in his discretion to move it

6    along expeditiously.  But, realistically, I think it's going

7    to take him some time to go through the documents, and he'll

8    presumably want to hear from the parties again.  I'll leave it

9    to his good judgment.  Is there anything else?

10         MR. STILLMAN:  A tiny question.  I ask Mr. Norris

11   through your Honor whether this issue that Mr. Napout has

12   raised with respect to privilege affects all of the CONMEBOL

13   documents, whether we get some of them?

14         MR. NORRIS:  It does affect all of them, and if

15   your Honor would like us to respond --

16         THE COURT:  To the extent that you can, and I think

17   you said earlier all the defendants will presumably be

18   interested in the documents, but maybe I missed that they were

19   referred to as the entire universe of CONMEBOL documents.

20         MR. NORRIS:  Just ask co-counsel Kristen Mace to

21   respond.  I think she can give the parties a better sense of

22   the documents.

23         THE COURT:  Go ahead, Ms. Mace.

24         MS. MACE:  Thank you.  So we requested by via M-let

25   (phonetic) a search of the CONMEBOL headquarters, and we made

1    that request in January.  The search was conducted, and then

2    in May, we received a bulk of material that we understand to

3    have approximately 350,000 documents.  We don't know yet what

4    is in there because we have not yet looked through the

5    documents.

6            THE COURT:  350,000 documents or pages of documents?

7            MR. NORRIS:  Documents.

8            MS. MACE:  Documents.  So we have not looked through

9    it because there are these difficult privilege issues that

10   could implicate the materials several different ways.  For

11   example, Defendant Napout asserted a common interest privilege

12   that could touch on documents in various different ways, so we

13   wanted to hold off and not look at them at all, so we can't

14   comment specifically what is in there.  For example, Defendant

15   Marine was also with CONMEBOL, and so I think it's reasonable

16   to presume that other defendants would be interested as well.

17           THE COURT:  How many of the remaining defendants

18   have some connection to CONMEBOL?  Of the, I think, eight we

19   have, would you say pretty much everyone has some connection?

20           MR. NORRIS:  Looks like there are three defendants

21   here who were South America soccer officials, but I would note

22   that the schemes that are alleged, some of the schemes span

23   Confederation.  For instance, Defendant Davidson is charged,

24   even though he's a sports marketing executive from Miami and

25   from the CONCACAF region.  One of the schemes that he's

1   alleged to have participated in, along with Marin, Napout,

2   Esquivel and others, was a scheme that involved both CONCACAF

3   and CONMEBOL.  So in a very real way, we don't know what's in

4   the documents, so this isn't based on any ability to have

5   reviewed them.  But in a very real way, CONMEBOL was operating

6   at a time, and searched at a time, when its activities and

7   ongoing contracts affected business matters, not just in

8   South America but also in North American as well.

9            THE COURT:  So it seems to me the takeaway, to the

10  extent that Judge Levy rules that the government gets to use

11  some or all of these documents, they are going to be

12  potentially significant to all of the defendants or at least

13  the majority.  And the government unfortunately is not in the

14  position to say exactly what they are, because they're

15  remaining same (phonetic) for the moment until that issue is

16  resolved.  But you're on notice that you're going to want to

17  take a look at whatever documents end up getting released.

18           Now, I will talk to Judge Levy, of course, and he'll

19  see the ECF entry, so he'll know that I have set these

20  deadlines.  But I have no doubt he will move as expeditiously

21  as possible, but I'll explain to him my view resolving this

22  issue is going to be necessary before we get to the severance

23  motions.

24           MS. PINERA-VAZQUEZ:  Your Honor, I would just like

25  to point out, in addition to the CONMEBOL privilege issues, we

1    alerted the government back in December, when Mr. Napout was

2    arrested and they seized his electronic devices, that there

3    was also privileged communication in those devices.  We've

4    been asking for a taint team since December.  So we still have

5    not received any of those documents or any of those

6    communications.  We've been asking for that, and for some

7    reason -- I don't want the Court to misinterpret as to why

8    these two issues got grouped together, when we've been asking

9    for these documents since December.

10           We're now nine months down the road, and we still

11   don't have my of the documents, and we also don't have a

12   taint team person that we can speak to recording the private

13   electronic devices of our client.  And for some reason these

14   two privilege issues have been meshed together when, really,

15   they shouldn't, because we've been asking for this since

16   December of 2015.

17           THE COURT:  You have gotten no downloads from the

18   devices that were seized from your client nine months ago?

19           MS. PINERA-VAZQUEZ:  The only thing we did get --

20   that's correct.  We got the downloads from the iPad, I

21   believe, two or three weeks ago, but the two iPhones, we have

22   not received any sort of -- anything.  We haven't gotten the

23   downloads or anything.  We've been asking for that since

24   December.  This team cannot look at it because we've alerted

25   them there's privileged documents.  Just like the CONMEBOL

1  documents, no one can look at them because they're the

2  prosecution team.

