

Elliot H. Scherker
Co-Chair, National Appellate Practice Group
Tel 305.579.0579
Fax 305.579.0717
scherkere@gtlaw.com

December 5, 2017

**VIA ECF**

The Honorable Pamela K. Chen
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    <u>United States v. Juan Ángel Napout</u>, Case No. 15-cr-00252-PKC

Dear Judge Chen:

      On behalf of the defendant, Juan Ángel Napout, we submit this letter in accordance with the Court's December 1, 2017 order, which directs the parties to brief the admissibility of foreign law on the question of the defendants' intent.

**1.**      **Factual Background.**

      **a.**      **The government's motion *in limine*.**

      The question whether foreign law is admissible in this trial was first raised by the government's October 17, 2017 Motions *in Limine* to Admit Certain Evidence, Preclude Certain Evidence at Trial, and Require the Defendants to Comply with Their Discovery Obligations (DE:718), in which the government argued that, "[b]ecause the defendants are charged with violations of U.S. law that do not turn on the legality of their actions outside the United States, evidence and argument about whether defendants' conduct did or did not also violate the laws of other countries—whether presented through cross-examination of the government's witnesses or in any defense case—is irrelevant." *Id*. at 17-20. Defendants opposed the government's motion, with Mr. Napout, in particular, arguing that "if a defendant is charged with conspiring to commit an act that the defendant believes is lawful, the government cannot prove the crime of conspiracy." (DE:748:9).

      The Court heard the government's motion on November 8, 2017. The Court ruled that it would disallow cross-examination of government witnesses as to "what their law prohibits," because "that's extraordinarily speculative" and "the prejudice is obvious." Transcript, 11/8/17 (hereinafter "T1") at 71. The Court stated that the legality of conduct in other countries by defendants or government witnesses under foreign law would not address the question whether

The Honorable Pamela K. Chen
December 5, 2017
Page 2

defendants' alleged violations of FIFA's rules and codes supported the government's honest-services liability theory. (T1:71-72). The Court further stated that foreign law is irrelevant because "[t]he government either will prove to the jury or not that these individuals in some way knowingly violated some duty that they had . . . and the government is going to define that duty by the codes of conduct," and that evidence on the legality of defendants' conduct under foreign law "is not relevant" and would "undermine the notion that [defendants] had a duty to follow these rules." (T1:72-73).

The government argued that the introduction of foreign law would "run smack, head on into the rule that ignorance of law is no excuse." (T1:76). The government further asserted that it would not "concede that it's not criminalized in the countries" represented in CONMEBOL, and that "there's no element of the charged offense[s] that [defendants'] conduct violates . . . [foreign] law." (T1:77, 82). According to the government, "[i]t's going to be a sideshow that will confuse the jury and is wholly irrelevant . . . on intent." (T1:78).

The Court ruled as follows:

. . . I do not agree with the defense argument about its relevance on the intent question because I think the intent issue is going to be narrowly defined as, [d]id the Defendants know about and violate knowingly their fiduciary duty to their respective organizations? . . .

To the extent that the defendants argue, though, that someone's understanding, mistaken or not, about what their own law requires would somehow inform that issue or should be allowed to inform the jury's view of whether that's proved or not I think is wrong.

But even if it has some marginal probative value, it clearly is outweighed by the prejudice, which is so obvious, I think, and so compelling because, in effect, the jury will certainly get the implicit message that they should not find these Defendants guilty because what they did in their country . . . might have been legal. And, quite frankly, we . . . won't even have any competent evidence about whether that's true or not.

So, the form of it and the potential use of it I think are improper. I will write more extensively on this. I think there are some tricky issues that I will address in terms of the whole honest services sphere. Those haven't been raised in the arguments before me, but I will address those in a written submission.

Nonetheless, I find that references [to] foreign law should not come in through cross-examination or otherwise during the trial. I think it would be unduly prejudicial at a minimum and I think it has slight, if any, probative value.

(T1:82-83).[1]  Although noting that "there are some lurking issues here," the Court "disallow[ed] any reference to foreign law." (T1:86-90).[2]

The Court also noted that "it sounds like the defense would wait until the Government puts on its case and every single witness is asked this question before deciding if the Defendant is going to testify," and that, "[i]f the Defendant doesn't testify about their own beliefs about the law, then none of this comes in even under the defense's theory." (T1:91). Accordingly, the Court ruled that "it's far too little in terms of probative value, especially in terms of how it would come in to allow it to be referenced." *Id*.

