

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

PT:SPN/MKM/KDE:KTF
F. #2015R00707

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

December 9, 2017

<u>By ECF and Hand</u>

The Honorable Pamela K. Chen
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Juan Ángel Napout, et al.
                  Criminal Docket No. 15-252 (S-2) (PKC)

Dear Judge Chen:

        The government respectfully moves for an order precluding defense counsel from making certain improper arguments during upcoming cross-examinations and summations. Specifically, the government moves to preclude arguments relating to (1) the government's motive and timing in indicting the defendants, and (2) any suggestion that taxpayer money has been wasted in the initiation or conduct of the investigation or prosecution of the defendants and their co-conspirators. As set forth in more detail below, counsel for Napout has already raised these improper arguments before the jury, and defense counsel for Burga incorrectly argued in his opening statement that the government had claimed that Burga "is guilty because he's being investigated by some other country" and called this "about the most outrageous claim I have ever heard a Government lawyer make." Trial Transcript ("Tr.") 72:3-6. In addition to being patently false, such arguments are irrelevant and designed to encourage jury nullification rather than a verdict based on the evidence. Accordingly, the government respectfully requests that the Court issue an order precluding defense counsel from making such arguments in the remaining cross-examinations and closing arguments.

The Honorable Pamela K. Chen
December 9, 2017
Page 2

I.      <u>Background</u>

        At various points during this trial, counsel for defendants Napout and Burga have made arguments to the jury impugning the government's motives or investigative techniques, and even focusing attention on the individual prosecutors in the case.

        Napout's counsel has already raised to the jury a number of themes related to the government's conduct, including questioning the government's motives and timing in charging Napout, and implying that the government has wasted taxpayer money throughout this investigation and prosecution. During opening statements, for example, Napout's counsel stated the following:

> It's about the government making up its mind that Juan Napout was dirty because he was the president of CONMEBOL and then working their way backwards to find the evidence that would justify their wrong conclusion. For many years the Government has been searching the globe for information. Rather than following the evidence as we expect our government to do.  The Government has spent tens of millions of dollars, maybe even hundreds of millions of dollars searching the world, investigating foreign soccer.  They've sent prosecutors, FBI agents, IRS agents, investigators to interview witnesses in all different parts of the world.

Tr. at 49:13-50:03.  Counsel for Napout also stated during her opening statement that:

> You're going to probably hear from [a cooperating witness], who's a Chilean who admitted, yeah, I got paid by Burzaco. And you're going to hear the Government paid this Chilean about 200 to $250,000 to live in this country for the last two years, despite the fact that they also gave him work visas, not only for him, but for him and his family.  They've been living here for two years **on our dime, because it's our money. We're the taxpayers.**[1]

---

[1]     This statement is particularly objectionable since the government has not called this person as a witness in the case and, as counsel well knows, the government did not pay him "about 200 to $250,000 to live in this country." Rather, the Federal Bureau of Investigation expended money to ensure this witness's availability as a witness, including in

The Honorable Pamela K. Chen
December 9, 2017
Page 3

Tr. at 56:19-57:01 (emphasis added).  Napout's counsel returned to the improper theme of supposed government wastefulness during her cross-examination of Luis Bedoya, the former President of the Colombian Soccer Federation:

> Q   Now, how long was the meeting? . . . The meeting with the prosecutors, do you recall, your first meeting?
>
> A   I'm trying to remember, but it must have been around six or seven hours.
>
> Q   And was that at the building next door?
>
> A   No, in Rome.
>
> Q   In Rome, Italy?
>
> A   Correct.
>
> Q   Oh, you met with the prosecutors in Rome?
>
> A   Correct.
>
> Q   That first meeting?
>
> A   Correct.
>
> Q   Who was at that first meeting in Rome?
>
> A   I was there with my attorney.
>
> Q   Who else?
>
> A   People from the Prosecutor's office and agents.
>
> Q   Wait, let me get this straight.  So, on July 27th, 2015 you met with Ms. Mace; is that right?
>
> A   Correct.

