

Elliot H. Scherker
Co-Chair, National Appellate Practice Group
Tel 305.579.0579
Fax 305.579.0717
scherkere@gtlaw.com

December 11, 2017

**VIA ECF**

The Honorable Pamela K. Chen
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re:    <u>United States v. Juan Ángel Napout, Case No. 15-cr-00252-PKC</u>

Dear Judge Chen:

    On behalf of the defendant, Juan Ángel Napout, we submit this letter as Mr. Napout's response to the government's December 9, 2017 letter brief on closing argument (DE:846).

    The United States Supreme Court has recognized the paramount importance of closing argument, particularly for a defendant in a criminal case:

> It can hardly be questioned that closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. For it is only after all the evidence is in that counsel for the parties are in a position to present their respective versions of the case as a whole. Only then can they argue the inferences to be drawn from all the testimony, and point out the weaknesses of their adversaries' positions. And for the defense, closing argument is the last clear chance to persuade the trier of fact that there may be reasonable doubt of the defendant's guilt.

*Herring v. New York*, 422 U.S. 853, 862 (1975).

    While a district court has "wide latitude in limiting the scope of closing arguments," *id*., both "[t]he prosecution and the defense are generally entitled to wide latitude during closing arguments, so long as they do not misstate the evidence." *United States v. Daugerdas*, 837 F.3d 212, 227 (2d Cir. 2016), *cert. denied*, 138 S. Ct. 62 (2017). And defense counsel, in particular, "is under no obligation to offer evidence and may certainly point to evidentiary omissions in urging the jury to conclude that the government has not carried its burden of proof." *United States v. McCoy*, 692 F. App'x 17, 21 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 278 (2017). Indeed, the government recognizes as much. (DE:846:6) (citing *United States v. Preldakaj*, 456

The Honorable Pamela K. Chen
December 11, 2017
Page 2

F. App'x 56, 60 n.3 (2d Cir. 2012).  Among other appropriate things, that is what Mr. Napout's counsel intends to do in closing argument, in the fulfillment of their duty to provide Mr. Napout a constitutionally adequate defense.  *See, e.g., Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) ("[t]he right to effective assistance extends to closing arguments").

The government's suggestion that Mr. Napout would seek to impugn the quality or thoroughness of the government's investigation or "investigative techniques" (DE:846:7) is misguided.  Mr. Napout's defense has been, in part, that the government has used every tool in its toolbox to find evidence against Mr. Napout—but, at the end of the day, has found no direct evidence that Mr. Napout received any payments.

The government's purported concerns about "jury nullification" based on the government's "motives" in prosecuting Mr. Napout (DE:846:6-7) are figments.  The evidence adduced before the jury shows, to a certainty, that the government indicted Mr. Napout long before it developed a significant portion of the evidence it presented at trial, and that the government's investigation was continuing as this case was in trial.  It is an entirely legitimate inference from that evidence that, as Mr. Napout's counsel stated in opening, this case is "about the government making up its mind that Juan Napout was dirty" and then "working their way backwards to find the evidence." (Trial Transcript "T" at 49).  That is not an argument that impugns the grand jury or otherwise goes beyond the proper scope of closing remarks.  To the contrary, "charging decisions may be proper subjects for cross-examination and argument," *United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012), and the government's decisions in this case—including extending highly favorable treatment to cooperating witnesses—were made in an effort to prop up a fundamentally weak case.  That is not an attack on the government's "motives" in prosecuting Mr. Napout, it is an attack on the viability of the government's case.  Any lawyer in a similar situation would render less-than constitutionally required effective assistance if he or she failed to mount such an attack on these facts.

Indeed, the government, albeit inadvertently, recognizes as much in its citation to *United States v. Diaz*, 176 F.3d 52 (2d Cir. 1999), for the proposition that the government might be entitled to rebut evidence elicited from its cooperating witnesses on cross-examination by showing that its expenditures were motivated by such things as "threats and other safety concerns." (DE:846:8).  For one thing, as *Diaz* itself reflects, the time for attempting to elicit such testimony was on redirect of witnesses who, in this case, have long since left the stand, if not the country.  176 F.3d at 80 ("redirect may be used to rebut false impressions arising from cross-examination and the trial judge is in the best position to determine whether such a false impression was created" (citation and internal quotation marks omitted)).  For another, the government directly elicited from Alejandro Burzaco, one of the primary beneficiaries of the government's largesse, that *none* of the defendants on trial "had anything at all to do" with threats against him.  (T:592-93).

But, much more to the point, the analysis in *Diaz* starts with the fact that the defendant was allowed to ask a cooperating witness that the FBI had "paid her to testify, travel or take a vacation," which testimony the government was allowed to rebut by eliciting that the witness had left the area for fear one of the defendants would learn she was cooperating.  176 F.3d at 80.  If

The Honorable Pamela K. Chen
December 11, 2017
Page 3

*Diaz* has any pertinence here, it is to bolster the propriety of the cross-examination of cooperating witnesses and any closing argument based on their testimony.

      Mr. Napout urges the Court to deny the relief requested in the government's letter brief.

                                          Respectfully submitted,

                                          _/s/ Elliot H. Scherker_
                                          Elliot H. Scherker

cc: Counsel of Record via ECF

GREENBERG TRAURIG, P.A.   ■   Attorneys at Law   ■   www.gtlaw.com