## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CARLOS MARTINEZ,<br><br>　　　　　　Defendant. | CASE NO. 15-cr-252-33 (PKC) |

**DEFENDANT CARLOS MARTINEZ'S MOTION *IN LIMINE* TO PRECLUDE: (1) LAW ENFORCEMENT AGENTS FROM TESTIFYING AS BOTH FACT WITNESSES AND EXPERTS, AND (2) IMPROPER TESTIMONY FROM GOVERNMENT AGENTS THAT TESTIFY AS EXPERTS; INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES**

**McCOOL LAW PLLC**
Steven J. McCool
Julia M. Coleman

**SPERTUS, LANDES & UMHOFER, LLP**
Samuel A. Josephs
Payton J. Lyon

Michael T. Cornacchia

Ramon A. Abadin

*Counsel for Carlos Martinez*

# NOTICE OF MOTION

**PLEASE TAKE NOTICE** that defendant Carlos Martinez, by and through his counsel of record, respectfully moves this Court at the United States Courthouse for the Eastern District of New York, located at 225 Cadman Plaza East, Brooklyn, New York 11201, at the Courtroom of the Honorable Pamela K. Chen, on such date and time as the Court sets, for an Order: (1) precluding government agents from testifying as both fact and expert witnesses; and (2) prohibiting any agent who testifies from offering conclusions about the facts of this case or acting as a "summary witness" for the government by, for example, testifying that:

(a) any entities associated with the Copa Libertadores Scheme #2 (*see* Third Superseding Indictment ¶¶ 19, 37, 46, 72, 133) were bribery or money-laundering intermediaries, or that any payments to or from those entities were bribery transactions;

(b) any of the "Additional Consulting/Services Contracts" identified in the government's letter providing further particulars (ECF No. 1684 at 5-7) facilitated bribe payments; and/or

(c) the entries in the "bribery ledgers" (GX 601, 623 or 624) mirror information in bank documents associated with the entities identified above or are associated with any of the agreements identified in the government's letter providing further particulars (ECF No. 1684).

This motion is supported by the attached memorandum; the files and records in this case; and any evidence or argument presented at a hearing on this matter.

Dated: January 21, 2022                           Respectfully submitted,

                                                   /s/ Steven J. McCool
                                                  STEVEN J. McCOOL
                                                  D.C. Bar No. 429369
                                                  JULIA M. COLEMAN
                                                  D.C. Bar No. 1018085

McCOOL LAW PLLC
1776 K Street, N.W., Suite 200
Washington, D.C. 20006
Telephone: (202) 450-3370
Fax: (202) 450-3346
smccool@mccoollawpllc.com
jcoleman@mccoollawpllc.com


    /s/ Samuel A. Josephs
SAMUEL A. JOSEPHS
sjosephs@spertuslaw.com
PAYTON J. LYON
plyon@spertuslaw.com
SPERTUS, LANDES & UMHOFER, LLP
1990 S. Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone: (310) 826-4700


    /s/ Michael T. Cornacchia
MICHAEL T. CORNACCHIA


    /s/ Ramon A. Abadin
RAMON A. ABADIN

*Counsel for Carlos Martinez*

2

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Defendant Carlos Martinez respectfully moves for an order: (1) precluding government agents from testifying as both fact and expert witnesses,[1] and (2) prohibiting any agent who testifies from offering conclusions about the facts of this case or acting as a "summary witness" for the government.

The issues raised in this motion were not raised in the 2017 trial and thus Mr. Martinez is not challenging, through this motion, any prior ruling by this Court. Rather, the purpose of this motion is to focus on unobjected to testimony at the 2017 trial that the Court should preclude at Mr. Martinez's trial. Indeed, the Circuit has recognized that "when a fact witness or a case agent also functions as an expert for the government, the government confers upon him [an] aura of special reliability and trustworthiness" that creates "a risk of prejudice." *United States v. Dukagjini*, 326 F.3d 45, 53 (2d Cir. 2003). As explained below, that risk is great enough to warrant the total ban of government agents testifying as dual fact and expert witnesses, as such testimony risks: unfairly bolstering testimony of other witnesses who provided evidence on which the expert may rely (*e.g.*, bribery ledgers); approving the accuracy of documentary evidence; and conferring unwarranted credibility on the agent.

