

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

KTF/RTP/VAZ/EWS
F. #2015R00747

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

February 8, 2023

By E-mail and ECF

The Honorable Pamela K. Chen
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Full Play Group, SA, et al.
     Criminal Docket No. 15-252 (S-3) (PKC)

Dear Judge Chen:

  With the Court's explicit authorization following its granting of an in limine motion by the government, cooperating witness Alejandro Burzaco testified that FIFA First Vice President Julio Grondona provided defendant Hernan Lopez, through Burzaco, with confidential information about the World Cup 2018/2022 English language bid after Lopez told Burzaco that Fox was very interested in the rights. At that point, Grondona had been collecting, for years, bribes for the Copa Libertadores tournament from a Fox-Torneos joint venture, and had been informed by Burzaco that Lopez knew about, and supported, those bribes. After Grondona passed this bid information on to Lopez, Fox won the bid, beating out ESPN, the historical rights-holder. After Fox won, Grondona told Burzaco that he would not do any more free favors for Fox, and in the future Fox would have to pay a 10% fee. Burzaco conveyed this to Lopez.

  Lopez's defense counsel spent much of his cross-examination of Burzaco attempting to discredit Burzaco's testimony on this topic, including by spending a significant amount of time talking about ESPN's bid and suggesting to the jury, through his questions, facts about ESPN's conduct during the bid process. To corroborate Burzaco, and in response to Lopez's lengthy cross-examination regarding what ESPN did or did not do, the government has identified the executive at ESPN who handled this negotiation, and intends to offer powerful corroborative testimony from him that the bid process unfolded in precisely the way that Burzaco testified.[1]

---

[1] The government initially identified Sonia Gomez as a potential ESPN witness. The government later learned that John Skipper personally handled the negotiation on behalf of ESPN with top FIFA officials at Grondona's level. Given the defendant's cross-examination questions, some of which are quoted below, Mr. Skipper is the more appropriate witness and who the government intends to call. However, as is clear from the past two weeks, any witness could

Lopez objects to this highly probative evidence on the grounds that, purportedly, (1) Burzaco's trial testimony conflicted with the government's pretrial proffer, (2) that an ESPN witness's testimony is irrelevant, and (3) that such testimony would violation the Court's January 13, 2022 order granting the government's motion in limine. See Feb. 7, 2023 Mot. to Preclude ("Mot." or "Lopez Motion"). None of these istrue. Once again, as with his previous motions, Lopez has not taken care with the facts, the law or the record. See, e.g., January 29, 2023 Letter, ECF Dkt. No. 1911 (containing numerous misrepresentations about the record, which are set forth in the government's brief at ECF Dkt. No. 1917). And once again, neither the record nor the law support Lopez's request for relief. The motion should be denied.[2]

I.   Factual Background

   A.   The Indictment

Lopez is charged with wire fraud and money laundering conspiracies in connection with paying bribes and kickbacks to soccer executives for the rights to the Copa Libertadores. See Third Superseding Indictment (the "Indictment") at ¶¶ 70-74, 131-135. The Indictment alleges that, in connection with the Copa Libertadores scheme, Lopez (and Carlos Martinez) "relied on loyalty secured through the payment of bribes to certain CONMEBOL officials in connection with the Copa Libertadores to advance the business interests of Fox beyond the Copa Libertadores, including by obtaining confidential information from Co-Conspirator #1 regarding bidding for the rights to broadcast the 2018 and 2022 World Cup tournaments in the United States." Indictment ¶ 74.

   B.   The Government's *In Limine* Motion

On October 22, 2021, the government moved to admit evidence that Grondona provided non-public bid information to Lopez via Burzaco, which Lopez and Fox used to win the 2018 and 2022 English language World Cup broadcasting rights, beating out historical rights owner ESPN. The government's primary theory is that the evidence is direct evidence of the charged conspiracy, but argued in the alternative that such evidence is admissible under Federal Rule of Evidence 404(b). Specifically, the government stated in its motion that:

> [T]he government intends to introduce evidence that Co-Conspirator #1 provided Lopez with confidential information, through Burzaco, regarding the amount Fox would have to bid to

---

succumb to Covid-19 and be unavailable at any time. Thus, the government reserves the right to call either Ms. Gomez or Mr. Skipper.

[2] Defendant Full Play Group has filed a letter joining in Lopez's motion, but it should not affect the Court's analysis of this issue. As the Court has already found, the evidence pertaining to the 2018, 2022, and 2026 World Cup rights does not relate to Full Play, so the notion that the "risk of unfair of prejudice is heightened" as to Full Play is nonsensical. ECF Dkt. No. 1925.

