

Debevoise & Plimpton LLP
66 Hudson Boulevard
New York, NY 10001
+1 212 909 6000

February 9, 2023

**BY ELECTRONIC CASE FILING**

The Honorable Pamela K. Chen
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    *United States v. Hernan Lopez*, Case No. 15-cr-252 (PKC),
              Motion to Admit Prosecutor's Statements

Dear Judge Chen:

      We write on behalf of Hernan Lopez seeking the Court's permission to offer, pursuant to Federal Rule of Evidence 801(d)(2), certain statements of the government. Specifically, for the reasons set forth below, we seek the following instruction to the jury:

> In connection with Alejandro Burzaco's testimony regarding the February 2010 meeting in Fort Lauderdale with Mr. Lopez, the government stated during this trial as follows:
>
> 1. There is no reference to that meeting in any of the reports of interviews of Burzaco.
>
> 2. When Burzaco testified to the Fort Lauderdale meeting at trial, it was the first time the government heard about that meeting and its details.
>
> 3. Over the course of his debriefings, Burzaco has been steadfast in his position that he spoke with Lopez about bribes on numerous occasions in 2010, but he never committed to saying when the first time was because his memory was unclear.
>
> 4. Between the end of the court day on January 19 and his continued direct testimony on January 20, Burzaco figured out what his answer would be to the question asking him when he first discussed bribes with Mr. Lopez.

This instruction is appropriate because it provides the jury with critical relevant facts admitted by a party opponent, and it is necessary to correct Burzaco's false testimony during this trial.

I.     <u>Mr. Lopez and Mr. Martinez Applied for Relief Based on the Dramatic Disconnect Between Burzaco's 3500 Material and His Trial Testimony.</u>

At the conclusion of Burzaco's direct testimony, both Mr. Lopez's counsel and Mr. Martinez's counsel submitted applications to the Court—one of which remains pending—based on the dramatic disconnects between Burzaco's testimony and the statements attributed to him in the voluminous "3500 material" amassed after approximately 130 interviews by the government.[1]

There are others, but the two most glaring examples we raised in that regard relate to Burzaco's testimony about two meetings. The first allegedly occurred in Fort Lauderdale in February 2010, and Burzaco claimed that it was the first time he discussed bribes with Hernan Lopez. 2023 Trial Tr. 651:7–653:17. The second was a meeting Burzaco said happened at the News Corp building in New York, at which, Burzaco claims, he described to Mr. Lopez the details about how the bribes were paid. 2023 Trial Tr. 653:18–655:1.

There is no reference of any kind to either of these two meetings in the 3500 material. On the other side of the coin, of the two meetings with Mr. Lopez in which, according to the 3500 material, Burzaco allegedly discussed bribes with Lopez, one (supposedly at an awards ceremony in Los Angeles) disappeared completely from his trial testimony. The other (at Dean & DeLuca in Rockefeller Center) underwent a metamorphosis, we believe because it was tailored by Burzaco after he improperly obtained information about the defense opening statements.

And after written and oral applications on January 24 by Mr. Martinez and Mr. Lopez, respectively, the Court invited all counsel to arrive early the following morning to discuss them. The government statements we seek to offer into evidence were made during that colloquy.

II.     <u>The Government Made Several In-Court Admissions of Fact in Open Court Concerning Burzaco's Account of the Fort Lauderdale Meeting.</u>

The Court was rightly concerned about the fact that the critical meetings that form the heart of Burzaco's testimony are referenced nowhere in more than 1,400 pages of 3500 material generated after approximately 130 meetings between Burzaco and the government. It had the following colloquy with the government:

> The Court: Let me ask you a question. I mean, something like the Fort Lauderdale meeting and the details of that, I think no one disagrees that that wasn't in any 302.

---

[1] That motion seeks a jury instruction that neither the Fort Lauderdale meeting nor a May 20 News Corp meeting about which Burzaco testified is mentioned in any of the numerous interview reports prepared by government agents in this case.

Ms. Farrell: *Correct.*[2]

The Court: And I have to ask you, did that come as news to you when he testified? Because—

Ms. Farrell: I'm happy to share.

The Court: Yes.

Ms. Farrell: Mr. Burzaco—we have gone—there are many e-mails and calendar entries documenting Mr. Lopez's and Mr. Burzaco's meeting during 2010 and 2011, and we have looked at all of those. He has been steadfast in his position that they spoke about the bribes explicitly on numerous occasions in 2010, *but has never committed to saying when the first time was because his memory was unclear*, which he started—when is the first time you recall—did you discuss it in 2010. Yes, I did. What is the first time you recall saying it? And he's like, I have real trouble remembering.

The Court: And—

Ms. Farrell: And I thought he was going to move on, and instead he said, I think it was the Super Bowl. I think it was in Fort Lauderdale. I have this memory. And you know what? *He's entitled to say that. If he went home that night*[3] *and laid his head down on the pillow and realized I'm going to have to testify about this tomorrow, I better, like, figure out what is my clear memory.* He may have been reluctant. You know, he's scared of being accused by the government of lying and—

The Court: But is it fair to say that's the first time you heard him say Fort Lauderdale?

