Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111
Carlos F. Ortiz
Kayley B. Sullivan

**NORTON ROSE FULBRIGHT U.S. LLP**
1301 Avenue of the Americas
New York, NY 10019
Mayling C. Blanco
Katey L. Fardelmann

*Attorneys for Full Play Group, S.A.*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,

        Plaintiff,

    -against-

FULL PLAY GROUP, S.A.

        Defendant.

Crim. Case No.: 15-cr-252 (PKC)

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT FULL PLAY GROUP S.A.'S FEDERAL RULE OF CRIMINAL PROCEDURE RULE 29 MOTION FOR A JUDGMENT OF ACQUITTAL**

# **TABLE OF CONTENTS**

        **Page**

I. PRELIMINARY STATEMENT ........................................................................................1

II. LEGAL STANDARD..........................................................................................................1

III. ARGUMENT......................................................................................................................2

    A.    The Government Has Not Proven that Full Play Group Entered into a Conspiracy to Commit Wire Fraud with Respect to the Charged Copa Libertadores, Copa America, and Friendlies and Qualifiers Schemes ....................2

        1.    The Government Has Failed to Prove that Full Play Group Entered into A Conspiracy to Commit Wire Fraud with the Requisite State of Mind.........................................................................................................4

        2.    The Government Has Failed to Prove that the Source and Scope of the Fiduciary Duty Necessary for the Charges Encompass the Relevant Conduct ................................................................................................8

        3.    The Government Has Failed to Prove that the Conduct at Issue Meets the Definition of "Bribery" as Required by Both the Proposed Jury Instructions and Case Law ..........................................................................10

    B.    Absent the Underlying Wire Fraud Conspiracy Charge, the Money Laundering Conspiracy Charge Must Similarly be Dismissed..............................12

IV. CONCLUSION..................................................................................................................12

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Screws v. United States*,
325 U.S. 91 (1945) ............................................................................................................. 4

*Skilling v. United States*,
561 U.S. 358, 130 S.Ct. 2896, 177 L.Ed.2d 619 (2010) .............................................. 3, 4, 8, 9

*United States v. Avenatti*,
432 F.Supp.3d 354 (S.D.N.Y. 2020) .................................................................................. 5, 7

*United States v. Bruno*,
661 F.3d 733 (2d Cir. 2011) ................................................................................................ 9

*United States v. D'Amato*,
39 F.3d 1249 (2d Cir. 1994) ................................................................................................ 2

*United States v. Eppolito*,
543 F.3d 25 (2d Cir. 2008) .................................................................................................. 1

*United States v. Halloran*,
821 F.3d 321 (2d Cir. 2016) ............................................................................................. 2, 3

*United States v. Hawkins*,
547 F.3d 66 (2d Cir. 2008) .................................................................................................. 2

*United States v. Landesman*,
17 F.4th 298 (2d Cir. 2021) .............................................................................................. 1, 2

*United States v. Lorenzo*,
534 F.3d 153 (2d Cir. 2008) ................................................................................................ 1

*United States v. Monaco*,
194 F.3d 381 (2d Cir. 1999) ................................................................................................ 5

*United States v. Napout*,
332 F.Supp.3d 533 (E.D.N.Y. 2018) ................................................................................ 3, 9

*United States v. Nouri*,
711 F.3d 129 (2d Cir. 2013) ................................................................................................ 9

*United States v. Pauling*,
924 F.3d 649 (2d Cir. 2019) ................................................................................................ 2

*United States v. Rybicki*,
   354 F.3d 124 (2d Cir. 2003)..................................................................................................3

*United States v. Samaria*,
   239 F.3d 228 (2d Cir. 2001)..................................................................................................5

*United States v. Silver*,
   864 F.3d 102 (2d Cir. 2017)..................................................................................................9

*United States v. Silver*,
   No. 15 Cr. 93(VEC), 2018 WL 4440496 (S.D.N.Y. Sept. 17, 2018) ........................................5

