

SIDLEY AUSTIN LLP
787 SEVENTH AVENUE
NEW YORK, NY 10019
+1 212 839 5300
+1 212 839 5599 FAX

MLEVY@SIDLEY.COM
+1 212 839 7341

May 13, 2026

**By ECF**

The Honorable Pamela K. Chen
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

>      Re:    *United States v. Webb et al.*, 15 Cr. 252 (PKC)
>              *CONCACAF's Letter to the Court Pursuant to the Court's April 17, 2026*
>              *Scheduling Order*

Dear Judge Chen:

The Confederation of North, Central America and Caribbean Association Football ("CONCACAF") respectfully submits this letter pursuant to the Court's April 17, 2026 Scheduling Order inviting briefing from interested parties regarding the Government's motion to dismiss the indictment as to defendants Hernan Lopez and Full Play Group, S.A. ("Defendants") and its potential effect on other defendants' convictions. CONCACAF takes no position on the Government's decision to dismiss the indictment as to Full Play and Lopez. However, CONCACAF has an interest in the finality of Petitioners' convictions and those of other defendants who victimized CONCACAF, and in particular the millions of dollars in forfeiture that CONCACAF—through the World Football Remission Fund—has received and put to good use. CONCACAF submits this letter to address the issues raised by the Court.

**I.      The Second Circuit's Reasoning in *United States v. Lopez* Remains Persuasive Authority**

Although the Supreme Court's vacatur of the Second Circuit's decision in *United States v. Lopez*, 143 F.4th 99 (2d Cir. 2025), means the decision is no longer binding, it still reflects the Second Circuit's most recent analysis of the honest-services fraud statute in the context of the facts at issue here and remains available as persuasive authority. *See Brown v. Kelly*, 609 F.3d 467, 477 (2d Cir. 2010) (treating prior Second Circuit caselaw as "persuasive authority" despite the Supreme Court's vacatur). In this respect, the *Lopez* decision carries effectively the same persuasive weight in this Court as non-binding summary orders from the Second Circuit or the decisions of other circuits, particularly since the facts are aligned. *See Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 101 n.8 (2d Cir. 2020) (relying on nonprecedential summary order where "the facts of [the case] are particularly apposite" because although summary orders do not have precedential effect that "does not mean that the court considers itself free to rule differently in similar cases") (cleaned up).

# SIDLEY

May 13, 2026
Page 2

Nothing in either the Supreme Court's vacatur or the Government's own filings in the Supreme Court indicates that the *Lopez* decision was in error. *See Lopez v. United States*, — S. Ct. —, 2026 WL 79861 (mem.) (Jan. 12, 2026) (vacating and remanding in light of the pending motion to dismiss the indictment); Brief for the United States, *Lopez v. United States*, No. 25-396, 2025 WL 3645624, at *3 (U.S. Dec. 9, 2025) (seeking vacatur and remand based on pending Rule 48(a) motion without addressing merits). Contrary to Petitioners' submissions, it is not "clear" that the Government reversed its position on the breadth of the honest services fraud statute. Rather, the Government has broad leeway to decide whether to dismiss an indictment, and in this case has done so based on its determination that the "interests of justice" weighs in favor of not committing further resources to these two defendants' convictions. *See* Gov't Letter Mem. at 2–3 (ECF 2076); *see also Petite v. United States*, 361 U.S. 529, 530–31 (1960) (recognizing the Government's discretion to dismiss "wholly apart from the question of the legal validity" of the underlying theory). The Solicitor General's decision not to defend the judgment does not constitute a concession that the Second Circuit's honest-services analysis was wrong; it reflects only the Government's independent judgment about how to deploy its resources.

Likewise, the Court need not resolve the honest-services question to decide the pending motion to dismiss. The issue before the Court is whether the Government should be granted leave to dismiss the indictment as to Lopez and Full Play under Rule 48(a), not the scope of the federal honest services fraud statute. The Court can grant or deny the instant motion without adjudicating the scope of § 1346.

## II.    Nothing That Has Happened or Will Happen in This Case Could Support Coram Nobis Relief for Petitioners

Whatever the Court decides on the Government's Rule 48(a) motion, nothing about that decision—or any other event in this case—can satisfy the threshold legal-change requirement for coram nobis. That is true for three independent reasons.

