**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

EDUARDO LI,
Petitioner,

v.

UNITED STATES OF AMERICA,
Respondent

No. 15-cr-00252 (PKC)

SUPPLEMENTAL REPLY MEMORANDUM IN SUPPORT OF WRIT OF CORAM NOBIS

# REPLY MEMORANDUM IN SUPPORT OF WRIT OF CORAM NOBIS

Law Office of Samuel Rosenthal
11 Broadway, Suite 615
New York, New York 10004
sam@rosenthal-lawfirm.com
646-822-0001

## Table of Contents

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 2

THE WRIT OF CORAM NOBIS SHOULD BE GRANTED .......... 2

***I. THE GOVERNMENT'S FLIP-FLOP FAILS TO ADDRESS THE ESSENTIAL BASIS FOR THIS COURT'S RULING IN LOPEZ .......... 2***

A. Authorities Cited by the Government Fail to Undermine This Courts Previous Holdings3

B. The Government Fails to Deal With the Fact that The Case Against Mr. Li Involved Foreign Commercial Bribery .......... 5

C. The Court Should Reject the Government's Demand for Disparate Treatment of Mr. Li from the *Lopez* Defendants .......... 7

***II. MR. LI'S PETITION SATISFIES THE OTHER REQUIREMENTS FOR ISSUANCE OF A WRIT OF CORAM NOBIS .......... 10***

A. Mr. Li's Petition Was Timely Based on a Change in the Law. .......... 10

B. Mr. Li Continues to Suffer Concrete Harm from the Conviction .......... 12

***III. THE MONIES PAID BY MR. LI AS A RESULT OF HIS CONVICTION SHOULD BE RETURNED TO HIM .......... 14***

CONCLUSION .......... 15

Cases

*Ciminelli v. United States*, 598 U.S. 306, (2023) ........ 2
*Edwards v. United States*, 564 F.2d 652, 654 (2d Cir. 1977) ........ 10
*Nelson v. Colorado*, 581 U.S. 128, 135-36 (2017) ........ 13-14
*Parietti v. United States*, No. 16-CR-373 (PAE), 2022 WL 3139623, at *3 & n.2 (E.D.N.Y. .... 14
*Percoco v. United States*, 598 U.S. 319 (2023) ........ 2
*United States v. Avenatti*, 81 F.4th 171 (2d Cir. 2023) ........ 3
*United States v. Brooks*, 872 F.3d 78, 88-90 (2d Cir. 2017) ........ 14
*United States v. Christopher*, 273 F.3d 294, 298 (3d Cir. 2001) ........ 14
*United States v. Holt*, No. 2:05-CR- ........ 13
*United States v. Libous*, 858 F.3d 64, 67 (2d Cir. 2017) ........ 14
United States v. *Mandel*, 862 F.2d at 1075 862 F.2d 1067& 1075, n.13 (4th Cir. 1989) ........ 14
*United States v. Morgan*, 346 U.S. 502, 505 & n.6 (1954). ........ 8
*United States v. Panarella*, No. 00–655, 2011 WL 3273599, at *10 (E.D. Pa. ........ 13
*United States v. Travers*, 514 F.2d 1171, 1176 (2d Cir. 1974) ........ 10

**Statutes:**

28 U.S.C. § 165 ........ 1
8 U.S.C. § 1227(a)(2)(A)(iii) ........ 12

Petitioner Eduardo Li ("Petitioner" or "Mr. Li"), through counsel, submits this Reply Memorandum of Law in support of his petition for issuance of a writ of *coram nobis* pursuant to this Court's Order authority to issue such a writ under 28 U.S.C. § 165. [1]

**PRELIMINARY STATEMENT**

Mr. Li demonstrated in his supplemental memorandum that the writ of *coram nobis* should be granted based on the Court's decisions in *United States v. Full Play Grp., S.A.*, 690 F. Supp. 3d 5, 8, 24-25 (E.D.N.Y. 2023) (Lopez and Full Play referenced herein as "*Lopez*" or "*Lopez* case."). *See* ECF 2066. As reflected in that Memorandum, there is no principled basis for distinguishing between dismissal of the indictments in the *Lopez* case and the situation facing Mr. Li.