3          THE COURT:  Slow down.  That's all I was going to

4  say.  So is there some process in place to download those

5  without your viewing them to turn over?

6          MR. NORRIS:  The process is very much in place,

7  your Honor.  The question of privilege that we're trying to

8  resolve with Judge Levy will also apply to these records, and

9  we haven't had authority to search them until this summer.

10  We've had authority to search them, but they are, just like

11  CONMEBOL records, being held in suspense pending the outcome

12  of this privilege question.

13          THE COURT:  But the defense has gotten the copies of

14  all the materials in dispute, including they should get the

15  ones from the phones, right, from -- not from you guys but

16  from the taint team.

17          MR. NORRIS:  Yes.  They have gotten a copy of

18  everything that we've been able to obtain out of those devices

19  from the taint team, yes.

20          MS. PINERA-VAZQUEZ:  We do not have copies of the

21  two phones.

22          THE COURT:  That presumes that the government has

23  extracted that information, actually.  All I can say to the

24  government, this part of the government before me, is alert

25  your taint team to the fact that the defense is saying they

1   haven't gotten anything from the phones, and, obviously, if

2   there's some technical issue, they should be allowed to speak

3   to the defense directly to figure out how to resolve it or

4   what the problem is.  Talking to you, you're the intermediary,

5   at this point, but we should make that happen as soon as

6   possible.

7            MR. NORRIS:  We have put the taint team in touch

8   with counsel, and they've been able to have a discussion, if

9   they need to.  And we have also informed defense counsel that

10  we haven't been able to extract anything from the phones, and

11  so there's nothing to provide.

12           THE COURT:  The bottom line is talk to the taint

13  team.

14           MS. PINERA-VAZQUEZ:  I just don't have a name.  I've

15  been asking for a name.  I don't have a name for the taint

16  team.  And I just thought I heard him say he'd been authorized

17  to extract the documents.

18           THE COURT:  That happened in the summer.  Apparently

19  a search warrant was authorized.  Why don't you guys resolve

20  this offline.  Okay.  And get defense whatever contact

21  information they need, so that they can hear directly from the

22  taint team what the status is.

23           MR. NORRIS:  Yes, your Honor.

24           THE COURT:  As I understand, the privilege issue as

25  to those electronic data, or that electronic data, will be

1  resolved by Judge Levy as well.

2          MR. NORRIS:  Yes.

3          THE COURT:  Anything else from anyone else?

4  All right.  Terrific.  Good meeting all of you, and we'll see

5  you again soon.  As I said, the schedules that we said will

6  all be put on ECF.  My very good.

7          We have a couple people who have not entered their

8  appearance yet in this case.  So, Mr. Barbosa, you, sir, need

9  to enter your appearance, if you're going to be appearing in

10  this case, along with Mr. Coffey.

11          MR. BARBOSA:  Yes, your Honor.

12          THE COURT:  Terrific.  I think those are the only

13  two.  One last thing.  I apologize.  The last time you were

14  before Judge Dearie, there was some talk of potentially new

15  defendants or maybe a Superseding Indictment.  I'm not going

16  to ask you to give me an estimate, but I do want to let

17  everybody know that if there are new parties, we're going to

18  have to figure out whether the schedule makes sense to them.

19  It may be -- and I'm just putting the government on notice --

20  if they come a little too late, we're just going to have to

21  handle them as a separate case, as not to prolong the

22  proceedings against the existing defendants.

23          MR. NORRIS:  Your Honor, with respect to speedy

24  trial --

25          THE COURT:  Yes, I don't think -- my assumption is

1   the case is still operating as a complex case, so no specific

2   exclusions are needed, but I will exclude the time from now

3   until the end of --

4                What was your last briefing date?

5                THE CLERK:  April 17th --

6                THE COURT:  -- for these motions to be filed and

7   resolved.

8                MR. NORRIS:  Your Honor, just so the record is

9   clear, if your Honor could find that the cases for the

10  exclusion, the complexity of the case, and nature and ongoing

11  discovery justifies exclusion, I would appreciate that.

12               THE COURT:  So there is still a complex designation

13  for this case, but I do find there's evidence to support,

14  based on the number of defendants, the complexity of the

15  evidentiary issues, and the discovery that is still incoming

16  from various sources throughout the world, obviously, and also

17  the nature of the charges against all of the defendants.

18               Let me add excluding time specifically is

19  appropriate to allow plea negotiations to continue, because I

20  think that there may still be some, as well as to resolve all

21  the motions that I have now set the schedule for.  So

22  technically I could exclude time until the end of the briefing

23  schedule at a minimum of our last set of motions, because the

24  time could be excluded until I resolve all these motions.

25               Anything else?

1          MR. NORRIS:  Nothing from the government.

2          THE COURT:  Good meeting all of you.

3                    (Proceedings adjourned.)

4

5                              *  *  *

6

7          I certify that the foregoing is a true and correct
   transcription of the record from proceedings in the
8  above-entitled case.

9      /s/ Nicole Canales              September 20, 2016
           Nicole Canales                    Date
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25