### b. The Court's direction for further briefing.

Impelled by the government's inclusion of a good-faith instruction in its proposed jury charge (DE:784-1:46), the Court has now requested the parties to brief the admissibility of

---

[1] Mr. Marin's counsel thereafter suggested that the Court could use an instruction to protect against Rule 403 concerns and that the government could "come in with proof that says [our] evidence is wrong because somehow [the government] can prove that the law wasn't what was said or overcome it by saying you read the statute or code of ethics and it's clear as a bell that that should be what governs." (T1:83-84). The Court responded that the defense position is "certainly clever and novel, and . . . it actually touches on a tricky issue," such that "I'm not completely discounting it." (T1:84). Nonetheless, the Court reiterated that "I don't think introducing this notion of . . . foreign law is sufficiently probative to allow what is clearly . . . quite prejudicial evidence that is not competent as well," and further that the defendants would "run afoul" of Federal Rule of Criminal Procedure 26.1 by introducing foreign law into the trial without formal notice of an intent to do so. (T1:85-86).

[2] Before announcing its ultimate ruling, the Court turned to the government and inquired whether, assuming that a defendant "could claim or his counsel could argue that even if he was given a copy of the [FIFA] rules he never read them, . . . and his belief about whether he was violating his fiduciary duty . . . was informed in some ways by his mistaken belief about foreign law, does it have any relevance at all in terms of the intent to violate the code?" (T1:87). The government responded that "it's almost a non sequitur . . . to say the reason I don't understand [a fiduciary obligation] . . . is, now turning to criminal law in my home country, it's not in the statute as a crime." (T1:88). The Court "acknowledge[d] that I think it's a closer call than the Government would say," because "[i]t's an argument" for a defendant to "defend on the intent to violate the fiduciary duty based on saying . . . no one told me about rules and . . . even if I didn't see them, I assumed that they were somehow consistent with what my country allows or doesn't allow and, therefore, I didn't have the intent or belief that I was violating my fiduciary duty as defined by the FIFA code." (T1:90). Nonetheless, the Court ruled that the argument "has too much baggage that comes with it that is too dangerous to allow into the case," and that "there's a procedural issue" because foreign law "was never raised by the defense before." (T1:90-91). The Court then immediately stated, "let me take that back," noting that the "procedural issue . . . might be surmountable," but that "ultimately . . . the prejudice is too great . . . [and] the probative value is too little." (T1:91).

The Honorable Pamela K. Chen
December 5, 2017
Page 4

foreign law, particularly with respect to the elements of honest services fraud. Transcript, 12/1/17 (hereinafter "T2") at 2618-26. The Court noted the defense argument that foreign law is "relevant to what a defendant might believe his duties or fiduciary duty or obligation was to his soccer Confederation," and that the government's proposed good-faith instruction would "tell the jury a good-faith belief that what the defendant was doing did not violate a duty is something the jury should consider." (T2:2618-20). While the government maintains that "it does not matter if [defendants] thought that what they were doing was legal in their countries" because, to obtain a conspiracy conviction, "[t]he defendants do not have to knowingly violate a law or know what they are doing violates a law," honest services fraud has "a mens rea element, in that the defendant has to knowingly defraud the employer or the soccer organization here of honest services, and therein lies the problem." (T2:2621-22).

That is, a defendant must "actually know what the rules are and then knowingly violate them." (T2:2621). Thus, "the question still is whether or not the defendant has a right to, at least, put out his own mental state as to whether he thought he was violating what FIFA required of him" if the defendant believed that "I could take a bribe as alleged and it would not be contrary to FIFA's expectations of me or my duties . . . because it is not illegal in my country and this is how we do business in South America." (T2:2621-22).

The Court, however, expressed the view that "the only legitimate line of inquiry might be . . . if the defendant, himself, wanted to take the stand and say: I didn't believe that what I was doing violated my own laws and, therefore, I believe that I wasn't defrauding CONMEBOL of what they expected me to do in carrying out my duties as an official of CONMEBOL." (T2:2623). The Court apparently believes that this is so because the Court "would never allow any cooperating witnesses or other FIFA officials to talk about what they believe the rules were in their country," which the Court described as "too far afield because there is no proof that the defendant had that view." (T2:2622).