---

connection with his and his family's security in light of serious safety concerns, some of which are detailed in the 18 U.S.C. § 3500 material disclosed to the defendants.

The Honorable Pamela K. Chen
December 9, 2017
Page 4

    Q    With Sam Nitze?

    A    Correct.

    Q    With I believe IRS Special Agent Joseph Passick [sic]?

    A    Yes.

    Q    And possibly FBI Agent Donald Ansbacher [sic]?

    A    Correct.

    . . .

    Q    **So, all these four Government employees flew to Rome, Italy for a meeting with you; right?**

    A    Correct.

    . . .

    Q    And who picked Rome, Italy?

    A    That's the information I received from the attorney.

    . . .

    Q    **So, it's where the prosecutors decided to go.**

    A    I don't know, but it might have been my attorney, too, but yes, we were all there.

    Q    You certainly didn't pick Rome.

    A    No.

    Q    And there was no reason why you couldn't come to the United States in a Brooklyn court in a Brooklyn office and have this meeting, right?

    . . .

The Honorable Pamela K. Chen
December 9, 2017
Page 5

> Q      Was there anything preventing you from going from Russia to Brooklyn?
>
> A      No.
>
> Q      So, you could have had the meeting next door, at the U.S. Attorney's Office, right?
>
> A      Correct.
>
> Q      But for some reason that you don't know, **these prosecutors and agents flew all the way to Rome to have this meeting.**
>
> A      Correct.

Tr. at 1857:10-1860:21 (emphases added).  There was simply no proper purpose for counsel to elicit questions regarding the government's decision to hold the meeting in Rome, again implying that government agents and prosecutors improperly chose to do so, when, in fact, the decision was dictated by concerns regarding security and integrity of the ongoing investigation.

Counsel for Napout returned to this clearly improper argument in her cross-examination of a custodian of records from Hyatt Hotels:

> Q      Did you fly in from Omaha, Nebraska today?
>
> A      That is correct – well, on Tuesday.
>
> Q      You've been staying here in Brooklyn since then; is that right?
>
> A      That is correct.
>
> . . .
>
> Q      So all this document from the Hyatt that you brought over from Omaha, Nebraska tells you is that someone reserved a hotel room under the name Juan Angel Napout?
>
> A      That's correct.

The Honorable Pamela K. Chen
December 9, 2017
Page 6

Tr. at 2403:4-8; 2412:2-4.

      When the Court later addressed the government's ongoing objections to the impropriety of these defense themes, defendant Burga's counsel stated that it was his intention to make similar arguments during summation, including with respect to government expenditures.  Tr. at 2054:7-12 ("I think it is important for us to be able to show the flaws in the investigation and to show what the Government did not do or did not develop for whatever reason.  I think it is relevant to show that they made all these expenditures of certain things yet they didn't do this.").  In response, the Court appropriately recognized that "[t]his is not a trial about the Government's investigation," and that "to have [the jury] speculate about what's not in front of them or what the Government could or should have done differently in the investigation is entirely improper."  Tr. at 2054:23-2055:2.[2]

II.    Argument

    A.    Improper Argument About Government Motive

      Napout's theory that the case against him resulted from improper government motives, and that the government worked backwards in order to indict Napout, should be precluded in cross-examinations and summation, as should any similar attempts by the other defendants.  See, e.g., Tr. at 49:15-18 ("It's about the government making up its mind that Juan Napout was dirty" and then "working their way backwards to find the evidence").