Alternatively, should the Court permit a law enforcement agent to function as both a fact witness and an expert witness, it should cabin the agents to appropriate expert testimony. Agents who testify as experts must not be permitted to offer their interpretations of the evidence at hand

---

[1] The government has not provided notice that it intends to introduce any expert testimony. *See* Fed. R. Crim. P. 16(1)(1)(G). Should the government do so, Mr. Martinez reserves the right to address any issues in connection with such notice.

1

nor are they permitted to act as summary witnesses that connect and combine the evidence the government has introduced—this Circuit has been abundantly clear that such testimony is not allowed. *Dukagjini*, 326 F.3d at 54 ("As the testimony of the case agent moves from interpreting individual code words to providing an overall conclusion of criminal conduct, the process tends to more closely resemble the grand jury practice, improper at trial, of a single agent simply summarizing an investigation by others that is not part of the record.").

For the reasons discussed below, Mr. Martinez respectfully requests that the Court grant this motion to preclude government agents from testifying as both fact and expert witnesses and from testifying outside the permissible bounds of any potential expert testimony they may be permitted to provide.

## II.     RELEVANT FACTUAL BACKGROUND

IRS CID Special Agent Steven Berryman provided expert testimony at trial in 2017. At the outset of his testimony, Agent Berryman stated that he had thirty years of experience as an IRS agent. Agent Berryman relied on this specialized experience to testify about the use of travel agencies in money-laundering schemes, the functions of "cambistas" (2017 Trial Tr. at 3508:1-3509:12), and the purposes behind requiring multiple "groups" of people with signatory authority over bank accounts (*id.* at 3377:13-23).

Agent Berryman also went beyond simply providing background information, and opined that certain transactions in the case were bribe payments between money laundering intermediaries:

> Q:     With respect to the sending entity -- that is, T&T -- what, if anything, would a pattern like that -- what relevance would that have to you as you assess next steps?

2

> A: Sure. This is indicative of a bribe payoff, sending a million dollars to a money laundering intermediary, who is Somerton Limited, and then Somerton Limited sending out the bribe payments to the various CONMEBOL officials.

(*Id.* at 3370:16-22.)

Furthermore, Agent Berryman also testified about the steps he took to obtain information and what he found out as the result of his investigation:

> Q: Were there any other companies associated with Somerton that you focused?
>
> A: I don't remember. Kind of how it works when you do what we do, IRS CID, when we trace money, you know, like this particular transaction that I just mentioned went from Somerton Limited to Nicolas Leoz, then I would subpoena the thread of Somerton Limited to see what that was and what kind of other transactions they were doing. When I did that, I also found then Somerton Limited had money going back and forth to a company called Valente Corp.

(*Id.* at 3359:5-14.)

Agent Berryman read documents that he received from banks to the jury and drew connections between the information in "ledgers" maintained by bribery conspirators to the financial documents he read:

> A: Under Iluminados it says general ledger, financial year 2014.
>
> Q: All right. And then if we go to the third page of this ledger. Under this category Banco Valente. And towards the middle of that category, there's a payment, a transaction with the number 58 next to it. Do you see that?
>
> A: Yes, I do. On the May 19th, 2014.
>
> Q: And what does the description of that payment?
>
> A: It says payment to Hugo Jinkis, balance group of six.
>
> Q: And what's the amount?
>
> A: $2 million.
>
> Q: All right. So you now return to the Bayan statement 501C, page 20.
> . . . .

3

> Q:   Towards the middle there's an entry with a date 20 May 2014. And can you describe for the jury the details of that transaction that's reflected in the column to the right of the date.
>
> A:   Sure. This is showing that funds came into this Bayan account from the originator of the Valente Corporation in New York. And over to the right of that is the amount of $2 million.