2

> secure the rights to broadcast the 2018 and 2022 World Cups in the United States (see id.), and, in advance of the public announcement, that Fox had won the rights. The government also intends to introduce evidence that in late 2011, (1) Co-Conspirator #1 informed Lopez, again through Burzaco, that, going forward, he expected to collect a bribe of 10% of the contract price for any additional contracts he helped to secure for Fox, and (2) Lopez agreed to this arrangement provided that Fox would not have to pay Co-Conspirator #1 directly. The evidence will show that Lopez later attempted to make use of this arrangement in connection with efforts to secure the rights to broadcast in India the 2018 and 2022 World Cups. Because all of this is direct evidence of the conspiracy charges, the government respectfully moves for its admission as to all defendants.

ECF Dkt. No. 1639 at 3. On December 14, 2021, the Court held oral argument on the motion, in which the government restated its position set forth in its motion in limine. See ECF Dkt. No. 1764 (Dec. 14, 2021 Tr.) at 46-50.

    C.    <u>The Court's Order</u>

On January 13, 2022, the Court granted the government's motion. The Court ruled, consistent with the government's argument, the following:

> Here, the evidence at issue involves the same conspirators—[Grondona[3], Burzaco, and Defendant Lopez—having conversations about the same types of criminal acts—bribery and kickbacks—within the time period of the wire fraud and money laundering conspiracies with which Lopez is charged. Although Defendants attempt to characterize this evidence as a side deal that is inadmissible as "other acts" evidence under Federal Rule of Evidence 404(b), the Court finds that Burzaco's anticipated testimony goes directly to the heart of the existence of the charged wire fraud and money laundering conspiracies and the identities of the conspirators. [Grondona]'s provision of confidential information about the World Cup and his request for a 10% bribe in the future occurred as part of the same conspiratorial scheme that resulted in the Copa Libertadores bribery. Thus, this evidence is highly probative of the charged conduct.

ECF Dkt. No. 1686 at 4.

At no point in its order did the Court preclude the government from offering evidence that corroborated the anticipated testimony. The subject was not addressed, presumably, because the government sought no relief on the obvious proposition that it may seek to corroborate

---

[3] Julio Grondona was referred to in the government's motion and the Court's order as Co-Conspirator #1.

3

its cooperating witness's testimony through other evidence. For example, the government had proffered in its reply brief that it would offer into evidence emails corroborating Burzaco's account. See ECF Dkt. No. 1658 at 2 (describing corroborative emails). The Court's order, appropriately, did not reference those emails. See generally ECF Dkt. No. 1686.

    D.    Burzaco's Direct Testimony

Burzaco's trial testimony was entirely consistent with the government's motion in limine. On direct examination, Burzaco testified that:

- FIFA took bids for the 2018-2022 World Cup broadcasting rights for the United States territory in the Fall of 2011. ESPN historically held those rights. Fox put in a bid. Trial Tr. 779:14-780:8; 780:18-781:3.

- Hernan Lopez had been involved in the bribery scheme for over a year and a half at this point. Trial Tr. 651:3-11. Grondona knew this. Trial Tr. 775:17-776:6.

- Lopez contacted Burzaco and told Burzaco that "Fox was going to try aggressively to pursue the purchase of the English-speaking rights for the U.S. territory, that FIFA was doing this pick sometime at the end of October, and to keep an eye on the subject and let Grondona know that they were very interested and any help would be welcome." Trial Tr. 780:18-781:3.

- Burzaco told Grondona that "Fox wants to buy the English speaking rights and that they asked me for his help." Trial Tr. 784:19-20.

- Grondona called Burzaco from Zurich, Switzerland during the bid process and filled him in on the status of the process, which included complexities regarding the various bidding parties. This included that "in the case of the English speaking rights . . . ESPN and Fox were the biggest contenders." Grondona told Burzaco that "if Fox puts $400 million, they are going to award it to Fox, tell your friends." Trial Tr. 787:14-788:16.

- Burzaco passed this information on to Lopez. Trial Tr. 788:17-18.

- Fox won the bid. Grondona told Burzaco that Fox won the bid before it became public. Burzaco passed this on to Lopez, who passed the information on, before it became public, to his bosses. Trial Tr. 788:21-3; 789:5-790:8.

- Lopez's bosses were delighted and Lopez was excited. Trial Tr. 790:6-18.