Ms. Farrell: Well, I know he was in Fort Lauderdale—we knew he went to the Super Bowl. You know what I mean?

The Court: Again, I know that, but is it the first time you heard him say, yes, the meeting happened at the Super Bowl in Fort Lauderdale at a particular hotel?

Ms. Farrell: *It's the first time that he has said the first time we discussed bribes was at this meeting.* Otherwise, it's been, we met many times over 2010. We discussed bribes at most of those meeting, *but it was the first time—on the stand*

---

[2] As discussed further below, despite this admission, the government insists that the defense can get this fact before the jury only by calling an agent, having her read more than 1,400 pages of 3500 material, and asking her to confirm the admitted fact.

[3] Ms. Farrell had met with Burzaco the night before.

3

> *was the first time he said to me, I recall this being the first instance. And he's entitled to that. It's disclosed when he testifies.*

2023 Trial Tr. 1508:25–1510:19 (emphases added).

The government's assertion that an accomplice witness in a serious criminal case is "entitled" to lay his head on a pillow the night before he gives crucial testimony and "figure out" what that testimony will be foreshadowed its later response to the Court's inquiry (at 2023 Trial Tr. 1821:2–25) into how Mr. Lopez's counsel could get before the jury that Burzaco's 3500 material made "no reference to a Fort Lauderdale meeting and then what was said at that meeting":

> Ms. Farrell: But "so what?" I guess is our question.

2023 Trial Tr. 1822:1.

Ms. Farrell went on to say FBI 302s are written for the government, "for posterity, . . . [b]ut the notion that just because something isn't written down, that's somehow prejudicial or unfair—" 2023 Trial Tr. 1822:13–17.

Then there was a colloquy that turned out to be prescient:

> The Court: No, I think you're missing the point. If he testifies, no, I did tell the agent, but there's no record of that, doesn't the defense have the—shouldn't they have the ability to contradict him on that?
>
> Ms. Farrell: What's the point of the question at all, I suppose?

2023 Trial Tr. 1822:18–23.

### III. Burzaco Falsely Denied the Fact Admitted by the Government in Open Court.

Sure enough, on cross-examination, Burzaco falsely denied what the government had admitted just one day prior:

> Mr. Sarratt: Mr. Burzaco, isn't it true that in all of your 130 meetings with the Government you never once told them that story about meeting Hernan in the lobby of a hotel in Fort Lauderdale at the Super Bowl, correct?
>
> Ms. Farrell: Objection.
>
> The Court: Overruled.
>
> Mr. Sarratt: Never once?
>
> Mr. Burzaco: I told the Government that I understood that my first meeting with Hernan Lopez was either at the end of 2009 or beginning of 2010 in the lobby of the hotel, and probably because of some side memory that I have, it was linked to the Super Bowl hotel that I stayed there.

4

> Mr. Sarratt: The Government interviewed you 130 times and the story that you told about this meeting in Miami and all of the specifics that you now say you relayed to Mr. Hernan Lopez at that time. *Isn't it true that you never told the government that story until you were sitting on the witness stand in this trial?*
>
> Burzaco: *It's incorrect.*

2023 Trial Tr. 2022:18–2023:11 (emphasis added). The government did not correct this false testimony on redirect and instead attempted to rehabilitate Burzaco by suggesting that defense counsel had been asking "a lot of questions about minor details" in Burzaco's account. 2023 Trial Tr. 3293:2–14.

Despite Burzaco's false testimony, the government has persisted in its refusal even to let the jury know that the Fort Lauderdale meeting is not mentioned in the 3500, let alone that Burzaco never said it at all until he testified at trial, and let alone that he lied about that on cross-examination.

When the Court pointed out the obvious—"I think certainly, as to the Fort Lauderdale meeting there is reason to believe that no one on the government's team had ever heard about this meeting from Mr. Burzaco before," 2023 Trial Tr. 3377:7–10, Ms. Mace asserted that the defense must call an agent, have her read more than 1,400 pages of 3500 material, and try to elicit from the agent that the meeting is not mentioned, *see* 2023 Trial Tr. 3380:3–3389:20.

IV.   The Government's Statements Regarding the 2010 Fort Lauderdale Meeting Are Admissible and Must Be Admitted to Correct Burzaco's False Testimony

Burzaco testified falsely. His credibility lies at the heart of the case against Mr. Lopez. In addition, what he said cannot be squared with the government's representation to the Court that the government first heard Burzaco describe the details of this meeting—where he purportedly discussed bribery for the first time with Mr. Lopez—while Burzaco was on stand. Once the government heard this testimony, it was ethically obligated to take reasonable remedial measures to correct it.[4] It did not, and it tried instead to rehabilitate it. To allow this false testimony to go