*United States v. Triumph Capital Grp., Inc.*,
   544 F.3d 149 (2d Cir. 2008)..................................................................................................2

*United States v. Urchinoli*,
   613 F.3d 11 (1st Cir. 2010)...................................................................................................4

*United States v. Valle*,
   807 F.3d 508 (2d Cir. 2015).......................................................................................1, 2, 3, 8

*United States v. Walker*,
   191 F.3d 326 (2d Cir. 1999)..................................................................................................4

*Williams v. United States*,
   341 U.S. 97 (1951)................................................................................................................4

**Statutes**

18 U.S.C. § 1343...........................................................................................................................2

18 U.S.C. § 1346........................................................................................................................2, 3

18 U.S.C. § 1956(a)(2)(A).........................................................................................................10

**Rules**

Fed. R. Crim. Pro. 29 ...................................................................................................................1

Fed. R. Crim. Pro. 29(a)...............................................................................................................1

## I.   PRELIMINARY STATEMENT

The government's case against Full Play Group fails for several reasons. The evidence presented at trial fails to establish the requisite state of mind that Full Play Group willfully and intentionally conspired with others to deprive CONMEBOL, any federation, or CONCACAF of their right to honest services.  The government has moreover failed to establish the source and scope of a fiduciary duty or a *quid pro quo*—both necessary for convicting our client of violating the charges alleged in the indictment.  Last, if the underlying conspiracy to commit wire fraud charge is dismissed, the connected money laundering charge must similarly fail.  Although the burden is high on a Federal Rule of Criminal Procedure 29 motion, if the government has not sustained its burden in its case in chief of establishing all necessary elements, the charges against the defendant must fail.

## II.   LEGAL STANDARD

Under Federal Rule of Criminal Procedure 29, the Court "must enter a judgment of acquittal for any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. Pro. 29(a).  "The test for sufficiency…is whether a rational jury could conclude beyond a reasonable doubt that a defendant is guilty of the crime charged." *United States v. Eppolito*, 543 F.3d 25, 45 (2d Cir. 2008) (quotation omitted). The Court must make this determination with "the evidence against a particular defendant…viewed in a light that is most favorable to the government…and with all reasonable inferences…resolved in favor of the government." *Id.* (quotation omitted).

The "jury's inferences . . . must be reasonable." *United States v. Landesman*, 17 F.4th 298, 320 (2d Cir. 2021). "[S]pecious inferences [should] not [be] indulged, because it would not satisfy the Constitution to have a jury determine that the defendant is *probably* guilty." *United States v. Valle*, 807 F.3d 508, 515 (2d Cir. 2015) (quoting *United States v. Lorenzo*, 534 F.3d 153, 159 (2d

1


Cir. 2008)). "If the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt." *Landesman*, 17 F.4th at 320 (quoting *United States v. Hawkins*, 547 F.3d 66, 71 (2d Cir. 2008)).

"Where a fact to be proved is also an element of the offense . . . it is not enough that the inferences in the government's favor are permissible," but rather, the Court "must also be satisfied that the inferences are sufficiently supported to permit a rational juror to find that the element, like all elements, is established beyond a reasonable doubt." *United States v. Pauling*, 924 F.3d 649, 657 (2d Cir. 2019) (internal quotation marks and alteration omitted); *see also United States v. D'Amato*, 39 F.3d 1249, 1256 (2d Cir. 1994) ("[T]he government must introduce sufficient evidence to allow the jury to reasonably infer that each essential element of the crime charged has been proven beyond a reasonable doubt."); *United States v. Triumph Capital Grp., Inc.*, 544 F.3d 149, 159 (2d Cir. 2008). "The standard does not mean that if there is any evidence that arguably could support a verdict, we must affirm. In any criminal trial there is always some evidence of guilt, otherwise there could not have been a prosecution." *United States v. Valle*, 807 F.3d 508, 515 (2d Cir. 2015).