Coram nobis is an "extraordinary remedy [allowed] only under circumstances compelling such action to achieve justice." *United States v. Morgan*, 346 U.S. 502, 511 (1954). That requires, at minimum, binding precedent establishing that the petitioner was convicted of something that is not a crime. Thus, courts within the Second Circuit grant coram nobis to vacate convictions only when intervening Supreme Court or appellate decisions expressly invalidate a given theory of criminal liability. *See Martignoni v. United States*, 2011 WL 4834217, at *9–10 (S.D.N.Y. 2011) (granting coram nobis and vacating petitioner's honest services fraud conviction after *Skilling v. United States*, 561 U.S. 358 (2010), invalidated the undisclosed self-dealing theory of liability); *Parietti v. United States*, 2022 WL 3139623, at *2 (S.D.N.Y. Aug. 5, 2022) (granting coram nobis after the Second Circuit invalidated the LIBOR manipulation theory in *United States v. Connolly*, 24 F.4th 821 (2d Cir. 2022)). Nothing in this case does or could meet that standard.

First, the Government's Rule 48(a) motion is an exercise of prosecutorial discretion, not a legal ruling on the merits of any theory of criminal liability. The motion is directed solely at the

Sidley Austin (NY) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.

# SIDLEY

May 13, 2026
Page 3

two named defendants in this case, and the Government has confirmed that its proposed dismissal is not intended to have any effect on other defendants' convictions. *See* Gov't Letter Mem. at 3 (ECF 2076). Whatever the Court decides on the motion, that decision will not produce the kind of binding, conclusive Supreme Court or appellate decision that the coram nobis standard requires.

Second, even if the Court's disposition of the pending motion to dismiss in this case involved a legal ruling on the scope of § 1346—and it should not—a single district court ruling cannot satisfy the coram nobis standard for other defendants. In the analogous Section 2255 context, the Supreme Court has recognized that the "intervening change in law" requirement will include decisions of the courts of appeals. *See Davis v. United States*, 417 U.S. 333, 342 (1974). But there appears to be no similar decision recognizing a district court decision as capable of working such a change. The standards governing coram nobis are borrowed from federal habeas, meaning the same limitation applies. *See United States v. Travers*, 514 F.2d 1171, 1173 n.1 (2d Cir. 1974) ("the standards applied in federal coram nobis are similar" to those under § 2255). Thus, coram nobis is only available where "controlling authority" has changed the law, *United States v. Spellissy*, 842 F. App'x 516, 520 (11th Cir. 2021), which excludes basing coram nobis on a district court's ruling.

Third, even if there were a binding Second Circuit or Supreme Court decision with the same holding as this Court's September 1, 2023 decision on the defendants' post-trial motions, that holding would not reach the convictions of defendants whose offenses victimized CONCACAF, and it would not reach convictions resting on guilty pleas in which the defendants allocuted to facts rather than to a particular legal theory.

By its own terms, the Court's September 1, 2023 decision does not reach defendants who victimized CONCACAF, and certainly not clearly enough to meet the standard for coram nobis (as opposed to merely impermissibly relitigating final convictions). In its decision, the Court held that § 1346 does not extend to "bribery of foreign employees of foreign non-government employers." *United States v. Full Play Group, S.A.*, 690 F. Supp. 3d 5, 37 (E.D.N.Y. 2023). But the Court expressly distinguished *United States v. Bahel*, 662 F.3d 610 (2d Cir. 2011), because there "the defendant had a fiduciary duty to his U.S.-headquartered employer, the United Nations." *Id.* at 39 n.32. Even under the Court's reasoning, therefore, the relevant variables under *Bahel* include where the conduct occurred, where the victim was headquartered, where the victim was entitled to receive honest services, and where its support came from. *See id.* at 27. None turn on the victim's formal corporate domicile, as the coram nobis Petitioners seem to contend. *See* Petitioners' Letter at 2 n.1 (ECF 2089). The United Nations has no corporate domicile, and *Bahel* still treated it as if it was a domestic entity.

For what it is worth, the Second Circuit's now vacated (but still persuasive) decision showed that it and this Court did not disagree on this point. The defendants there argued that *Bahel* did not apply to their conduct because CONMEBOL is headquartered in Paraguay. *Lopez*, 143 F.4th at 112. The panel responded that, even if that mattered, "the victim of the Copa

Sidley Austin (NY) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.

# SIDLEY

May 13, 2026
Page 4

América Centenario scheme, CONCACAF, *is* headquartered in the United States." *Id.* (emphasis in original).

CONCACAF falls within the ambit of *Bahel*, which this Court recognized is still good law. CONCACAF has long been headquartered in the United States—first in New York and then in Miami—and is registered to do business in Florida. The schemes against it included (but were not limited to) the 2016 Copa América Centenario, hosted in the United States and co-organized by CONCACAF. And the bribery payments ran through U.S. wires and U.S. financial channels. Thus, even under this Court's decision and its interpretation of *Bahel*, defendants who victimized or participated in a conspiracy that victimized CONCACAF committed a cognizable crime. At minimum, they cannot demonstrate that they did not with the type of clarity necessary for coram nobis relief.