Mr. Li's entire conviction was based on a theory that he could be convicted of depriving the Costa Rican soccer foundation, FEDEFUT, of its right to Mr. Li's honest and faithful services – the same theory relied upon and then abandoned by the Government in the *Lopez* case. The Government evidently agreed with this Court ruling in the *Lopez* case, that so-called "honest and faithful services" crime has long-been whittled away by Supreme Court cases, making clear that foreign commercial bribery which deprived an entity of its right to the honest and faithful services of its employees did not constitute a crime under U.S. law. It thus became clear from Supreme Court rulings that no federal crime could be structured based on foreign commercial bribery even if the prosecutor attached the "honest and faithful services" label to the Indictment. Based on this Court's decision in *Lopez*, Mr. Li was convicted of something which simply is not

[1] Li urges granting of his Petition based also on the arguments raised by other-defendants in their respective petitions, which he adopts herein.

a federal crime. None of the Government's arguments for treating Mr. Li differently from the *Lopez* defendants have merit.

## ARGUMENT

## THE WRIT OF CORAM NOBIS SHOULD BE GRANTED

### I. THE GOVERNMENT'S FLIP-FLOP FAILS TO ADDRESS THE ESSENTIAL BASIS FOR THIS COURT'S RULING IN *LOPEZ*

In *Lopez* this Court found that the Supreme Court's decisions in *Percoco v. United States*, 598 U.S. 319 (2023) and *Ciminelli v. United States*, 598 U.S. 306, (2023) prohibited an expansion of the federal wire fraud statutes, and more specifically, that "the honest services wire fraud statute does not encompass foreign commercial bribery as charged against Defendants." *Id.* at 24-25. The Court cited "the absence of precedent applying honest services wire fraud to foreign commercial bribery" to conclude that "§ 1346 does not criminalize the conduct alleged in this case and . . . therefore the evidence at trial was insufficient to sustain Defendants' convictions under that statute." *Id.* at 25; *see also id.* ("[N]one of the Government's appeals to common law, state law, civil law, foreign law, or codes of conduct, overcome the basic fact that there is no precedential authority to support the application of *this* federal criminal statute, § 1346, to foreign commercial bribery. . . .").

Having just argued that dismissal of the indictments against the *Lopez* defendants warranted dismissal of the indictments, the Government now argues that Mr. Li deserves a different outcome. The Government's argument rests on two fallacies. First, as demonstrated below, the authorities cited by the Government do nothing to undermine this Court's previous holding regarding the extension of mail and wire fraud to foreign commercial bribery based on the deprivation of honest services. Second, and as also demonstrated below, the Government falls back on the argument that the case against Mr. Li actually did not involve foreign

commercial bribery, but was actually a domestic bribery case. As shown below, neither argument has merit.

### A. Authorities Cited by the Government Fail to Undermine This Courts Previous Holdings

First, the Government urges this Court to adopt Second Circuit holdings which pre-dated *Ciminelli* and *Percoco*. See Govt Opp. at 19, 25. It even claims that the Court should return to its pre-*Ciminelli* and *Precoco* rulings in the *Lopez* cases, see Govt Opp. at 34-35, ignoring this Court's extensive and careful analysis as to why *Ciminelli* and *Precoco* changed the legal landscape.

Second, the post-*Ciminelli* and *Percoco* decision cited by the Government, *United States v. Avenatti*, 81 F.4th 171 (2d Cir. 2023), did not even deal with foreign commercial bribery. The entire discussion in *Avenatti* of *Ciminelli* and *Percoco* is confined to a footnote. *See Avenatti*, *supra*, n. 27. That footnote discussion falls short of a fully considered or reasoned decision on that question.

The Government goes to great lengths also in arguing that the GVR Order has no precedential value. But even without considering the Government's highly unusual actions, it simply fails to offer any argument why *Ciminelli* and *Percoco* do not apply here. Notwithstanding the Government's effort to trivialize those decisions, they clearly support this Court's rationale, initially, in granting the motions for judgment of acquittal, and second, dismissing the indictments, as requested by the Government. The Government's argument rings hollow when there is no conceivable (or legitimate) reason for its abrupt about-face in the *Lopez* case, other than the Supreme Court's decisions in *Ciminelli* and *Percoco.*

Nor is it persuasive to argue that the issue in *Ciminelli* was the definition of "property" required to sustain a wire fraud conviction, without acknowledging the direct relationship that the issue has for the present case. Govt Br. at 34. When it comes to *Percoco,* the Government claims that the decision has no applicability here because it simply dealt with whether the defendant there violated his duty to provide honest services to the public, while here the Government is claiming that Li owed the same duty to FIFA and CONCACAF. Govt Opp. at 34. The Government fails to offer any credible basis for distinguishing those two situations.