**2.      Commercial "Bribery" Is Not a Criminal Offense in Paraguay or Argentina.**

     **a.      Paraguay.**

"Paraguay does not currently criminalize the bribery of foreign Public officials or officials of international organizations or bribery in the private sector." United Nations, Conference of the States Parties to the United Nations Convention Against Corruption (2014) (attached hereto as <u>Exhibit A</u>) at 2. Although Paraguay adopted the United Nations Convention Against Corruption in 2004, the national legislature has never adopted a statute criminalizing "bribery in the private sector." Ricardo Preda's Response to Nicolas Leoz's Extradition Request at Part III (attached hereto as <u>Exhibit B</u>; the complete Spanish response follows the translated English excerpt). This was affirmed in the course of the Leoz extradition proceedings, in which the Deputy Prosecutor of the Special Unit for Economic and Anticorruption Offenses stated that "in Paraguay we do not have the figure of private bribery . . . as an offense, consequently this figure private bribery to us is not criminalized." *Id*.

The Honorable Pamela K. Chen
December 5, 2017
Page 5

Further support is found in two expert submissions in opposition to the government's extradition request for Nicolas Leoz. Former United States Attorney General Richard ("Dick") Thornburgh's submission states that the charges, as brought in the original indictment in May 2015, "are based on commercial bribery." Thornburgh Statement (attached hereto as Exhibit C) at 8-14. Professor Susan R. Klein, the Regents Chair in Law at the University of Texas School of Law, came to the same conclusion. Klein Statement (attached hereto as Exhibit D). The Paraguayan court before which the Leoz extradition request was heard explicitly ruled that Mr. Leoz could not be extradited to the United States based, in part, upon the court's determination that the charges against Mr. Leoz alleged commercial bribery, which is *not* a crime under Paraguayan law. Final Judgment No. 20, Case No. 2015/154, Paraguayan Criminal Court of Guarantee Specialized in Economic Crimes (Nov. 16, 2017) (attached hereto as Exhibit E; the original Spanish judgment follows the complete English translation).[3]

    **b.**    **Argentina.**

The government sought the extradition from Argentina of Hugo and Mariano Jinkis, who are named as co-conspirators in all iterations of the indictment. On October 18, 2016, the Argentine court before which the extradition request was heard refused to extradite the Jinkises to the United States, ruling that the charges, properly construed, all arise from alleged acts of "commercial bribery," which is *not* a criminal act in Argentina. Court House No. 108, Case No. 5.475/15, Record No. 73, Buenos Aires (Oct. 18, 2016) (attached hereto as Exhibit G; the original Spanish judgment follows the complete English translation) at 20. Indeed, the Argentine court found that "there is nothing in Argentina's criminal legislation that is even similar to the so-called 'electronic / wire fraud,' or 'defrauding an intangible right of honest services,' or that penalizes 'commercial bribery' between persons or companies or entities of a private nature." *Id*.

This Court is bound by the rules of comity to respect the decrees of foreign courts. *E.g., Diorinou v. Mezitis*, 237 F.3d 133, 142 (2d Cir. 2001) ("American courts will normally accord considerable deference to foreign adjudications as a matter of comity"). It is a "well-settled rule that a final judgment obtained through sound procedures in a foreign country is generally conclusive as to its merits *unless* (1) the foreign court lacked jurisdiction over the subject matter or the person of the defendant; (2) the judgment was fraudulently obtained; or (3) enforcement of the judgment would offend . . . public policy." *Ackerman v. Levine*, 788 F.2d 830, 837 (2d Cir. 1986) (original emphasis). The government has not even attempted to make such a showing here, such that the Court should defer to the Argentinian court's construction of Argentinian law.

\* \* \* \*

---

[3] The Paraguayan court ordered Mr. Leoz to be extradited, but specifically exempted commercial bribery as a basis for the extradition. Exhibit E; *see also* Paraguayan News Articles from January 8, 2016 and November 18, 2017 (attached hereto as composite Exhibit F; original Spanish articles follow the English translations).

The Honorable Pamela K. Chen
December 5, 2017
Page 6

Thus, it is not merely a matter of whether Mr. Napout—should he choose to waive his Fifth Amendment privilege and testify—should be allowed to state his *belief* that he was not acting in violation of Paraguayan or Argentinian law. It is a matter of objectively verifiable legal *fact* that commercial "bribery" is not a crime under Paraguayan or Argentinian law, and that fact is predicate for testimony on intent, which testimony is highly relevant to Mr. Napout's defense at trial.

### 3. The Court Should Make the Foreign Law Determination.

"The court may take judicial notice of foreign law and legal terms under Rule 26.1 of the Federal Rules of Criminal Procedure, considering any relevant source whether or not submitted by a party." *United States v. Hing Shair Chan*, 680 F. Supp. 521, 524 (E.D.N.Y. 1988). That rule provides that "[a] party intending to raise an issue of foreign law must provide the court and all parties with reasonable written notice," and that, in deciding "[i]ssues of foreign law as questions of law, . . . a court may consider any relevant material or source—including testimony—without regard to the Federal Rules of Evidence." Fed. R. Crim. P. 26.1. "The task of construing foreign law is both rare and challenging, as it requires the Court to step outside the legal framework to which it is accustomed." *United States v. Simpson*, 929 F. Supp. 2d 177, 188 (E.D.N.Y. 2013). In doing so, the Court must undertake the task "with the greatest respect" for a foreign sovereign's laws. *Id*.