      Courts have held that arguments regarding the government's motive for bringing charges, and the timing of those charges, are unduly prejudicial and improperly invite jury nullification.  See, e.g., United States v. Rosado, 728 F.2d 89, 93 (2d Cir. 1984) (arguments about selective prosecution "invited jury nullification by questioning the Government's motives in subpoenaing appellants and prosecuting them for contempt"); United States v. Stewart, Cr. No. 03-717 (MGC), 2004 WL 113506, at *1 (S.D.N.Y. Jan. 26,

---

    [2] The government does not object to questions or arguments about the fact that certain evidence known to exist, for instance, the records of a particular bank account, was not introduced into evidence.  See United States v. Preldakaj, 456 F. App'x 56, 60 (2d Cir. 2012) (summary order) (recognizing defense counsel may make arguments to the jury regarding the absence of evidence); United States v. Hoffman, 964 F.2d 21, 26 (D.C. Cir. 1992) ("It is permissible for a defense attorney to point out to the jury that no fingerprint evidence has been introduced and to argue that the absence of such evidence weakens the Government's case . . . .").  The government does object to arguments about the government's "expenditures," which do not reflect on the credibility of any witness or the reliability of any evidence.

2004) (granting motion to preclude the defendant from "presenting arguments or evidence that would invite the jury to question the Government's motives in investigating and indicting" the defendant); United States v. Sanchez, No. 92 CR 153, 1993 WL 462846, at *4 (N.D. Ill. Nov. 8, 1993), aff'd sub nom. United States v. Neville, 82 F.3d 750 (7th Cir. 1996) (holding defense counsel's "arguments and statements regarding the length of the government's investigation" and "the government's delay in bringing its indictment" were "improper"); see also United States v. Saldarriaga, 204 F.3d 50, 52 (2d Cir. 2000) (affirming jury charge stating that "[t]he government's function is to give enough evidence to satisfy you beyond a reasonable doubt that the charges are true, and the fact that there are a thousand other things they could have done is wholly irrelevant" (internal quotations and alterations omitted)); Preldakaj, 456 F. App'x at 60 (affirming instruction that "[y]ou have heard reference, in the arguments of defense counsel in this case, to the fact that certain investigative techniques were not used by law enforcement authorities[, but t]he government is not on trial, and law enforcement techniques are not your concern").

As the court in Stewart recognized when it precluded the defense in that case from "presenting arguments or evidence that would invite the jury to question the Government's motives in investigating and indicting" Martha Stewart, this defense theory improperly focuses on the motive and timing of the government's investigation rather than whether the evidence proves the defendants' guilt.  2004 WL 113506, at *1; see also United States v. Rosado, 728 F.2d at 93 (2d Cir. 1984) (recognizing the impropriety of arguments questioning the government's motives in subpoenaing and prosecuting appellants and observing that "it would have been preferable to leave any issues of the lawfulness of the grand jury inquiry for determination by the Court").  Since "trial courts have a duty to forestall or prevent jury nullification," and Napout's counsel has already demonstrated the intention to make (and has already made) such arguments to the jury, the government respectfully requests that the Court preclude defense counsel from making any such arguments going forward.  United States v. Thomas, 116 F.3d 606, 615-16 (2d Cir. 1997); see also id. at 614 ("We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent." (internal quotation marks and citation omitted)).

A district court has "broad discretion" in controlling arguments to the jury. Herring v. New York, 422 U.S. 853, 862, (1975).  "[A]mong its duties in presiding over the parties' summations, a district court 'has a duty to control final argument and to prevent any improper arguments.'"  United States v. Zodhiates, 235 F. Supp. 3d 439, 461 (W.D.N.Y. 2017) (citing United States v. Spillone, 879 F.2d 514, 518 (9th Cir. 1989)); see also United States v. Young, 470 U.S. 1, 13 (1985) (suggesting that the proper course when defense counsel makes improper argument is to "interrupt the argument and admonish him").  Accordingly, the Court has the power and the duty to preclude improper arguments during cross-examinations and summations and should do so here.