(*Id.* at 3658:21-3660:9.) He also testified to the following:

> Q:   Right. Back to 601, switching to the Kia tab. Based on your review of the financial records, who is associated with this tab?
>
> A:   The Kia tab is associated with Sergio Jadue.
>
> Q:   On row 12 there is a transaction on January 20, 2014, what's the description of the transfer?
>
> A:   Transfer Bayan.
>
> Q:   And the amount?
>
> A:   $650,000.
>
> Q:   If you go to the Bayan account statements 501C page 19 at the top transaction, what's the date of the transaction?
>
> A:   January 21st, 2014.
>
> Q:   That goes to which entity?
>
> A:   This one is for 650,000, as I said, and the beneficiary is an entity called Lisburn Strategies.

(*Id.* at 3679:25-3680:14.)

The government may seek to introduce similar testimony at Mr. Martinez's trial, given the charges related to T&T Sports Marketing, Ltd., Valente Corp. (an entity related to Somerton), and Bayan Group. (*See* Third Superseding Indictment ("TSI") ¶ 133.)

*   *   *   *

## III. ARGUMENT

### A. The Court Should Not Permit Government Agents to Testify as Both Fact and Expert Witnesses.

While the Circuit has not categorically prohibited law enforcement officers from testifying as both fact witnesses and as experts, it has repeatedly cautioned that allowing agents to testify in dual capacities increases the risk of an unfair trial. *See Dukagjini*, 326 F.3d at 53-54 (finding that "when a fact witness or a case agent also functions as an expert for the government, the government confers upon him [t]he aura of special reliability and trustworthiness surrounding expert testimony," that "creates a risk of prejudice" to the defendant (internal quotation marks omitted) (second alteration in original)); *United States v. Mejia*, 545 F.3d 179, 191-92 (2d Cir. 2008). This risk of prejudice arises because an agent's "expert status [is] likely to give his factual testimony an unmerited credibility before the jury" and "[t]he defense's inability to meaningfully challenge the case agent's expert opinions inadvertently reinforces the agent's credibility on questions of fact." *Mejia*, 545 F.3d at 192 (internal quotation marks omitted); *see also United States v. Alvarez*, 837 F.2d 1024, 1030 (11th Cir. 1988) ("When the expert is a government law enforcement agent testifying on behalf of the prosecution about participation in prior and similar cases, the possibility that the jury will give undue weight to the expert's testimony is greatly increased."). Furthermore, "when the [agent] bases his opinion on in-court testimony of fact witnesses, such testimony may improperly bolster that testimony and may 'suggest[ ] to the jury that a law enforcement specialist . . . believes the government's witness[ ] to be credible and the defendant to be guilty, suggestions we have previously condemned.'" *Dukagjini*, 326 F.3d at 53 (quoting *United States v. Cruz*, 981 F.2d 659, 663 (2d Cir. 1992)).

5

The Court should not permit government agents to testify in both capacities at Mr. Martinez's trial because the same concerns that prompt caution from the Circuit are present in this case. The agent's status as an agent will undoubtedly affect the entirety of his testimony, regardless of whether the agent was relying on experience or expertise. To take one example, if the testifying agent were to read into the record or accept as accurate any of the purported bribery transactions in either of Eladio Rodriguez's "Iluminados" ledgers (GX 623, 624),[2] this might suggest to the jury that the agent had evaluated those transactions and concluded that they are, in fact, accurate and that the individuals who maintained the bribery ledgers had done so truthfully and accurately. The obvious effect of this testimony is that it corroborates the government witness's testimony by "suggest[ing] to the jury" that the agent "believes the government's witness[es] to be credible," which the Circuit has expressly "condemned." *Dukagjini*, 326 F.3d at 53. And because testifying case agents can fluidly transition between their roles as fact and expert witnesses—as Agent Berryman did in the 2017 trial—the jurors will likely be unable to separate the agent's expert testimony from fact testimony, providing a further basis to restrict the use of dual-role agent testimony.