- In the aftermath of Fox winning the bid, Grondona said to Burzaco, "[L]ook, Alejandro, I did this favor to you and to Fox, but this is the last time I do this for free. From there on, if they are interested in any product in FIFA, they would have to pay me a 10 percent fee." Trial Tr. 799:15-18

- Burzaco conveyed this information to Lopez a month and a half later, when Lopez was in Buenos Aires, Argentina. Trial Tr. 799:6-23. Lopez and Burzaco discussed three Asian countries about which Lopez expressed interest in buying soccer rights, which included India and Indonesia. Trial Tr. 1106:12 – 1107:1. Lopez persisted

4

in this interest through at least 2013. Trial Tr. 1279:8-1280:22 (testifying about GX-2003, in which Lopez sought to meet with Grondona in 2013 to discuss both Casal and Fox's acquisition of rights in these three countries).

Consistent with the government's motion in limine, and the Court's order, this testimony provided "direct evidence of the charged Copa Libertadores wire fraud and money laundering conspiracies, in that it shows, among other things, that [Grondona] used his official position to benefit Fox based on bribes he received in connection with the Copa Libertadores contracts." ECF Dkt. No. 1639 at 4. Moreover, "that [Grondona] sought to arrange for additional bribe payments in exchange for further assistance to Fox is strong evidence of the conspiratorial relationship . . . ." Id. It also, consistent with the government's motion, "complete[d] the story of the crimes charged . . . help[ed] explain to the jury how the illegal relationship between the participants in the crime developed . . . and to explain[ed] 'the mutual trust that existed between coconspirators.'" Id. (internal citations omitted). Finally, the evidence "show[s] lack of mistake and intent, in that repeated conversations between Burzaco and Lopez about the payment of bribes to soccer officials, including in the context of generating new business for Fox, helps to establish there was no misunderstanding as to the purpose of the bribe payments or the nature of Fox's relationship with those officials, including [Grondona]." Id.

    E.    <u>Burzaco's Testimony on Cross-Examination</u>

Counsel for Lopez spent a considerable amount of time during cross-examination attempting to impeach and discredit Burzaco on this topic. See generally Trial Tr. 1543-1583. Several such lines of questioning focused in particular on ESPN's conduct in connection with the bid. For example, counsel for Lopez suggested that Grondona was feeding information to ESPN as well as Fox. Some examples of this testimony are below:

> Q All right. Now, Mr. Grondona did not actually give you any inside information about **ESPN's bid**, correct?
>
> A I don't recall.
>
> Q And you don't know whether it was higher or lower than Fox's existing bid, right? You don't recall?
>
> A I don't recall, no.
>
> Q Okay. You don't know whether it was more than $400 million or less $400 million, right?
>
> A Sorry, ESPN?
>
> Q Correct. You don't know whether **ESPN's bid** was higher?
>
> A No. No --
>
> Q -- or lower?
>
> A No. In the context he said that looks like -- it looks like both Fox and ESPN were offering lower.

5

Q But **you don't know whether ESPN bid more** or less than $400 million.

A I -- I don't remember, no.

Q Okay. Now, according to you, Mr. Grondona did this – he did it as a favor to you and to Fox, correct?

A Yes.

Q And you said that was because Mr. Grondona wanted to have a good relationship with Fox.

A Yes.

Q And Mr. Burzaco, but providing a higher number to Fox would have been a pretty smart thing for Mr. Grondona to do if he was trying to get Fox to raise its bid, correct?

A Yes.

Q He would have been trying to create the perception of a bidding war, right?

A He told me there was a bidding war.

Q And it's -- and one thing you do in a bidding war is you say you're going to have to bring your bid up a little higher if you want to win, right?

A Correct.

**Q And you have no idea whether Mr. Grondona, on his own, gave other information to ESPN, right?**

A He didn't tell me.

Q And you have no information about whether other FIFA officials gave information to ESPN in order to get them to bid higher, correct?

A It's correct. I don't have that information.

Q And Fox had no way of knowing whether the $400 million number that you say you passed along was true or not, right?

A Well, I have a conversation with David Nathanson afterwards and he related me how the dynamic work internally.