---

[4] *See* N.Y. Rules of Pro. Conduct r. 3.3(a)(3) ("A lawyer shall not knowingly . . . offer or use evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal."); *id.* r. 3.3 cmt. 6A ("The duties stated in paragraphs (a) and (b)—including the prohibitions against offering and using false evidence—apply to all lawyers, including lawyers for plaintiffs and defendants in civil matters, and to both prosecutors and defense counsel in criminal cases. In criminal matters, therefore, Rule 3.3(a)(3) requires a prosecutor to refrain from offering or using false evidence, and to take reasonable remedial measures to correct any false evidence that the government has already offered. For example, when a prosecutor comes to know that a prosecution witness has testified falsely, the prosecutor should either recall the witness to give truthful testimony or should inform the tribunal about the false evidence."); *see also* ABA Crim. Just. Standards for the Prosecution Function standard 3-6.6(c) (4th ed. 2017) ("During the trial, if the prosecutor discovers that false evidence or testimony has been introduced by the prosecution, the

5

uncorrected would violate Mr. Lopez's due process rights. *See Napue v. Illinois*, 360 U.S. 264, 269, (1959).

By this application, we seek to admit the government's statements of fact because they directly bear on Burzaco's credibility and to correct Burzaco's false testimony. Those facts include that Burzaco never mentioned the critical Fort Lauderdale meeting to anyone in the government before he gave his testimony at trial. As the government further stated, between the end of the trial day on Thursday, January 19, and his continued direct examination on Friday, January 20, Burzaco "figure[d] out" what his answer would be to Ms. Farrell's question asking when he first discussed bribes with Mr. Lopez. That answer was something no one from the government had ever before heard, which is why the meeting is not referenced anywhere in the reports of Burzaco's approximately 130 meetings with the government.

The government's statements are admissible under the rules governing statements of party-opponents. Federal Rule of Evidence 801(d)(2) provides that opposing party statements are not hearsay. And the government is the party opponent of Mr. Lopez. *See United States v. Harwood*, 998 F.2d 91, 97 (2d Cir. 1993) ("The Government is the party opponent of . . . defendants."). Although out-of-court statements of a government agent are ordinarily not admissible as evidence of a fact in a criminal trial, the Second Circuit "has recognized that the government's attorneys can bind the government with their in-court statements." *United States v. Yildiz*, 355 F.3d 80, 81–82 (2d Cir. 2004). "These cases are consistent with Rule 801(d)(2)(B), which provides that a statement of which a party 'has manifested an adoption or belief in its truth' is not hearsay, and with authority that has applied that provision against the government in criminal cases." *Id.* at 82. A three-part test articulated in *United States v. McKeon*, 738 F.2d 26 (2d Cir. 1984), and applied to the government in *United States v. Salerno*, 937 F.2d 797, 810 (2d Cir. 1991), governs the admissibility of a prosecutor's statement from a prior trial. *E.g.*, *United States v. Paloscio*, No. 99-CR-1199, 2002 WL 1585835, at *2 (S.D.N.Y. July 17, 2002). But that test does not apply here, where the prior in-court statements of counsel were made in the instant case. *See id.* (citing *United States v. Arrington*, 867 F.2d 122, 127 (2d Cir. 1989)). Instead, the government's statements are admissible as long as they are relevant and satisfy the criteria for Rule 801(d)(2)'s hearsay exclusion, as they do here.

The government's statements are relevant because they go directly to Burzaco's credibility—"a factor of central importance to the jury." *United States v. Wallach*, 935 F.2d 445, 458 (2d Cir. 1991) (internal quotation marks omitted) (reversing convictions where the government's principal cooperating witness committed perjury). And they are assertions of fact made by a prosecutor with personal knowledge in open court while representing the government. *Cf. United States v. Walker*, 142 F.3d 103, 109–10 (2d Cir. 1998) (ruling that a prosecutor's statements during a bench conference were not admissible under Rule 801(d)(2) because "the prosecutor was not asserting that he did not believe that the defendants had the requisite intent"

---

prosecutor should take reasonable remedial steps. If the witness is still on the stand, the prosecutor should attempt to correct the error through further examination. If the falsity remains uncorrected or is not discovered until the witness is off the stand, the prosecutor should notify the court and opposing counsel for determination of an appropriate remedy.").

when he stated, "We don't know if they went there with the intention of killing him or not"). The government did not make these statements of fact on the fly, or in haste, or out of court. Rather, they were made on the record in court by the lead prosecutor after she heard and fully considered written and oral applications regarding the 3500 material, when she appeared the following morning to discuss those applications.

To answer the cavalier "so what?" and "what's the point?" questions posed by the government to the Court, these statements of fact seriously and directly undermine the credibility of the witness on whose word the government still seeks to convict an innocent man. The "considerations of fairness and maintaining the integrity of the truth-seeking function of trials" require that they be admitted at trial to correct Burzaco's false testimony. *United States v. GAF Corp.*, 928 F.2d 1253, 1260 (2d Cir. 1991).

Respectfully submitted,

/s/ David Sarratt
David Sarratt
John Gleeson
Sarah H. Wolf
Michael C. McGregor

Debevoise & Plimpton LLP
66 Hudson Boulevard
New York, New York 10001
Tel: (212) 909-6000

*Counsel for Hernan Lopez*

cc: All Counsel of Record (via ECF)
    Clerk of Court (PKC) (via ECF)