### III.   ARGUMENT

**A.   *The Government Has Not Proven that Full Play Group Entered into a Conspiracy to Commit Wire Fraud with Respect to the Charged Copa Libertadores, Copa America, and Friendlies and Qualifiers Schemes***

"A person commits wire fraud when, 'having devised or intending to devise any scheme or artifices to defraud,' he uses interstate wires 'for the purpose of executing such scheme or artifice.'" *United States v. Halloran*, 821 F.3d 321, 337 (2d Cir. 2016) (quoting 18 U.S.C. § 1343). Further, the honest-services fraud statute, 18 U.S.C. § 1346, defines the term "scheme or artifice to defraud" to include a "scheme or artifice to deprive another of the intangible right of honest

2

services," 18 U.S.C. § 1346, "which the Supreme Court in turn has held to encompass only bribery and kickback schemes.'" *Halloran*, 821 F.3d at 337 (quoting *Skilling v. United States*, 561 U.S. 358, 368, 130 S.Ct. 2896, 177 L.Ed.2d 619 (2010)).

In order to prove the existence of honest services fraud, the government must provide that a defendant: (i) owed a fiduciary duty to not accept bribes or kickbacks in exchange for an official act, (ii) knowingly breached that duty by accepting a bribe or kickback in exchange for an official act; (iii) knowingly made a material misrepresentation or omission to the person or entity to whom the duty was owed in furtherance of his receipt of the bribe or kickback, and (iv) made use of the wires in furtherance of his receipt of the bribe or kickback. *United States v. Napout*, 332 F.Supp.3d 533, 549 (E.D.N.Y. 2018) citing *Halloran*, 821 F.3d at 337 (confirming that "a violation of a fiduciary duty" is an element of honest-services fraud); *United States v. Rybicki*, 354 F.3d 124, 146-47 (2d Cir. 2003) (holding that a "material" misrepresentation or omission is an element of honest-services fraud); *see also* Tr. 4600-4611 (Jury Instructions).

In the case of a conspiracy to commit honest services fraud, the government must prove that two or more persons entered into an unlawful agreement, the aims of which included the crime of honest services fraud (as defined above), and that the defendant knowingly *and* intentionally joined and participated in the conspiracy. *Valle*, 807 F.3d at 515-16. The government's proposed jury instructions define "knowingly" as where a defendant:

> acts (or, in the case of a corporation, it acts through its agents), purposefully and voluntarily, and not because of ignorance, mistake, accident, or carelessness. Whether a defendant acted knowingly may be proven by his or her conduct and by all of the facts and circumstances surrounding the case.

The government's proposed instructions additionally direct that:

> Before you can find that a defendant acted intentionally, you must be satisfied beyond a reasonable doubt that the defendant acted deliberately and purposefully. That is, a defendant's acts must have been the product of his conscious, objective

3

decision, rather than the product of mistake or accident. A defendant need not have been aware of the specific law that his conduct may have violated.

1.   *The Government Has Failed to Prove that Full Play Group Entered into A Conspiracy to Commit Wire Fraud with the Requisite State of Mind*

Like all crimes, in order to sustain a conviction, the government must prove that a defendant committed the alleged bad acts with the requisite state of mind, or *mens rea*. Here, there is no evidence that has been introduced that Full Play *knowingly* or *intentionally* entered into an agreement to cause another to breach a fiduciary duty, as is required to sustain a charge for conspiracy to commit honest services fraud. Not only is there no evidence in the record demonstrating that a fiduciary duty held by the soccer executives was ever communicated to Full Play, but there is also ample evidence to the contrary—that Full Play was continually given affirmative reasons to believe that the conduct at issue in this case was consistent with local and industry business practices, sanctioned by CONMEBOL.