Finally, as noted by the Government, the various other defendants' convictions do not rest on a single legal theory. Defendants in the broader case were charged under multiple theories of fraud, including both honest-services fraud and money-or-property fraud. Gov't Letter Mem. at 3 (ECF 2076). Defendants who pleaded guilty allocuted to facts rather than to a particular legal theory. *Id.* at 4. Even a conclusive, binding decision narrowing § 1346 would not invalidate convictions that rest on alternative or independent theories. The Court should not treat these settled convictions as though they rise or fall with a single legal theory.

## III. Even If Petitioners Could Establish Entitlement to Coram Nobis, They Could Not Recover Financial Penalties Already Paid

Even if Petitioners could clear the threshold standard described in Section II—and they cannot—a grant of coram nobis would not entitle them to recover financial penalties they have already paid in full. Coram nobis exists to address "continuing legal consequences of the petitioner's conviction," generally where the petitioner is no longer serving a sentence so as to be able to seek habeas review under 28 U.S.C. § 2255. *Porcelli v. United States*, 404 F.3d 157, 158 (2d Cir. 2005) (citing *Fleming v. United States*, 146 F.3d 88, 90 (2d Cir. 1998)). Financial penalties that have already been paid cannot constitute continuing collateral consequences supporting coram nobis relief. *See Porcelli v. United States*, 2001 WL 34894717, at *4 (E.D.N.Y. 2001) ("[A]s the past payment in full of Porcelli's fine in this case does not present a continuing collateral consequence of Porcelli's conviction, the fine does not give this Court coram nobis jurisdiction."); *Shen v. United States*, 2022 WL 229371, at *4 (E.D.N.Y. 2022) ("Petitioner has no outstanding obligations with respect to the restitution and, thus, those obligations do not constitute continuing consequences of his conviction.") (cleaned up); *Slaine v. United States*, 2018 WL 8737886, at *5 (S.D.N.Y. 2018) (because "monies [] surrendered as a result of the forfeiture, fine, and special assessment ordered in this case . . . have been paid in full and Petitioner has no outstanding obligations with respect to any of them, those obligations do not constitute 'continuing' consequences of his conviction") (internal citations omitted). Cases relied on by Petitioners in their petitions in which the Government volunteered to return money, *see, e.g.*, *United States v. Mandel*, 862 F.2d 1067, 1075 n.13 (4th Cir. 1988), or which were decided in the doctrinally distinct abatement context, *see, e.g.*, *United States v. Brooks*, 872 F.3d

Sidley Austin (NY) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.

# SIDLEY

May 13, 2026
Page 5

78, 88 (2d Cir. 2017), do not support a different result. *See* Napout Petition at 14 (ECF 2035); Li Petition at 9–10 (ECF 2040).

Beyond the legal insufficiency of Petitioners' claim, any order purporting to unwind these financial consequences would be unworkable. The funds forfeited by various defendants have already been distributed by the DOJ to the World Football Remission Fund, which was established in cooperation with the DOJ. That fund has in turn distributed the proceeds in accordance with DOJ-imposed conditions, funding youth development, women's football, and community programs serving thousands of participants across the Western Hemisphere. CONCACAF cannot reasonably facilitate the return of these funds from their recipients. Such a result would fall well beyond the scope of anything contemplated by the Government's discretionary motion to dismiss the indictment of two defendants, and well beyond the equitable principles governing coram nobis relief.

## IV.    CONCACAF Should Be Permitted to Be Heard as a Victim in Any Future Proceedings

Finally, CONCACAF respectfully requests the opportunity to be heard in connection with any future proceedings relating to the coram nobis petitions. The CVRA provides that "[i]n any court proceeding involving an offense against a crime victim, the court shall ensure that the crime victim is afforded the rights described in subsection (a)," including the right "to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding." 18 U.S.C. § 3771(a)(4), (b)(1). Petitioners maintain that the CVRA does not apply because, in their view, the underlying conduct was not a federal crime and there are therefore no victims. *See* Petitioners' Letter at 3 (ECF 2089). That position presupposes the very relief Petitioners seek. As matters stand, there are final convictions—convictions to which the Petitioners themselves pleaded guilty or of which they were found guilty at trial. Any attempt to undo those convictions implicates the rights of the victims the Court has already identified, and the CVRA ensures those victims are heard before any such relief is granted.

Respectfully submitted,

Michael A. Levy

cc: All counsel of record (by ECF)

Sidley Austin (NY) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.