Moreover, the Supreme Court's decision in *Kousisis v. United States*, 605 U.S. 114, 118, 120-21, 124 (2025) is cited by the Government without addressing language relevant to the issue now before the Court, namely the scope of the decision in *Ciminelli*. The Court in *Kousisis* held:

> Although the lower courts once interpreted the phrase "money or property" as something of a catchall, we recently reiterated that the federal fraud statutes reach only "traditional property interests." *Ciminelli*, 598 U.S. at 316, 143 S.Ct. 1121. Schemes that target the exercise of the Government's regulatory power, for example, do not count. See Kelly, 590 U.S. at 400, 140 S.Ct. 1565; see also Cleveland v. United States, 531 U.S. 12, 23-24, 121 S.Ct. 365, 148 L.Ed.2d 221 (2000). Nor do schemes that seek to deprive another of "intangible interests unconnected to property." *Ciminelli*, 598 U.S. at 315, 143 S.Ct. 1121; *see also McNally*, 483 U.S. at 356, 107 S.Ct. 2875.3 And in all cases, because money or property must be an object of the defendant's fraud, the traditional property interest at issue "must play more than some bit part in a scheme." Kelly, 590 U.S. at 402, 140 S.Ct. 1565. ***Obtaining the victim's money or property must have been the "aim," not an "incidental byproduct," of the defendant's fraud.*** Id., at 402, 404, 140 S.Ct. 1565.

*Kousisis,* at 1391 (emphasis added).

Consequently, Mr. Li simply committed no crime under the wire fraud statute if he simply deprived FIFA or CONCACAF of their right to Mr. Li's honest and faithful services. As the Rule 11 colloquy reflects, , the Court specifically instructed Mr. Li that he was being charged with "honest services wire fraud," without any suggestion that Mr. Li's conduct not only

involved domestic, rather than foreign bribery, the main object of which was to obtain property belonging to FIFA and CONCACAF. See R. 11 Hearing Tr., 10/7/2026 at 7-8.

**B. The Government Fails to Deal With the Fact that The Case Against Mr. Li Involved Foreign Commercial Bribery**

As this Court correctly held in *Lopez,* it is not enough to have sought money or property through a bribery scheme; the scheme cannot have consisted of a foreign commercial bribery. According to this Court's reasoned opinion in the *Lopez* cases, the honest and faithful services fraud theory does not apply to criminalize foreign commercial bribery. That is precisely what was charged and at issue when Mr. Li pled guilty. The Government's own description of the charges against Mr. Li suffices to show that this is a classic case of foreign commercial briber. See Govt Opp. at 6.

The Government tries to inject into Mr. Li's plea enough facts to show that there is some – albeit miniscule – relationship with the United States. But the minimal contacts identified by the Government fail to turn this case into one involving domestic bribery, and beyond that, offers no basis for distinguishing Mr. Li from the *Lopez* defendants.

The Government ignores the Court's observations about Mr. Li's specific conduct reflecting that his crimes were "smaller acts of theft or bribery" than those involving other defendants, and were "of a different sort." Sentencing Tr., Nov. 13, 2018, at 33. Instead, the Government argues that Mr. Li pled guilty to a RICO and conspiracy offense, and that some of the evidence touched upon activities on U.S. soil. But none of the facts surrounding Mr. Li's conviction suggested this was anything other than a foreign commercial bribery prosecution.

For one thing, FIFA is not a U.S. organization, but is based in Switzerland. And while the Government alleges that CONCACAF is headquartered in the United States, see Govt Opp.

at 39, as its name indicates, it is a Confederation of North, Central America and Caribbean Association Football, with 41 member associations.