At the November 8, 2017 hearing, the Court noted its view that defendants should have given notice at an earlier stage of their intent to prove that various countries in South American do not criminalize "commercial bribery"—but that this "might be surmountable." (T1:91). That is correct: neither Rule 26.1 nor its civil counterpart, Federal Rule of Civil Procedure 44.1, "specifies a definite time limit for giving written notice of an issue of foreign law." 12A Fed. Proc. 33:614 (2017 ed.). "[N]otice may come at any time sufficient to give the court and the [parties] adequate notice of the need to research the foreign rules"—including at trial. *Id*.; *see also Hing Shair Chan*, 680 F. Supp. at 525 (determining foreign law "in the hurly-burly of trial"). Here, the government can hardly assert lack of notice—because it was the *government* that first raised the issue in its *in limine* motion.

The Court's ruling on the *in limine* motion allowed the government to present its major witnesses against Mr. Napout without any concern that the defense would elicit testimony that the alleged commercial bribery to which the witnesses testified—even if true—did not constitute a crime in the countries in which the payments to CONMEBOL officials, including Mr. Napout, allegedly were made. The jury has heard the word "bribe" hundreds, if not thousands, of times. The jurors must know, definitively and without ambiguity, that the alleged "bribes" of Mr. Napout were not, in and of themselves, illegal in the countries in which the payments allegedly were made.

To be sure, the government is entitled to assert that the payments, even if not illegal in and of themselves, violated FIFA statutes and codes, and thereby constituted honest services fraud. But the government should not be entitled to rely on the aura of illegality that it has been able to create by taking full advantage of the Court's earlier ruling. The United States Supreme

The Honorable Pamela K. Chen
December 5, 2017
Page 7

Court has taken pains to limit honest services fraud under 28 U.S.C. § 1346 to "*only* the bribe-and-kickback core" of cases decided before *McNally v. United States*, 483 U.S. 350 (1987), so as "[t]o preserve the statute without transgressing constitutional limitations." *Skilling v. United States*, 561 U.S. 358, 408-09 (2010) (original emphasis); *accord McDonnell v. United States*, 136 S. Ct. 2355, 2375 (2016). If the purported "bribe-and-kickback" scheme charged here involved completely *lawful* "bribes" or "kickbacks," that is something the jury absolutely should consider in determining whether Mr. Napout participated in a RICO conspiracy.

The lawfulness of "commercial bribery" in Argentina and Paraguay is critical to Mr. Napout's defense, and its introduction is accordingly safeguarded by the Sixth Amendment. A criminal defendant is constitutionally entitled to "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citation omitted); *accord Nevada v. Jackson*, 133 S. Ct. 1990, 1992 (2013); *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006). "[T]he Constitution guarantees criminal defendants the right to present a defense," *United States v. Blum*, 62 F.3d 63, 67 (2d Cir. 1995) (citations omitted), and "[f]ew rights are more fundamental." *Taylor v. Illinois*, 484 U.S. 400, 408 (1988). An "arbitrary or irrational" exclusion of defense evidence violates the Sixth Amendment. *United States v. Laflam*, 369 F.3d 153, 155 (2d Cir. 2004) (citations and internal quotation marks omitted).

Mr. Napout accordingly requests the Court to invoke Rule 26.1, determine that "commercial bribery" is lawful under Argentinian and Paraguayan law, and instruct the jury accordingly in its final charge, in conjunction with the government's requested good-faith charge. *See United States v. Xu*, No. 202-CR-00674PMPLRL, 2008 WL 1315632, at *4-5 (D. Nev. Apr. 10, 2008) (district court determined that bank fraud is a felony under Chinese law in RICO, and so instructed jury), *aff'd sub nom. United States v. Chao Fan Xu*, 706 F.3d 965 (9th Cir. 2013), *as amended on denial of reh'g* (Mar. 14, 2013). Only such a determination and instruction can ensure that the jury does not mistakenly rely on entirely lawful acts to convict Mr. Napout of the charges against him.

Respectfully submitted,

/s/ Elliot H. Scherker
Elliot H. Scherker

cc: Counsel of Record via ECF