The Honorable Pamela K. Chen
December 9, 2017
Page 8

  B.  <u>Improper Argument About Government Expenditures</u>

  Defense counsel also should be precluded from suggesting in cross-examinations or summations that this investigation and prosecution are a waste of taxpayer money. As the Court has already recognized, this argument is inflammatory and has no relevance to the issues in the case. <u>See</u> Tr. at 2051:22-24 ("That is not an appropriate argument, that somehow these jurors are paying for the prosecution is entirely inappropriate."). In addition, the defendants' claims that an investigation is a waste of taxpayer money may foster confusion as to the jury's role, since it suggests that it is within the jury's province to weigh the economic benefit of the prosecution as opposed to deciding the defendant's guilt or innocence. Indeed, counsel for Napout's suggestion that agents' and prosecutors' foreign travel was a boondoggle, rather than for legitimate law enforcement purposes, including serious security concerns for certain witnesses, appear designed to inflame the jury, and has no relevance to the defendants' guilt or innocence. <u>See</u> Tr. at 1859:03-1860:21 ("So, all these four Government employees flew to Rome, Italy for a meeting with you; right? . . . So, it's where the prosecutors decided to go. . . . But for some reason that you don't know, these prosecutors and agents flew all the way to Rome to have this meeting."); <u>see also</u> Tr. at 2050:18-19 ("Maybe Hawilla will testify that his first three meetings were in Paris. I don't know.").

  Courts have long recognized that such arguments should not be presented to or considered by the jury. <u>See</u>, <u>e.g.</u>, <u>Blair v. Armontrout</u>, 916 F.2d 1310, 1323 (8th Cir. 1990) (cost of defendant's incarceration to taxpayers "is not a proper factor to be considered by the jury, for it does not reflect the properly considered circumstances of the crime or character of the individual"); <u>Windisch v. United States</u>, 295 F.2d 531, 533–34 (5th Cir. 1961) (reference to "cost of national defense" and "cost of prosecuting tax evasion cases" was improper in criminal jury trial summation); <u>United States v. Rosga</u>, No. 3:10CR170-HEH, 2010 WL 4963033, at *2 (E.D. Va. Nov. 30, 2010) (rejecting request for production of "evidence of the cost of the [government's] investigation" because it "would create a significant diversion of the jury's attention," and holding that the "diversionary effect of such extraneous evidence more than outweighs its probative value"); <u>see also</u> <u>United States v. Cheung Kin Ping</u>, 555 F.2d 1069, 1073–74 (2d Cir. 1977) (defense counsel's urging the jury to acquit defendant "on the basis of extraneous public policy considerations" was improper, and trial court appropriately "spear[ed] a red herring" by instructing the jury that "law enforcement policy was not its concern").

  In addition, if such arguments were allowed, the government should be permitted to introduce evidence explaining the reasons for the expenditures of money in this case, including the response by the Federal Bureau of Investigation to various threats and other safety concerns. Although this would be time consuming and would distract from the issues in the case, such evidence would be necessary to correct distortions of the truth. <u>See</u>

The Honorable Pamela K. Chen
December 9, 2017
Page 9

United States v. Naiman, 211 F.3d 40, 51 (2d Cir. 2000) ("redirect examination may be used to rebut false impressions arising from cross-examination"); United States v. Diaz, 176 F.3d 52, 80 (2d Cir. 1999) (upholding the admission of redirect testimony from a government witness that she had received money from the FBI to flee the state because she feared that a defendant would learn of her cooperation to "rebut the impressions created by" the defendants that government was subsidizing her alleged "vacation" out of state).

III.    Conclusion

For these reasons, the government respectfully moves to preclude cross-examination and summation arguments relating to (1) the government's motive and timing in indicting the defendants; and (2) any suggestion that taxpayer money has been wasted in the initiation or conduct of its investigation of the defendants and their co-conspirators.

Respectfully submitted,

BRIDGET M. ROHDE
Acting United States Attorney

By:      /s/
Samuel P. Nitze
M. Kristin Mace
Keith D. Edelman
Assistant U.S. Attorneys
718-254-6294

cc:    Defense Counsel (by ECF)
       Clerk of the Court (PKC) (by ECF)