> **B.  To the Extent Any Law Enforcement Agents Testify as Experts, the Court Should Ensure They Do Not Improperly Opine About the Facts of This Case or Act as "Summary Witnesses" for the Government.**

As discussed above, in 2017, Agent Berryman testified that: (1) certain payments from T&T Sports Marketing, Ltd., the Fox affiliate and subsidiary at the center of the government's allegations against Mr. Martinez (*see* TSI ¶ 73), were indicative of bribery payoffs; and (2)

---

[2] The government has indicated that it intends to call Eladio Rodriguez as a witness at Mr. Martinez's trial.

6

payments listed in various bank statements (*e.g.*, GX 501C (Bank Hapoalim Bayan Group Statements)) corresponded with entries in the so-called "bribery ledgers" (*e.g.*, GX 601 (Santiago Peña ledger)). The government may attempt to introduce similar testimony at Mr. Martinez's trial, as it has charged Mr. Martinez with bribing CONMEBOL officials to obtain television rights for T&T, along with eleven substantive wire fraud counts that include a payment from Bayan Group to Lisburn Strategies (*see* TSI ¶ 133). Any such testimony is impermissible and should be excluded.[3]

Federal Rule of Evidence 702 permits testimony by "a witness qualified as an expert by knowledge, skill, experience, training, or education" where the witness's "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." However, experts "deviat[e] from the strictures of Rule 403 and 702" when they "stray from applying reliable methodology and convey to the jury . . . sweeping conclusions about [a defendant's] activities." *Dukagjini*, 326 F.3d at 54 (internal quotation marks omitted). In other words, agents testify appropriately by "interpreting jargon or coded messages," "describing membership rules," "or explaining organizational hierarchy," *Mejia*, 545 F.3d at 195 (citations omitted), but they may not, for instance, "testif[y] about the meaning of conversations in general, beyond the interpretation of code words" *Id.* at 192.

In the same vein, a law enforcement agent testifying as an expert "stray[s] from his proper expert function[s]" when he testifies "as a summary prosecution witness." *Dukagjini*, 326 F.3d at 55. Such testimony is impermissible because "the officer expert transforms into the hub of the

---

[3] To the extent the 3500 material that the government will produce on or before April 11, 2022 contains other statements that should not be admitted at trial, Mr. Martinez reserves the right to move to preclude such evidence.

7

case, displacing the jury by connecting and combining all other testimony and physical evidence into a coherent, discernible, internally consistent picture of the defendant's guilt." *See Mejia*, 545 F.3d at 190–91; *Dukagjini*, 326 F.3d at 54 ("As the testimony of the case agent moves from interpreting individual code words to providing an overall conclusion of criminal conduct, the process tends to more closely resemble the grand jury practice, improper at trial, of a single agent simply summarizing an investigation by others that is not part of the record."). At that point, "experts are no longer aiding the jury in its factfinding; they are instructing the jury on the existence of the facts needed to satisfy the elements of the charged offense." *Mejia*, 545 F.3d at 191 (citations omitted).

### 1. The Court should preclude the government's agents from offering conclusions or opinions about specific instances of conduct.

The Court should prohibit the government from introducing testimony like Agent Berryman's conclusion that a specific payment from T&T Sports Marketing, Ltd., was "indicative of a bribe payoff," because such statements go beyond the boundaries of permissible expert testimony and invade the province of the jury. Government agents in this case may explain the definitions of esoteric banking terminology or educate the jury on how to read a spreadsheet from a bank that details hundreds of transactions—that testimony is the equivalent of "interpreting jargon." However, characterizing specific transactions, *e.g.*, describing payments as bribes or entities as money-laundering intermediaries, are "conclusion[s] about criminal conduct" akin to "testifying about the meaning of conversations in general." Therefore, government agents may

8

not testify that any entities associated with the Copa Libertadores Scheme #2[4] were bribery or money-laundering intermediaries, or that any payments to or from those entities were bribery transactions. Nor can an agent testify that any of the "Additional Consulting/Services Contracts" identified in the government's letter providing further particulars (ECF No. 1684 at 5-7) facilitated bribe payments. The Second Circuit has clearly proscribed those types of statements, so the Court should not permit their introduction here. *See Mejia*, 545 F.3d at 192.