6

> Q Okay. I'm just asking you, Fox had no idea whether the information you were providing was true or not, right?
>
> A If you want I can explain you a conversation with the Fox member to accurately answer that question.
>
> Q I'm trying to focus your attention right now on before Fox was awarded the rights, okay?
>
> A Before Fox was awarded the rights, nor Hernan, nor me, knew whether that 400 million was going to be a successful number or not.
>
> Q Right.  **And there could have been other FIFA officials who were trying to help ESPN with the bid, right?**
>
> A It may have been, yes.
>
> Q And they could have been trying to pass along to Fox a number that was too low, right?
>
> A Grondona wouldn't have passed a number to Fox that was too low.
>
> Q I'm not asking you what you think now is in Mr. Grondona's head. **I'm saying other FIFA officials, or Mr. Grondona, could have been trying to pass Fox a number that was too low so that ESPN would get it instead, right?**
>
> A Oh, I don't agree -- I don't agree in that -- in that comment.
>
> Q Mr. Burzaco --
>
> A I agree at the time FIFA officials, but not Grondona.
>
> Q Okay.
>
> THE COURT: You said: I don't agree in that comment?
>
> THE WITNESS: I don't agree in that comment. I agree that other FIFA officials could have been doing what he's stating, but not Grondona.
>
> THE COURT: Okay. All right.  I just want to make sure the record is clear.  Go ahead.

Trial Tr. 1558:5-1561:14 (emphasis added).

> Q Mr. Burzaco, **Fox ended up winning the World Cup rights because it bid more than ESPN, correct?**

7

A I agree.

Q And Fox was the highest of all bidders, correct?

A That -- I -- I cannot -- I cannot say, but I can say that Grondona said they could have saved $30 million or $50 million if they would have been more accurate in their listening to my information.

Q You said on direct --

A And I told Nathanson that.

Q You said on direct, Mr. Burzaco, that the number you passed to Fox was $400 million, right?

A Yes.

Q That's what you remember?

A That's what I remember. But...

Q And then Ms. Farrell corrected you earlier this week that Fox had actually bid more than 400 million?

MS. FARRELL: Objection to that characterization.

A That's seems correct.

Q She asked you questions about whether you now remember Fox had paid more than 400 million --

A I remember that Fox paid more, at this moment in 2019, a week ago and at my testimony. I said Grondona passed that figure and when he came back from Switzerland, he said if they would have listened to me, they would have saved 30, $50 million, I don't recall exactly the -- the Fox figure, and exactly in that context, if they are -- if they are going to overspend 30, $50 million in a deal like this, next time I'm going forward and, Alejandro, I will not do it for free. I will request a 10 percent of the price which I mentioned to Hernan Lopez.

**Q Now, Mr. Burzaco, Fox ended up bidding approximately $50 million more than ESPN for these rights, correct?**

A I don't know exactly how much, if 35, 40, 50, but they ended up bidding substantially more than the $400 million, around 10 percent more. I think it was around 10 percent, that's why Grondona said 10 percent.

Trial Tr. 1564:8-1565:19 (emphasis added).

8

These are just examples. To be clear, the government is not suggesting this was an improper line of questioning. But having spent so much of hiscross examination of Burzaco focused on ESPN's conduct, and suggesting to the jury certain facts about ESPN's bid, Lopez can can hardly now complain that the government is calling an ESPN witness who will corroborate precisely what Burzaco testified to, and debunk some of the suggestions made by counsel in their cross-examination questions.

F. Forthcoming Trial Evidence

The government will corroborate Burzaco's testimony. The government has offered or will offer emails reflecting (1) that Lopez received word that Fox was to receive the World Cup broadcast rights at issue before the public announcement; (2) that Lopez emailed David Hill—a high-ranking Fox executive and sports producer who met Grondona with Lopez in Argentina—a reference to Grondona and his Todo Pasa ring when Hill indicated that he hoped Lopez's early information was correct; (3) Lopez's acknowledgement to a colleague that Burzaco played a key role in Fox winning the rights; and (4) efforts by Lopez one month after the public announcement to arrange a personal meeting with Grondona in Buenos Aires to thank him. The government also intends to call a witness from ESPN, who will corroborate Burzaco's account of how the bidding process unfolded within FIFA.

II. The Court Should Deny Lopez's Request

A. Applicable Law

Under the "very broad" standard of Rule 402 of the Federal Rules of Evidence, relevant evidence is generally admissible. United States v. Gramins, 939 F.3d 429, 450 (2d Cir. 2019) (deeming relevance standard to be "a low threshold, easily satisfied"). Evidence is relevant if it has any tendency to make more or less probable a fact of consequence to the case. See Fed. R. Evid. 401, 402. The evidence "need only tend to prove the government's case," and need not support "that which directly establishes an element of the crime." United States v. Gonzalez, 110 F.3d 936, 941 (2d Cir. 1997). Relevant evidence may simply add "context and dimension to the government's proof of the charges," id., such as "by demonstrating the context of certain events relevant to the charged offense," United States v. Inserra, 34 F.3d 83, 89 (2d Cir. 1994), "an explanation of the understanding or intent with which certain acts were performed," United States v. Coonan, 938 F.3d 1553, 1561 (2d Cir. 1991) (quoting United States v. Daly, 842 F.2d 1380, 1388 (2d Cir. 1988)), "the background and history" of a criminal scheme, United States v. Langford, 990 F.2d 65, 70 (2d Cir. 1993), or the development of "the illegal relationship" among criminal participants, United States v. Pitre, 960 F.2d 1112, 1119 (2d Cir. 1992); see also United States v. Pipola, 83 F.3d 556, 565-66 (2d Cir. 1996).