While it is true that "whatever the school of thought concerning the scope and meaning of § 1346, it has always been 'as plain as a pikestaff that' bribes and kickbacks constitute honest-services fraud," it is also true that the bribe or the kickback alone is not enough. *Skilling*, 561 U.S. at 413 quoting *Williams v. United States*, 341 U.S. 97, 101 (1951).[1] Indeed, the Court in *Skilling*, in discussing the concept of fair notice to defendants, immediately after notes the "statute's *mens rea* requirement." *Skilling*, 561 U.S. at 414; *see also United States v. Walker*, 191 F.3d 326, 334 (2d Cir. 1999) ("Proof of fraudulent intent, or the specific intent to harm or defraud the victims of the scheme, is an essential component of the 'scheme to defraud' element."); *Screws v. United States*, 325 U.S. 91, 100 (1945) ("…something more is required than the doing of the act proscribed

---

[1] Full Play agrees with You Honor's statement in this Court's motion to dismiss opinion that "Section 1346…equally reaches bribers and bribees, even if it is only the bribees that have the fiduciary relationship. Doc. No. 1645 at 15 citing *United States v. Urchinoli*, 613 F.3d 11, 17-18 (1st Cir. 2010). What also reaches both "bribers and bribees" is the requirement that the government prove that a defendant acted with the requisite state of mind.

4

by the statute"). "To prove conspiracy, the government must show that the defendant agreed with another to commit the offense; that he knowingly engaged in the conspiracy with the specific intent to commit the offenses that were the objects of the conspiracy; and that an overt act in furtherance of the conspiracy was committed." *United States v. Samaria*, 239 F.3d 228, 234 (2d Cir. 2001) (quoting *United States v. Monaco*, 194 F.3d 381, 386 (2d Cir. 1999)).

The government introduced evidence regarding the existence of a CONMEBOL Code of Ethics, which was adopted in December 2013, as well as the existence of FIFA Codes of Ethics and Statutes. By this time, all three contracts to which Full Play Group is a signatory with CONMEBOL had been executed. However, whether this code both created a fiduciary duty that encompasses the behavior at issue in this case and whether the CONMEBOL executives were aware of any fiduciary duty that they may have been violating is not necessary to decide in order to dismiss the charge against Full Play. This is so because the *only* state of mind that matters is that of the defendant. *United States v. Avenatti*, 432 F.Supp.3d 354, 365 (S.D.N.Y. 2020) ("In short, the focus of bribery-based honest services fraud is the defendant's state of mind and his understanding that there is a quid pro quo exchange.") (quoting *United States v. Silver*, No. 15 Cr. 93(VEC), 2018 WL 4440496, at *6 (S.D.N.Y. Sept. 17, 2018)).

There is absolutely no evidence introduced in the trial that Full Play Group was ever made aware of a code of ethics or any other source of a fiduciary duty that the soccer executives may have had. In the absence of that duty being communicated to Full Play, Full Play could not have possibly had the *mens rea* to "knowingly and intentionally" enter into a conspiracy "to defraud CONMEBOL, FIFA, and the constituent organizations,…including…of their respective rights to

5

honest and faithful services." *E.g.*, Indictment ¶ 34.[2] It is simply impossible for a defendant to "knowingly" enter a conspiracy to achieve a purpose which is not known to that defendant.

Although evidence has been introduced at trial that the FIFA Code of Ethics was in place by 2010 and may have been communicated to Federation and CONMEBOL executives and officers, there is similarly no evidence that this code or its conditions or requirement was communicated or provided to Full Play Group. Indeed, the FIFA witness testified that the recipients of the code were not required to send it to others like Full Play Group, and that does appear to be the case. What is certain is that there is no evidence that it was, in fact, sent to Full Play Group. Additionally, as noted herein and throughout the trial, Full Play Group did not engage in any negotiations for a FIFA contract at any time. While we understand that certain officials may be bound by this code during the relevant time frame, the obligations set forth in the code were never communicated to our client, and thus, the existence of this code cannot be relied on upon by the government to satisfy the *mens rea* requirement of the statute as there is no evidence that it was ever made known to Full Play Group.