But more importantly, there is no allegation that CONCACAF was deprived of any money or property. It is named was named in the Indictment only because the Costa Rican football association, FEDEFUT, was a member. There was no allegation, and certainly no admission by Li in the Rule 11 colloquy, that the marketing rights or uniforms at issue in the fraud charged against Mr. Li belonged to CONCACAF, or that CONCACAF was deprived of money or property by virtue of any payments to Li regarding marketing rights or uniforms purchased by FEDEFUT.

In fact, the Rule 11 colloquy emphasized that any isolated conduct having any nexus with the United States, such as the use of the Miami bank account, failed to alter the basic nature of this case: one involving foreign commercial bribery aimed at depriving FEDEFUT of its right to Li's honest services. For instance, while funds relating to a payment may have originated in the United States, the theory of the prosecution was that those funds were used to commit foreign bribery. The Court instructed Mr. Li during his plea hearing:

> you were involved in a wire transfer of $150,000 from Media World account at a bank in Miami, Florida, Bank of America, and that the wire transfer went to an account in the name of Consulting Company A, which is also a company that is identified merely by that name in the superseding indictment, which was located in Panama, and the account was for, I guess, a group called Multi Bank in Panama.

Rule 11 Tr. at 8.

Mr. Li's own words at the Rule 11 hearing further confirm that this was a foreign commercial bribery case involving deprivation of FEDEFUT of its right to Mr. Li's honest and faithful services. Mr. Li testified at the Rule 11 hearing that he "organiz[ed] the 2014 FIFA under 17 Women's World Cup soccer tournament, which was held in Costa Rica, and for

supervising the local organizing committees for that tournament"); awarding media rights in Costa Rica, *id.*, at 23 (Li testifying that he agreed to use his "influence over awarding contracts to sports marketing companies to purchase from FEDEFUT the media and marketing rights to the Costa Rican soccer team's World Cup qualifier matches), and arranging with a company in Panama or for team uniforms for Costa Rican players. *Id.*, at 25 (Li testifying he "worked with intermediaries from Panama who negotiated with various different uniform sponsors on FEDEFUT's behalf.").

It makes no difference that Mr. Li pled guilty to a Superseding Indictment filed on November 25, 2015, which charged him with entering into a racketeering conspiracy ("RICO"), in violation of 18 U.S.C. § 1962(d) (Count One), as well as a conspiracy to commit wire fraud, and substantive counts of wire fraud, in violation of 18 U.S.C. §§ 1349 and 1343, respectively. ECF 440-42. The Government ignores the fact that the gist of those charges was that Li defrauded a foreign soccer association, FEDEFUT, of Li's "honest services" by engaging in foreign commercial bribery.

### C. The Court Should Reject the Government's Demand for Disparate Treatment of Mr. Li from the *Lopez* Defendants

The Government itself has recognized that the Court must take into account "the interests of justice," as shown by its application to dismiss the *Lopez* indictments. The ultimate determination how to serve the "interests of justice," however, lies with the Court, not the prosecution. In addressing Mr. Li's Petition the Court should reject the Government's demand that the Court cede that responsibility. As demonstrated below, agreeing to dismiss the Indictment as to the *Lopez* defendants, but not Mr. Li, would actually undermine the "interests of justice" by ordering disparate treatment of similarly situated defendants.

The Government also downplays the importance of the GVR Order and its importance in deciding how to treat the current Petitions. Both Congress and the courts have recognized the importance of treating similarly situated defendants equally. The Supreme Court has recognized the importance of scrutinizing disparate treatment of criminal defendants to determine whether such treatment is based on impermissible grounds. *See, e.g.*, *United States v. Armstrong*, 517 U.S. 456 (1996).

Even where disparate treatment is not based on constitutional or other suspect grounds, the obligations courts have to treat defendants fairly requires avoiding disparate treatment based on arbitrary reasons or rationales. For instance, the statutory scheme governing sentencing requires courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. . . " 18 U.S.C. § 3553(a)(6). The Government's own U.S. Attorney's Manual demands that the Government's exercise of discretion always must conform to the "fair, evenhanded administration of the Federal criminal laws." U.S.A.M. 9-27.001. Indeed, application of that principle is reflected in the All Writs Act, 28 U.S.C. § 1651, which provides the Court with authority to demand "the evenhanded administration of" justice by correcting an injustice pursuant to a *writ of coram nobis. United States v. Morgan*, 346 U.S. 502, 505 & n.6 (1954).