### 2. The Court should prohibit testifying agents from acting as summary witnesses by "connecting" evidentiary materials.

The Court should not permit government agents to act as summary witnesses by connecting and harmonizing various pieces of admitted evidence, like bribery ledgers and bank statements, as Agent Berryman did at trial in 2017. When an agent testifies that payments listed in bribery ledgers correspond with payments in bank records, the agent effectively asserts that it is an empirical fact that the payments in the bank records are the bribery payments listed in ledgers. But it is the jury's job to make that determination, and the agent may not "displac[e] the jury by connecting and combining" evidentiary materials into a "coherent, discernable, internally consistent picture." *See Mejia*, 545 F.3d at 190–91. Nor is the agent relying on any expertise at all when testifying in this manner; the agent is not adding anything for the jury to consider. Rather, the agent is merely presenting previously introduced evidence in a different sequence than the order in which the government initially presented it, meaning such testimony would be needlessly cumulative and inadmissible under Fed. R. Evid. 403. *See Dukagjini*, 326 F.3d at 54 ("[S]uch summarizing also

---

[4] For the Court's reference, those entities are identified in ¶¶ 19, 37, 46, 72, and 133 of the TSI: Bayan S.A., Bayan Group S.A., Cross Trading, S.A., Yorkfields, S.A., Full Play Group, S.A., Productora de Eventos, S.A., Valente Corp., Somerton Ltd., Torneos & Traffic Sports Marketing, B.V., and T&T Sports Marketing, Ltd., Lisburn Strategies, Inc., and Fox Pan American Sports.

9

implicates Rule 403 as a 'needless presentation of cumulative evidence' and a 'waste of time.'" (quoting Fed. R. Evid. 403)). Accordingly, testifying agents may not compare or connect entries in Eladio Rodriguez's or Santiago Pena's bribery ledgers (GX 601, 623 or 624) to bank documents associated with the entities identified in footnote 4 (*e.g.*, GX 501C) or with any of the agreements identified in the government's letter providing further particulars (ECF No. 1684). The government may *argue* that any payments are related, but it cannot use an agent to direct the jury on how to decipher the combination of testimony and exhibits.

## IV.   CONCLUSION

For the foregoing reasons, Mr. Martinez respectfully requests that the Court issue an Order: (1) prohibiting law enforcement agents from testifying as both fact witnesses and expert witnesses; and (2) precluding law enforcement agents from testifying about their opinions in the case and/or as "summary witnesses" for the government.

Dated: January 21, 2022                     Respectfully submitted,


/s/ Steven J. McCool
STEVEN J. McCOOL
D.C. Bar No. 429369
JULIA M. COLEMAN
D.C. Bar No. 1018085
McCOOL LAW PLLC
1776 K Street, N.W., Suite 200
Washington, D.C. 20006
Telephone:  (202) 450-3370
Fax:  (202) 450-3346
smccool@mccoollawpllc.com
jcoleman@mccoollawpllc.com


/s/ Samuel A. Josephs
SAMUEL A. JOSEPHS
sjosephs@spertuslaw.com
PAYTON J. LYON
plyon@spertuslaw.com

10

        SPERTUS, LANDES & UMHOFER, LLP
        1990 S. Bundy Drive, Suite 705
        Los Angeles, CA 90025
        Telephone: (310) 826-4700


        /s/ Michael T. Cornacchia
        MICHAEL T. CORNACCHIA


        /s/ Ramon A. Abadin
        RAMON A. ABADIN

        *Counsel for Carlos Martinez*

11