It is well settled in the Second Circuit that when the defense attacks the credibility of a government witness, the government may rehabilitate that witness's credibility by introducing corroborative evidence. See, e.g., United States v. Torres, No. 21-2665-CR, 2023 WL 378942, at *4–5 (2d Cir. Jan. 25, 2023) ("district court committed no error" in admission of evidence corroborating government witness where witness's "credibility was vigorously attacked during defense counsel's cross-examination of [witness] and in summation."); United States v. Quinones, 511 F.3d 289, 313 (2d Cir. 2007) (district court enjoys "broad discretion in admitting rehabilitative evidence of credibility" where defense launches an "attack on the veracity of a witness"); United States v. Martinez, 775 F.2d 31, 37 (2d Cir. 1985) ("it is well settled that a cross-examination

9

attacking a witness's credibility and character will open the door to redirect examination rehabilitating the witness.") (citations omitted); United States v. Everett, 825 F.2d 658, 660 (2d Cir.1987) (finding no abuse of discretion in the district court's admission of the testimony of a bank teller and surveillance photos to corroborate the testimony of a cooperating witness regarding the defendant's involvement in an uncharged bank robbery). Accordingly, this Court should make its evidentiary findings with "an appreciation of the offering party's need for evidentiary richness and narrative integrity in presenting a case." Old Chief v. United States, 519 U.S. 172, 183 (1997).

Courts may exclude admissible evidence only if its probative value is "substantially outweighed" by the danger of "unfair prejudice." Fed. R. Evid. 403; see also United States v. Moran-Toala, 726 F.3d 334, 345–46 (2d Cir. 2013) (affirming admission of evidence found to be both highly probative and highly prejudicial). The Court must examine the evidence "in the context of the crime alleged." United States v. Rivera, No. 13-CR-149 (KAM), 2015 WL 1875658, at *3 (E.D.N.Y. Apr. 22, 2015). The prejudice caused by evidence is not "unfair" under Rule 403 if the "adverse effect" on the defendant is merely a demonstration of "the fact or issues that justified [the] admission." United States v. Curley, 639 F.3d 50, 57 (2d Cir. 2011); accord United States v. Figueroa, 618 F.2d 934, 943 (2d Cir. 1980). Unfairness "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilty on a ground different from the proof specific to the offense charged." Old Chief, 519 U.S. at 180. That "improper basis" is "commonly, though not necessarily, an emotional one." Id. (quoting Fed. R. Evid. 403 advisory committee's note (1972 Proposed Rules)). Because Rule 403 balancing skews in favor of admitting probative evidence, see Fed. R. Evid. 403 (requiring danger of unfair prejudice to "substantially" outweigh probative value), the Court may admit even "inflammatory" evidence if it is not "more inflammatory than the charged crime[s]," United States v. Livoti, 196 F.3d 322, 326 (2d Cir. 1999); accord United States v. Rosemond, 958 F.3d 111, 125 (2d Cir. 2020); United States v. Roldan Zapata, 916 F.2d 795, 804 (2d Cir. 1990); United States v. Bumagin, 136 F. Supp. 361, 370 (E.D.N.Y. 2015).

B. Argument

1. The Court Cannot Trust Lopez's Recitation of the Record

A central premise of Lopez's Motion is that "the bases for admitting these alleged conversations regarding the 2018 and 2022 World Cup broadcasting rights never existed" because, as "Burzaco himself has conceded, they involved neither bribery nor kickbacks." Mot. at 5. But as described further below, the years-long record is crystal clear that the government has never claimed that this World Cup bid information was procured through a particular bribe or kickback. Rather, the government has always maintained, consistent with Burzaco's trial testimony, that the information was a freebie from Grondona to Fox in recognition of their longstanding relationship—i.e., the Copa Libertadores bribes. Consistent with some of his previous motions and opening statement,[4] here, once again, Lopez just gets the record completely wrong. It is

---

[4] See, e.g., January 29, 2023 Letter, ECF Dkt. No. 1911 (containing numerous misrepresentations about the record, which are set forth in the government's brief at ECF Dkt. No. 197); compare Trial Tr. 144:17-18 (claiming that "Hernan doesn't know these Jinkis people from Adam") with GX 1860 (March 18, 2011 email from Lopez to Burzaco stating, "I heard a rumor

10

unclear to the government whether this is genuine confusion or intentional gaslighting. Whatever the reason, the Court cannot rely on Lopez's recitation of the facts in rendering its decision.