Although it is not the defendant's burden to sustain, and the absence of evidence regarding any duty being communicated to Full Play is dispositive, the evidence additionally has demonstrated that Full Play had affirmative reasons to believe that the payments being made were not violative of any sort of code or duty at CONMEBOL or the federations. For example, with respect to the charged Copa Libertadores scheme, the government introduced two exhibits which demonstrated that T&T Sports Marketing was directed to make payments into accounts for two

---

[2] As for the allegation in the indictment that Full Play entered into a conspiracy to defraud FIFA, the evidence adduced at trial very clearly revealed the lack of connection between Full Play and FIFA. Full Play never contracted with FIFA, and any alleged potential detriment to the organization that the government may allege, would not have affected FIFA. For example, the FIFA representative witness was asked whether Full Play was ever involved in bidding for FIFA rights. "Q: As you sit here today, do you know whether Full Play submitted any proposal ever with regards to any FIFA tournaments or right? A: I do not." Tr. 308:16-19.

6

companies transparently owned by Full Play Group[3] to then, in turn, make payments to the individual presidents came from Mr. Nicolás Leoz, the President of CONMEBOL, in his official capacity, on CONMEBOL letterhead. *See* GX-1811-T and 1815-T.

The only role Full Play Group is alleged to have played in the Copa Libertadores conspiracy is making payments to the "Group of Six" as it is uncontested and there is no evidence that Full Play Group played any role in negotiating any of the broadcast or marketing rights for these tournaments or for the Copa Sudamerica tournament. It defies logic to hold an organization criminally responsible for making payments that they were, per the government's own exhibits "irrevocably instructed" to make by the organization's President, twice, on the organization's letterhead. *See* 1811-T and 1815-T. Surely a defendant cannot be convicted for defrauding that organization for following the explicit direction of the organization's president. As demonstrated by the government's own's cooperating witnesses, the manner in which the organization's executives received their payments was entirely consistent with the manner in which the organization itself paid its executives and Full Play itself paid its executives for their services.

It is not uncommon for contracts to require a third-to comply with their code of conduct or ethics and provide language setting forth basic terms that the contracting party must abide by. Rather than put our client on notice of the presence of a fiduciary duty or relevant codes of ethics, representations were made to Full Play by the executive committee members of CONMEBOL that "[t]his Agreement does not violate any laws, rules, or regulations to which CONMEBOL may be subject, and does not breach any contractual obligations whatsoever." *See, e.g.*, GX-164-T. Further, the representations and warranties in the agreements state that the agreements' "terms and

---

[3] *See* Tr. at 5340, "Q: Right. So, it's disclosed to Bank Hapoalim for Cross Trading that Full Play Group is the contact point, at least these individuals for e-mail addresses, for the Cross Trading Bank Hapoalim account, correct?" "A: That's correct."

7

scope are established herein," indicating that the agreement is the extent of what the parties are contracting to and what Full Play's conduct with respect to the contract would be governed by. *Id*. These provisions not only fail to put Full Play on notice of the existence of any sort of prohibition to make payments to executives, which Full Play did not conceal do the executive committee or officers, but they also explicitly inform Full Play that none exists if it is not found in the contracts, which it is not.

The open behavior of the CONMEBOL executives regarding their financial affairs and the documents produced on behalf of CONMEBOL, as well as the general business customs practiced by those in the soccer industry in South America, make clear that Full Play had no reason to believe that its conduct was in violation in breach of any clear and obvious fiduciary duty. This, in addition to the glaring omission of any evidence adduced by the government, who carries the burden, demonstrating any bad intent on the part of Full Play make clear that the necessary specific intent has not been established. Any other "specious inferences" that the jury may come away with would be based on nothing more than rank speculation rather than the evidence actually presented in this case and cannot rationally satisfy the government's burden to prove state of mind beyond a reasonable doubt. *Valle*, 807 F.3d. at 515.