If anything, there is even more reason for treating Mr. Li ***less*** harshly than the *Lopez* defendants. The Government ignores Li's opening brief, which pointed out that in sentencing Mr. Li on November 13, 2018 the Court pointed to differences in the evidence against Mr. Li from that pertaining to other defendants. The Court observed that Li's "smaller acts of theft or bribery" were "of a different sort," Sentencing Tr., Nov. 13, 2018, at 33, from other defendants whose involvement was far greater in accepting bribes. *Id.* at 31-32.

The Government nevertheless urges denial of the Writ because Mr. Li pled guilty. The Government fails to deal with case law holding that the writ of *coram nobis* is available to a defendant who pled guilty. See *United States v. Morgan*, 346 U.S. 502 (1954); *United States v. Denedo*,, 556 U.S. 904 (2009); *United States v. Akinsade*, 686 F.3d 248 (4th Cir. 2012).

Furthermore, the Second Circuit has recognized that a defendant's decision to plead guilty may justify more lenient, not harsher, treatment. See, e.g., *United States v. Fernandez*, 104 F.4th 420 (2nd Cir. 2024) (It is not "extraordinary" (indeed, it should be expected) that a defendant who proceeds to trial and is convicted receives a longer sentence than his co-defendants who plead guilty to different crimes, accept responsibility, and assist the government by cooperating.). (*citing Missouri v. Frye*, 566 U.S. 134, 143-44, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012) (internal quotation marks omitted).

In fact, there are compelling reasons for allowing coram nobis relief after a guilty plea based on a change in the law resulting in the defendant pleading guilty to something which is not a crime. For one thing, a defendant who relies on advice which may be correct at the time, but which turns out to be incorrect based on a change in the law, is essentially being deprived of the effective assistance of counsel, which can be addressed even though the defendant pled guilty. *United States v. Morgan*, 346 U.S. 502, 512, 74 S.Ct. 247, 98 L.Ed. 248 (1954) (writ of *coram nobis* may issue to address deprivation of counsel). Mr. Li need only show that he was pleading guilty based on an incorrect theory of the law, and that his plea was not knowing and voluntary. Courts have granted *coram nobis* relief where, as in this case, the advice (and indeed instructions from the Court) fail to inform the defendant of all material facts. See, e.g., *United States v. Morgan*, 346 U.S. 502, 512 (1954) (writ of coram nobis appropriate where counsel failed to fully

advise the defendant of issues, thereby depriving the defendant of his right to effective assistance of counsel).

Nor is it any answer to argue that Mr. Li was advised of his rights during the Rule 11 colloquy and agreed to waive any argument he now raises. See, e.g., *United States v. Herandez Monreal*, 404 F. App'x 714, 715 (4th Cir. 2011) (finding that the defendant was not prejudiced by counsel's failure to advise of deportation consequences when, during his Rule 11 proceeding, the defendant "affirmatively acknowledged his understanding that his plea 'could definitely make it difficult, if not impossible, for [him] to successfully stay legally in the United States'"). Here, the opposite is true. The Court was incapable of discharging its function during the Rule 11 colloquy by making certain that Mr. Li's plea was knowing and voluntary. Instead of doing so, the Court proceeded based on the then state of the law regarding honest and faith services fraud.

## II. MR. LI'S PETITION SATISFIES THE OTHER REQUIREMENTS FOR ISSUANCE OF A WRIT OF CORAM NOBIS

The Government's opposition fails to set forth any basis for concluding that granting of the Writ is improper. On the contrary, Mr. Li has shown that he filed his Petition promptly, and second, has suffered the sort of harm to be addressed by issuance of the Writ.

### A. Mr. Li's Petition Was Timely Based on a Change in the Law.

The Government argues that Mr. Li (and others) failed to act in a timely fashion in challenging whether the conduct in question constituted a crime under federal law.