For example, contrary to Lopez's claim, at no point whatsoever has Burzaco or the government ever claimed that "the World Cup information was provided with the understanding that the provision of any such information in the future would require a 10% bribe payment." Mot. at 3. Indeed, the defense was confused about this back in 2021, and the government twice corrected the defense's misunderstanding during oral argument:

> **So I think, first of all, it's important to clarify the facts because there seems to be some confusion about what exactly it is that we seek to prove.**
>
> Grondona . . . provided confidential World Cup rights bidding information to the defendants, specifically Mr. Lopez, through Alejandro Burzaco, which Fox then used to obtain those rights. They did, in fact, get the World Cup qualifying, the World Cup broadcasting rights, in part, as a result of this information and Mr. Lopez also learned through, from Grondona through Mr. Burzaco that they had obtained the rights in advance of a public announcement of that.
>
> **So just to be clear, there's then later, Grondona says: Okay, no more freebies.** In the future, if you want such information, you are going to have to pay me 10 percent of those future contracts that you get by virtue of my providing that information[. **B]ut the initial provision of the bidding rights is in thanks for the years of bribe payments as a result of the Copa Libertadores bribes.**

Dec. 14, 2021 Tr. at 46:2-4; 47:1-19 (emphasis added).

> **I think the whole argument is premised on a misunderstanding of the facts** which we addressed in our brief but it's described [by counsel for Lopez] as this alleged side deal between Mr. Lopez and Grondona about which Mr. Martinez had no idea, but the point is Grondona providing the information to Mr. Lopez was not a side deal. There was no quid pro quo specifically for that. It was thanks so much for you and your colleagues paying bribes to me for these last several years, here's some information that may benefit you. **And then later in time, he says, I'm, you know, obviously putting this in my own words but he expresses no more freebies, if you want more information like this in the future, I'm going to have to get 10 percent. That was all sort of conflated as being one side**

---

that supposedly Hugo Jinkis and Tamborini are in secret talks with CONMEBOL to set up their own signal, taking all the rights with them.").

11

> **deal between Lopez and Grondona, but that's just factually not the case.**

ECF Dkt. No. 1764 (Dec. 14, 2021 Tr.) at 73:4-18 (emphasis added).

As another example, Lopez's Motion states: "Burzaco did not testify that Grondona provided the World Cup information as a 'thank you' for the alleged Copa Libertadores bribes. Instead, Burzaco stated that Fox did not pay any bribes to Grondona to obtain the 2018 and 2022 World Cup broadcasting rights, and that Grondona did not solicit or demand anything in return." Mot. at 2. This combination of sentences is truly bewildering. The first sentence is just wrong: although Burzaco used the word "favor" rather than the words "thank you" to describe Grondona's provision of information to Lopez in his trial testimony, the import was the same—Grondona gave this information freely to Lopez in recognition of their preexisting relationship. Trial Tr. 799:15; 1559:1-3. But Lopez's second sentence is correct, and entirely consistent with everything that both Burzaco and the government have always stated: Fox did not pay any bribes to Grondona to obtain the 2018 and 2022 World Cup broadcasting rights, and Grondona did not solicit or demand anything in return. See Dec. 14, 2021 Tr. at 46:2-4; 47:1-19; 73:4-18; Trial Tr. 1543:22-1544:8. The government and Burzaco have been clear that it was only later on that Grondona told Burzaco that he would not provide Fox any more free information in the future, and that he would demand a 10% bribe. See ECF Dkt. No. 1639 at 3 ("The government also intends to introduce evidence that in late 2011, (1) Co-Conspirator #1 informed Lopez, again through Burzaco, that, going forward, he expected to collect a bribe of 10% of the contract price for any additional contracts he helped to secure for Fox."); Dec. 14, 2021 Tr. at 73:4-18 (quoted above); Trial Tr. 799:15-18 ("He said to me that look, Alejandro, I did this favor to you and to Fox, but this is the last time I do this for free. From there on, if they are interested in any product in FIFA, they would have to pay me a 10 percent fee.").