> 2. *The Government Has Failed to Prove that the Source and Scope of the Fiduciary Duty Necessary for the Charges Encompass the Relevant Conduct*

The government has additionally failed to meet its burden with respect to establishing that the source and the scope of the fiduciary duty encompass the conduct at issue in this case. Separate and apart from whether Full Play had the requisite knowledge regarding the existence of a fiduciary duty that would give rise to the establishment of Full Play's *mens rea* is the issue of whether the fiduciary duty has been established in the first place.

8

It is clear that the presence of a fiduciary duty is an element of honest services fraud. *See Skilling*, 561 U.S. at 407 (describing the "solid core" of honest services fraud as "offenders, who in violation of a fiduciary duty, participated in a bribery or kickback scheme"). Although the source and scope of a fiduciary duty in the context of a bribery or kickback scheme are often beyond debate, that is not the case here. Justice Scalia's concurring opinion in Skilling emphasized the lingering ambiguities in § 1346, pointing out that "the nature and content of the fiduciary duty central to the 'fraud' offense" remained undefined, and that even "the source of the fiduciary obligation—whether it be positive state or federal law, or merely general principles, such as the obligations of loyalty and fidelity that inhere in the employment relationship"—was unclear. *Id*. at 417 (Scalia, J., concurring in judgment) (internal quotation marks and citation marks omitted).

Regardless of its source and scope, there has been no evidence of its existence in the presentation of the facts in this case. Two of the schemes of this case—Copa America and the Copa Libertadores—deal with rights belong to CONMEBOL. CONMEBOL is a private entity comprised of ten South American soccer federations, associated, but not a member of FIFA. The alleged conspiracy as to these claims is supposed to have commenced in 2010. The government's constant claim to a source of fiduciary duty has been the code of ethics. The evidence has been that there was no code of ethics in CONMEBOL until December 2013 (nearly four years after the conspiracy began (in a five-year conspiracy) and well after all the of relevant contracts were executed). The government points to no other fiduciary duty save for Mr. Bedoya's testimony regarding *his* belief that he owed an amorphous moral and ethical duty without any ascertainable source. Tr. 4874. This is not the same basis as a "known legal duty" as is required. Without evidence of a source, the evidence of its scope (i.e., what the duty prohibited and under what circumstances) unquestionably is lacking as well.

Prior to 2013, the only other potential sources of a fiduciary duty that the government can point to are the FIFA codes and statutes and the relationship created by virtue of the soccer executives acting on behalf of CONMEBOL and the federations. However, the government does not adduce any evidence which shows that the CONMEBOL executives were subject to the FIFA codes or statutes. In the case of a fiduciary duty being created by the executives' positions of trust within CONMEBOL, even if, the Court were to find that this created a fiduciary duty, the government still needs to define the scope of this duty to include the relevant conduct, which it has not.

Another scheme was the World Cup Qualifiers and no evidence at all has been presented as to this scheme with regards to source of duty. Mr. Bedoya was the Government's only testifying soccer executive. He testified that he did not engage in any conduct relevant to the charged offenses in relation to the World Cup Qualifiers because his federation had sold those rights to a private broadcasting company in Colombia, Caracol, prior to him becoming president of his federation.

The total lack of applicable source and scope of a cognizable fiduciary duty should render a directed verdict for Full Play.

> 3. *The Government Has Failed to Prove that the Conduct at Issue Meets the Definition of "Bribery" as Required by Both the Proposed Jury Instructions and Case Law*

After the Supreme Court's decision in *Skilling v. United States*, it is clear that the scope of honest services fraud is limited to schemes involving bribery or kickbacks. 561 U.S. 358, 409 (2010). Further, "to violate the right to honest services, the charged conduct must involve a *quid pro quo*, i.e., an 'intent to give or receive something of value in exchange for…an act." *United States v. Nouri*, 711 F.3d 129, 139 (2d Cir. 2013) (quoting *United States v. Bruno*, 661 F.3d 733, 743-44 (2d Cir. 2011). To demonstrate a *quid pro quo* agreement, the government "ha[s] to prove,

10

beyond a reasonable doubt,…that the defendant received, or intended to receive, something of value in exchange for an…act." *United States v. Silver*, 864 F.3d 102, 111 (2d Cir. 2017) (citing *Bruno*, 661 F.3d at 743-44).