The Government agrees that *coram nobis* relief is warranted based on an intervening change in law showing that the petitioner had been "convicted and punished for an act that the law does not make criminal." *United States v. Travers*, 514 F.2d 1171, 1176 (2d Cir. 1974) (Friendly, J.) (internal quotation marks omitted). In *Edwards v. United States*, 564 F.2d 652, 654 (2d Cir. 1977), the Court similarly held that the Court had " granted relief . . . in coram nobis

where, for example, subsequent decisions have made it clear that the petitioner committed no federal offense. . . .”

Nor can the Government dispute that Mr. Li acted promptly after the Supreme Court’s decision in *Ciminelli v. United States*, 598 U.S. 306 (2023), and *Percoco v. United States*, 598 U.S. 319 (2023). On September 1, 2023, the Court vacated the convictions in the *Lopez* case, holding that the “scope” of the honest-services fraud statute, 18 U.S.C. § 1346 (referred to herein as “§ 1346”), “does not extend to foreign commercial bribery”—*i.e.*, bribes that sought to taint a foreign fiduciary relationship (in contrast with a U.S.-based fiduciary relationship)—on the basis of those “intervening Supreme Court decisions.” *United States v. Full Play Grp., S.A.*, 690 F. Supp. 3d 5, 8, 24-25 (E.D.N.Y. 2023); *see also* ECF No. 2023 at 2, 29. The government appealed the decision on September 22, 2023. *See United States v. Lopez*, No. 23-7183 (2d Cir.). While that appeal was pending, Mr. Li filed his Petition on January 30, 2024.

Accordingly, Mr. Li filed his Petition within four months of this Court’s decision in *Lopez*, and before any appeal from that decision was concluded.

The Government nevertheless argues that Mr. Li should have known, based on a single district court decision years earlier, *United States v. Giffen*, 326 F. Supp. 2d 497, 506 (S.D.N.Y. 2004), that he could have challenged whether an honest services fraud theory of prosecution applied to foreign commercial bribery. The Government admits that any such effort on Mr. Li’s part would have been futile inasmuch as the Second Circuit had closed the door on any such defense, until 2023, when *Ciminelli* and *Percoco* were decided. See Govt Opp at 33 (citing *United States v. Rybicki*, 354 F.3d 124, 134-36 (2d Cir. 2003) (en banc), *Skilling v.United States*, 561 U.S. 358 (2010), and *Bahel*, 662 F.3d 610).

Accordingly, any suggestion that *Giffen* would have mandated a contrary result prior to the Supreme Court's decisions in *Ciminelli* and *Percoco* is unfounded. The Second Circuit expressly refused to so read *Giffen*. See, e.g., *United States v. Bahel*, 662 F.3d 610, 632 (2nd Cir. 2011) (rejecting the defendant's argument that *Giffen* precluded an honest services fraud theory, and holding that the "Court has not itself so construed Section 1346").

The Government misses the point for another reason. *Coram nobis* relief is appropriate not only because there has been a change in the law now demonstrating that Mr. Li pled guilty to something which is not a crime, but as demonstrated above, for the additional reason that he pled guilty based on his counsel's representation at the Rule 11 hearing that he was satisfied that a crime had been committed. Mr. Li was aware also that by accepting his plea, the Court made clear that it was satisfied that a legal basis existed for the plea.

In sum, the Government has failed to cite a single case where a petition was denied based on a four month delay and the petition was filed even before a change in the law became final. Rather, all of the cases cited by the Government reflect ones where there was no change in the law, but rather only arguments which could have been raised on appeal, or where there was some clarification of earlier precedent.

**B. Mr. Li Continues to Suffer Concrete Harm from the Conviction**

The Government also takes issue with the fact that Mr. Li's will suffer concrete harm from his status as a convicted felon. *See Kovacs*, 744 F.3d at 49. In do so, the Government fails to take issue with numerous holdings establishing that prejudice can be shown based on (1) continuing restraints on travel, see, e.g., 8 U.S.C. § 1227(a)(2)(A)(iii) (petitioner subject to deportation as a result of the conviction for an aggravated felony); *e Kovacs*, 744 F.3d at 49 ("There is no doubt that Kovacs' likely ineligibility to reenter the United States constitutes a continuing consequence of his conviction."); *United States v. Panarella*, No. 00–655, 2011 WL