As a third example, at no point did Burzaco testify that Grondona's requirement that Fox pay 10% on any future inside information was limited to World Cup rights. To the contrary, Burzaco was clear that Grondona wanted future bribes for "any product in FIFA." Trial Tr. 799:15-18 ("He said to me that look, Alejandro, I did this favor to you and to Fox, but this is the last time I do this for free. From there on, if they are interested in any product in FIFA, they would have to pay me a 10 percent fee."). But Lopez keeps artificially imposing that limitation, without any record citation, presumably in an attempt to undermine a chain of emails establishing that Lopez personally met with Grondona to seek his help for Fox in connection with Indonesian soccer rights. See, e.g., GX-1972, 1972-T (Lopez asking Burzaco to arrange for Lopez to meet with Grondona in Tokyo to discuss Indonesian soccer rights).[5] The trial is far from over and the government has more proof on this front.

---

[5] At one point, in a late-night brief that the government had only a few hours to draft following a midday filing by Lopez's counsel, the government mistakenly described GX-1972 as relating to Indonesian World Cup rights. The government immediately corrected the record the next morning, explaining that the email related to Indonesian soccer rights. Trial Tr. 1485:9-13. That prompt and appropriate record correction does not in any way give purchase to the defendant's claim that Grondona's requirement that Fox pay 10% on any future inside information was limited to World Cup rights. See Trial Tr. 799:15-18.

12

The Lopez Motion gets the facts and the record wrong, and egregiously so. The Court cannot rely on the facts as set forth in the Lopez Motion.

2. The Anticipated Gomez/Skipper Testimony is Relevant

Testimony concerning ESPN's bid for the 2018 and 2022 English-language World Cup broadcasting rights is relevant in several ways. First and foremost, the defendants opened on attacking the credibility of Alejandro Burzaco[6] and have made it the centerpiece of their defense at every turn, including with respect to this particular issue. See, e.g., ECF No. 1922 at 2–3 (alleging that Burzaco's account of his dealings with Grondona and Lopez on Fox's World Cup rights bid is "fabricated and entirely unsupported by the documentary record."). Under these circumstances, it is entirely reasonable—indeed, necessary—that the government offer evidence to corroborate Burzaco's testimony, which was under intense assault on cross-examination. See Torres, 2023 WL 378942, at *4–*5 (government permitted to offer evidence to rehabilitate witness's credibility after "vigorous[]" attack by defense). Having so aggressively attacked Burzaco's credibility, the defendant cannot now seriously complain that the government wants to offer evidence to corroborate his account.

Second, defense counsel's cross-examination on this subject left the jury with the impression that ESPN might have received inside information from either Grondona or other FIFA officials about competing bids. See Tr. at 1559:14-24 (questioning Burzaco on cross examination about "whether Mr. Grondona, on his own," or "other FIFA officials gave information to ESPN to get them to bid higher"). The government is entitled to call a witness, explore this issue, and reinforce the notion that Fox's receipt of inside information was unusual and the product of a conspiratorial relationship between Burzaco, Lopez, and Grondona—a relationship rooted in the Copa Libertadores bribery scheme.

Third, testimony from an ESPN witness about the company's efforts to acquire the 2018 and 2022 English-language World Cup broadcasting helps contextualize Burzaco's testimony about why helping Fox win those rights was so important to Lopez. Trial Tr. at 790:15-18 (Burzaco's testimony that Mr. Lopez told him that the information obtained from Grondona "landed very well within the top authorities of Fox including but not limited to Rupert Murdoch and that this type of, this type of advantage or information was decisively [sic] in his internal career."). Specifically, an ESPN witness will explain the value of the World Cup rights and help

---

[6] Trial Tr. at 129:16-19 ("You're going to have to decide whether you can believe a single word that Alejandro Burzaco says, let alone rely on his testimony to find someone guilty beyond a reasonable doubt."); id. at 141:5-10 ("At the end of the day, the case is going to boil down to whether you believe Burzaco, whether you think you can rely on the word of a man with his track record of lies and deceit and manipulation and bribery and embezzlement, all of which he'll admit, whether a case built on his testimony can prove guilty beyond a reasonable doubt."); id. at 190:15-24 ("Our system of justice requires us to view Burzaco's testimony with suspicion, to presume Carlos innocent and to hold the government to its burden of proof beyond a reasonable doubt. Burzaco will come in here and try to present himself as a remorseful person, who is now trying to make amends by telling the truth. He may even shed a few tears. He's bluffing. Be careful. Be careful of Burzaco. He's very polished and he's highly intelligent. Burzaco has played in the World Series of Poker. He's skilled at deception.").