Both the jury instructions in the previous trial, *United States v. Napout* and the government's proposed jury instructions in this case require the same:

> Bribery and kickbacks involve the exchange of a thing or things of value for official action by an official, in other words, a quid pro quo (a Latin phrase meaning "this for that" or "these for those"). Bribery and kickbacks also include offers and solicitations of things of value in exchange for official action, regardless of whether or not the payor actually provides the thing of value, and regardless of whether or not the payor actually provides the thing of value, and regardless of whether or not the official ultimately performs the official act or intends to do so.

*United States v. Napout*, 15-cr-152, Doc. No. 1869, page 36.

That a *quid pro quo* occurred with respect to the actions taken between Full Play Group and CONMEBOL executives has not been proven by the evidence introduced in this case with respect to the Copa America and the Friendly matches. Specifically, when discussing the contract entered into between Full Play and CONMEBOL for the Copa America tournament, Mr. Luis Bedoya—the only soccer executive to testify in this case—stated that he would have endorsed the contract, even in the absence of private payments. Tr. 4925 (Feb. 17, 2023). This testimony highlights that the payments were not material to the decision of the CONMEBOL executives to enter into the Copa America contract with Full Play—the payments and the contract were not *in exchange* for each other—there was no "this for that." The government certainly has not demonstrated Full Play's *intent* to make the payments in exchange for the contract.

There is similarly a lack of *quid pro quo* that has been established with respect to the Friendly and Qualifier matches. For the Friendly matches, Mr. Bedoya testified that despite receiving payments from Full Play, Full Play would sometimes bring him potential Friendly matches, and Mr. Bedoya would deny these matches. Tr. 4897:24-25 – 4898:1. This indicates that

11

the material factor for Mr. Bedoya in making the determination as to which Friendly games to was *not* the private payments.

Mr. Bedoya is the only witness the government called in this case to establish the necessary element, and he did not deliver. While the government does not have to call every federation witness, they do need to prove every element beyond a reasonable doubt, and here, they have failed.

**B.      *Absent the Underlying Wire Fraud Conspiracy Charge, the Money Laundering Conspiracy Charge Must Similarly be Dismissed***

Full Play is charged with "knowingly and intentionally conspire[ing] to transport, transmit and transfer monetary instruments and funds…with the intent to promote the carrying on of specified unlawful activity, to wit: wire fraud" in violation 18 U.S.C. § 1956(a)(2)(A). Indictment ¶¶ 36, 40, 44. As discussed *supra*, the government has adduced absolutely no evidence to establish that Full Play had the requisite state of mind to enter into a conspiracy to commit wire fraud. If Full Play did not have the requisite state of mind to commit the underlying "unlawful activity," it logically follows that it could not possibly have the intent to "promote" that unlawful activity.

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant Full Play's motion for a judgment of acquittal and grant such further and other relief that may be just and proper.

Dated: February 23, 2023
       New York, New York

Respectfully submitted,

BAKER & HOSTETLER LLP

By:   */s/ Carlos F. Ortiz*
     Carlos F. Ortiz
     cortiz@bakerlaw.com

     Kayley B. Sullivan
     kbsullivan@bakerlaw.com

     45 Rockefeller Plaza
     14th Floor
     New York, NY 10111

NORTON ROSE FULBRIGHT US LLP

By:   */s/Mayling C. Blanco*
     Mayling C. Blanco
     mayling.blanco@nortonrosefulbright.com

     Katey L. Fardelmann
     katey.fardelmann@nortonrosefulbright.com

     1301 Avenue of the Americas
     New York, New York

          Attorneys for Defendant
          *Full Play Group S.A.*