3273599, at *10 (E.D. Pa. Aug. 1, 2011) (listing "numerous restrictions on international travel" as example of "collateral consequences . . . sufficient to justify coram nobis relief"); *United States v. Holt*, No. 2:05-CR- 20012, 2017 WL 1181509, at *3 (W.D. La. Mar. 28, 2017) ("restriction in travel" would be considered a civil disability for a writ of coram nobis"); (2) the payment of hundreds of thousands dollars in penalties and forfeitures, s*ee Nelson v. Colorado*, 581 U.S. 128, 135-36 (2017) ("Colorado may not presume a person, adjudged guilty of no crime, nonetheless guilty *enough* for monetary exactions."); (3) and adverse impacts on his financial dealings based on his status as a convicted felon. *See* Li Decl., paras. 5-7. Banks and others have refused to do business with him or any business with which he is associated because of his conviction.

Accordingly, there is no dispute that Mr. Li has suffered, and will continue to suffer, concrete harm stemming from his conviction if the writ is not granted.

The Government nevertheless argues that such actual harm stemming from the conviction is still not enough. It argues that because Mr. Li pled guilty to a RICO conspiracy involving far-flung conduct by other defendants, evidently including the *Lopez* defendants who have now avoided a conviction of any crime. The Government's argument suffers from several flaws.

First, the Government's theory is contrary to the most fundamental notions of due process and fair play, which depends on charges actually brought against an accused, not those which the Government either failed to bring or abandoned.

Second, if the Government's theory had any merit, it would have been used in the prosecution of the *Lopez* defendants, which similarly gave rise to the same arguments, rather than obtaining a dismissal in the interests of justice.

Third, the Government continues to rely on the erroneous assumption that Mr. Li cannot show prejudice because he could have been convicted of a scheme involving CONCACAF

because it is headquartered in the United States. But as demonstrated above, Li did nothing to deprive CONCAF of money or property. *See supra*. The sole claim regarding CONCACAF was that Li deprived the organization of its right to Li's honest services by virtue of bribery relating to FEDEFUT, which was a member of CONCACF. Whether charged as part of a RICO conspiracy or a separate offense, conduct relating to CONCACAF was simply not a crime under U.S. law.

The same is true of the allegations relating to embezzlement of funds from FIFA intended for the repair of a stadium. There is no contention that FIFA is anything other than a foreign entity, and that any embezzlement would have been squarely prohibited under this Court's decision in *Lopez*.

## III. THE MONIES PAID BY MR. LI AS A RESULT OF HIS CONVICTION SHOULD BE RETURNED TO HIM

The return of fines and other financial penalties is warranted when convictions are vacated on *coram nobis*. *See*, *e.g.*, United States v. *Mandel*, 862 F.2d at 1075 862 F.2d 1067& 1075, n.13 (4th Cir. 1989) (affirming district court's order that government return any fines in connection with grant of coram nobis petition); *Parietti v. United States*, No. 16-CR-373 (PAE), 2022 WL 3139623, at *3 & n.2 (E.D.N.Y. Aug. 5, 2022) (government stipulated that $1 million fine would be returned to petitioner upon grant of *coram nobis* relief); *United States v. Libous*, 858 F.3d 64, 67 (2d Cir. 2017) ("Once [a defendant's] conviction is vacated, the state is as much entitled to retain the fine as if [the defendant] had been acquitted."); *United States v. Brooks*, 872 F.3d 78, 88-90 (2d Cir. 2017) (upon abatement of conviction, the associated forfeiture, restitution, fine, and special assessment are also abated); *United States v. Christopher*, 273 F.3d 294, 298 (3d Cir. 2001) (fines and forfeiture must be returned upon abatement of conviction); *Nelson*, 581 U.S. at 130 (state must return restitution, costs and fees once conviction has been

vacated). Accordingly, the Government should return to Mr. Li the fine, special assessment, forfeiture and restitution amounts.

**CONCLUSION**

The writ of error *coram nobis* should be granted as to Mr. Li, his conviction should be reversed and all monies paid by him pursuant to that judgment should be returned to him.

Dated: August 25, 2026

New York, New York

/s/ Samuel Rosenthal

Law Office of Samuel Rosenthal
11 Broadway, Suite 615
New York, New York 10004
(646) 822-0001
sam@rosenthal-lawfirm.com

Attorney for Defendant Eduardo Li