13

the jury understand how unexpected it was for ESPN to lose them, particularly after receiving assurances from FIFA officials that ESPN was well positioned to win those rights. That loss was painfully felt by ESPN, served as a boon to Fox, and was personally important to Hernan Lopez, who, as the evidence at trial has and will continue to show, repeatedly leveraged the connections he developed as part of the bribery scheme to advance Fox's business interests and burnish his own profile.

3. The Gomez/Skipper Testimony Substantially Outweighs the Evils Proscribed by Rule 403

The defendant's Rule 403 arguments are misplaced. For one thing, the government flatly rejects the notion that the government is offering this evidence because it is seeking to "make its case more sensational and 'punchier'" by injecting testimony about the World Cup. Mot. at 9.[7] This is not the first time during this trial that counsel for Mr. Lopez has mischaracterized the government's conduct, its beliefs, or the factual record. See, e.g., ECF No. 1911 (motion to dismiss alleging government misconduct based on embrace of "invidiously discriminatory trope" premised on various misleading citations to the record); Trial Tr. 140:7-14 (counsel for Mr. Lopez alleging that the government "knows that the fact that Hernan himself blew the whistle on Burzaco is devastating to its case" before Court sustained objection). To be clear, the government's decisions about which witnesses to call is guided by one principle: helping the jury achieve its fact-finding function.

Nor should the Court take seriously the defendant's claim that witness testimony concerning Fox's acquisition of the 2018 and 2022 English-language will confuse the jury. In support of this claim, Mr. Lopez cites to a New York Times article that incorrectly stated that Mr. Lopez and Mr. Martinez "'are accused of paying bribes to obtain broadcast rights, including for the World Cup.'" Def.'s Br. at 9. (citing article). That a newspaper article—printed the day before trial started—contains an error is hardly evidence of juror confusion. Indeed, the same reporter authored a subsequent article after Mr. Burzaco testified about Fox's acquisition of the World Cup broadcasting rights, which did not make the same mistake, illustrating that Mr. Burzaco's trial testimony was clear and unconfusing. See Ken Bensinger, Witness Says Inside Information Helped Fox Win World Cup Rights, N.Y. TIMES (Jan. 20, 2023).

The defendant's cries of unfair prejudice are equally unfounded. To be sure, evidence that corroborates Alejandro Burzaco is prejudicial to the defendants—but not unfairly so. The government has no intention of eliciting personal views about whether the World Cup rights bidding process, or even FIFA itself, was "corrupt," as defendants suggest. See Def.'s Br. at 8. It simply intends to offer testimonial evidence corroborating aspects of Alejandro Burzaco's testimony. See Def.'s Br. at 8. Moreover, the government does not understand the defendant's suggestion that the government is offering an ESPN witness for the purpose of offering improper character testimony against Mr. Lopez, see id., when neither Ms. Gomez nor Mr. Skipper knows who he is.

---

[7] The government also disputes the defendant's claim that "the jury becomes noticeably more interested and attentive at any mention of the World cup, and the government knows this." Mot. at 8.

14

Finally, the Court should not abide the defendant's assertion that the testimony of an ESPN witness should be precluded in order to save time. See Def.'s Br. at 9. The government shares the defendant's (and surely the Court's) preference to expedite the trial. For this reason, the government is in the process of (1) reevaluating its witness list, which it intends to substantially cut, and (2) formulating stipulation(s), which would obviate the need to call certain witnesses. Moreover, even though the government noticed both Ms. Gomez and Mr. Skipper, it only intends to call one of those individuals as a witness; once it determines who it will call, the government will so inform the defendants. But the parties' interest in saving time is not license to handicap the government's presentation of its case (especially when it had estimated that it would take approximately 4-6 weeks[8]) and its legitimate interest in corroborating Mr. Burzaco's testimony.

III.  Conclusion

The Court should see Lopez's letter motion for what it is: a transparent, ill-supported attempt to prevent the government from corroborating Mr. Burzaco's testimony. Given the importance of Mr. Burzaco's testimony to the case against the defendants and the lengths to which they have gone to attack his credibility, it is hardly surprising that Lopez wants to keep the government from offering rehabilitative evidence. But the government is plainly entitled to do so under the law. The defendant's motion should be denied.

Respectfully submitted,

BREON PEACE
United States Attorney

By:      /s/    
Kaitlin T. Farrell
Robert T. Polemeni
Victor Zapana
Eric Silverberg
Assistant U.S. Attorneys
(718) 254-7000

cc: Clerk of Court (PKC) (by ECF)
Counsel of record (by ECF)

---

[8] Despite not having anticipated that the defendants would cross-examine Mr. Burzaco for a week when it formulated its estimate, the government does not anticipate that it will require six weeks to complete its case.